UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X   Case No. 1:18-cv-07652-DLC
LEONIDES DUVERNY,

                              Plaintiff,

            - against -

HERCULES MEDICAL P.C., and HYPERION
MEDICAL P.C., and ACHILLES MEDICAL P.C.,
and GEOFFREY RICHSTONE, individually,

                              Defendants.
------------------------------------------------------------------X


**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF LEONIDES DUVERNY'S
MOTION TO DISMISS DEFENDANT HYPERION MEDICAL P.C.'S
COUNTERCLAIM FOR FAILURE TO COMPLY WITH FEDERAL RULE OF CIVIL
PROCEDURE 8(A)(1) AND/OR PURSUANT TO RULES 12(B)(1) OR 12(B)(6) OR
ALTERNATIVELY, IN THE EVENT THE COURT DENIES PLAINTIFF'S INSTANT
MOTION, TO PERMIT PLAINTIFF TO AMEND HER COMPLAINT**


**PHILLIPS & ASSOCIATES,
ATTORNEYS AT LAW, PLLC**
Marjorie Mesidor, Esq.
Joan B. Lopez, Esq.
*Attorneys for Plaintiff*
PHILLIPS & ASSOCIATES,
ATTORNEYS AT LAW, PLLC
45 Broadway, Suite 620
New York, New York 10006
(212) 248-7431
mmesidor@tpglaws.com
jlopez@tpglaws.com

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................................... iii

PRELIMINARY STATEMENT ........................................................................................1

PROCEDURAL BACKGROUND.....................................................................................4

STATEMENT OF FACTS ...............................................................................................4

ARGUMENT ..................................................................................................................10

I.    THE COURT SHOULD DISMISS HYPERION'S COUNTERCLAIM FOR FAILURE
      TO COMPLY WITH FED. R. CIV. P. 8(A)(1) ....................................................10

II.   THE COURT SHOULD DISMISS THE COUNTERCLAIM FOR LACK OF SUBJECT
      MATTER JURISDICTION PURSUANT TO FED. R. CIV. P. 12(b)(1) ........................11

      A.    Legal Standard Under Fed. R. Civ. P. 12(b)(1) .....................................11

      B.    Hyperion's Counterclaim is Not Compulsory.........................................15

      C.    The Court Should Decline To Exercise Supplemental Jurisdiction Over
            Hyperion's Permissive Counterclaim ....................................................16

            1.    There is no common set of facts here ........................................16

            2.    Even if there were a common set of facts, the Court should decline
                  supplemental jurisdiction........................................................19

III.  SHOULD IT REACH THE MERITS, THE COURT SHOULD DISMISS DEFENDANT
      HYPERION'S COUNTERCLAIM UNDER A THEORY OF CONVERSION FOR
      FAILURE TO STATE A CLAIM PURSUANT TO FED. R. CIV. P. 12(b)(6) ..............20

      A.    Legal Standard Under Fed. R. Civ. P. 12(b)(6).....................................20

      B.    Hyperion's counterclaim sounding in conversion must be dismissed as a matter of
            law because it failed to allege that Hyperion had legal ownership or an immediate
            superior right of possession to a specific property .................................21

i

IV.    IN THE EVENT THE COURT DENIES PLAINTIFF'S INSTANT MOTION, <u>PLAINTIFF REQUESTS LEAVE TO AMEND HER COMPLAINT</u>............................24

CONCLUSION.........................................................................................................................25

# TABLE OF AUTHORITIES

## CASES

*Anwar v. Stephens*,
2016 U.S. Dist. LEXIS 102816 (E.D.N.Y.  Aug.  3,  2016) ...............................................12, 13, 14

*Arace v. Quicken Loans, Inc.*,
2016 U.S. Dist. LEXIS 11510 (S.D.N.Y. Feb. 1, 2016) ...............................................................21

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ....................................................................................................................20

*Azevedo v. Club Getaway, Inc.*,
2008 U.S. Dist. LEXIS 8962 (D. Conn. Feb. 7, 2008) ................................................................13

*Bandler v. BPCM NYC, Ltd.*,
2014 U.S. Dist. LEXIS 137381 (S.D.N.Y. Sept. 29, 2014)..........................................................21

*Bank of America Corp. v. Lemgruber*,
385 F. Supp. 2d 200 (S.D.N.Y. 2005) ....................................................................................22, 24

*Bank of India v. Trendi Sportswear, Inc.*,
239 F.3d 428 (2d Cir. 2000)......................................................................................................3, 13

*Barnes v. Pozzi*,
2012 U.S. Dist. LEXIS 109241 (S.D.N.Y. Aug. 3, 2012)...............................................................2

*Beachum v. AWISCO New York*,
785 F. Supp. 2d 84 (S.D.N.Y. March 16, 2011) .........................................................................24

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ....................................................................................................................21

*Berman v. Sugo LLC*,
580 F. Supp. 2d 191 (S.D.N.Y. 2008)..........................................................................................23

*Bill Johnson's Rest., Inc. v. N.L.R.B.*,
461 U.S. 731 (1983)......................................................................................................................20

*City of Chicago v. Int'l Coll. of Surgeons*,
522 U.S. 156 (1997).....................................................................................................................15

*Conley v. Gibson*,
355 U.S. 41 (1957*)*......................................................................................................................11

*Critical-Vac Filtration Corp. v. Minuteman Int'l, Inc.*,
233 F.3d 697 (2d Cir. 2000)........................................................................................................12

iii

*Crye Precision LLC v. Duro Textiles, LLC*,
112 F. Supp. 3d 69 (S.D.N.Y. 2015)...................................................21

*DER Travel Serv., Inc. v. Dream Tours & Adventures, Inc.*,
2005 U.S. Dist. LEXIS 25861 (S.D.N.Y. Oct. 28, 2005)............................19

*Durant, Nichols, Houston, & Cortese-Costa, P.C. v. Dupont*,
565 F.3d 56 (2d Cir. 2009)............................................................11

*Flanagan v. New York City Dep't of Educ.*,
2015 U.S. Dist. LEXIS 179845 (S.D.N.Y. Aug. 21, 2015) ......................19

*Gerson v. N.Y. Women's Med., P.C.*,
671 N.Y.S. 2d 104 (2d Dep't, 1998)..................................................23

*Giovelli v. LA Fitness, Inc.*,
2010 U.S. Dist. LEXIS 6958 (E.D.N.Y. Jan. 28, 2010) ..........................10

*Invamed, Inc. v. Barr Laboratories, Inc.*,
22 F. Supp. 2d 210 (S.D.N.Y. 1998)..................................................21

*IUE AFL–CIO Pension Fund v. Herrmann*,
9 F.3d 1049 (2d Cir. 1993).............................................................4

*Jacques v. DiMarzio*,
200 F. Supp. 2d 151 (E.D.N.Y. 2002) ...............................................20

*Jones v. Ford Motor Credit Co.*,
358 F.3d 205 (2d Cir. 2004)........................................................12, 13

*Karacostas v. Cigna Intern. Corp.*,
1991 U.S. Dist. LEXIS 646 (S.D.N.Y. Jan. 22, 1991)..............................21

*Kobeck v. Armonk Bristal LLC*,
2018 U.S. Dist. LEXIS 45586 (S.D.N.Y. Mar. 19, 2018) .........................14

*Kubin v. Miller*,
801 F. Supp. 1101 (S.D.N.Y. 1992)...................................................23

*LaChapelle v. Torres*,
37 F. Supp. 3d 672 (S.D.N.Y. 2014)...............................................16, 18

*Leveraged Leasing Admin. Corp. v. PacifiCorp Capital, Inc.*,
87 F.3d 44 (2d Cir. 1996)..............................................................22

*Lewis v. Clement*,
766 N.Y.S.2d 296 (Monroe Cty. Sup. Ct. July 2, 2003)...........................23

*Lopez v. Ki Moon Rest. Corp.*,
2018 U.S. Dist. LEXIS 114558 (E.D.N.Y. Apr. 24, 2018) ....................................14, 17

*Lucente v. Int'l Bus. Machines Corp.*,
310 F.3d 243 (2d Cir. 2002)........................................................................................24

*Moran v. Tryax Realty Mgmt., Inc.*,
2016 U.S. Dist. LEXIS 68150 (S.D.N.Y. May 23, 2016)........................................17, 18

*Mori v. E1 Asset Mgmt.*,
2016 U.S. Dist. LEXIS 27911 (S.D.N.Y. Jan. 28, 2016)............................................18

*Morrison v. Nat'l Australia Bank Ltd.*,
547 F.3d 167 (2d Cir. 2008).......................................................................................12

*Nike, Inc. v. Already, LLC*,
663 F.3d 89 (2d Cir. 2011)..........................................................................................12

*Owen Equip. & Erection v. Kroger*,
437 U.S. 365 (1978)..................................................................................................3, 13

*Ozawa v. Orsini Design Assoc., Inc.*,
2015 U.S. Dist. LEXIS 29933 (S.D.N.Y. March 11, 2015) ....................................14, 18

*Prohealth Care Assocs., LLP v. April*,
798 N.Y.S.2d 347 (Nassau Cty. Sup. Ct. Aug. 18, 2004).............................................23

*Rivera v. Ndola Pharmacy Corp.*,
497 F. Supp. 2d 381 (E.D.N.Y. 2007) .......................................................................16

*Roberts v. Bliss*,
229 F. Supp. 3d 240 (S.D.N.Y. 2017)........................................................................21

*Rodgers v. Roulette Record, Inc.*,
677 F.Supp. 731 *(S.D.N.Y. 1988)*.............................................................................22

*Romero v. Bestcare, Inc.*,
2018 U.S. Dist. LEXIS 33901 (E.D.N.Y. Feb. 28, 2018)............................................12

*Rosario v. Int'l Auto Mall & Leasing Ctr., Inc.*,
2013 U.S. Dist. LEXIS 37994 (S.D.N.Y. Mar. 19, 2013)............................................20

*Scheidemann v. Qatar Football Ass'n*,
2008 U.S. Dist. LEXIS 2852 (S.D.N.Y. Jan. 15, 2008)......................................2, 10, 11

*Scheuer v. Rhodes*,
416 U.S. 232 (1974)......................................................................................................4

*Segarra v. Federal Reserve of New York*,
17 F. Supp. 3d 304 (S.D.N.Y. 2014)..........................................................21

*Sharp v. Coven*,
2016 U.S. Dist. LEXIS 20993 (S.D.N.Y. Feb. 19, 2016).............................12

*Shearon v. Comfort Tech Mechanical Co., Inc.*,
2014 U.S. Dist. LEXIS 44888 (E.D.N.Y. March 31, 2014)...............14, 17, 18

*Shields v. Citytrust Bancorp, Inc.*,
25 F.3d 1124 (2d Cir. 1994)..........................................................................4

*Swierkiewicz v. Sorema N.A.*,
534 U.S. 506 (2002)......................................................................................11

*Thomas v. EONY LLC*,
2015 U.S. Dist. LEXIS 52290 (S.D.N.Y. April 21, 2015)...........................13

*Thyroff v. Nationwide Mut. Ins. Co.*,
460 F.3d 400 (2d Cir. 2006).........................................................................22

*Torres v. Gristede's Operating Corp.*,
628 F. Supp. 2d 447 (S.D.N.Y. 2008)..............................3, 14, 15, 18, 20, 24

*Triestman v. Fed. Bureau of Prisons*,
470 F.3d 471 (2d Cir. 2006) ..........................................................................4

*United Mine Workers of Am. v. Gibbs*,
383 U.S. 715 (1966)........................................................................................3

*Vigilant Ins. Co. of Am. v. Hous. Auth.*,
87 N.Y.2d 36 (1995).....................................................................................22

*Wigand v. Flo-tek, Inc.*,
609 F.2d 1028 (2d Cir. 1980)........................................................................16

*Yahui Zhang v. Akami Inc.*,
2017 U.S. Dist. LEXIS 158112 (S.D.N.Y. Sep. 26, 2017)...........................14

*Yantha v. Omni Childhood Ctr., Inc.*,
2013 U.S. Dist. LEXIS 134940 (E.D.N.Y. Sep. 20, 2013).........................22

## STATUTES

28 U.S.C. § 1367(a) .........................................................................3, 12, 13

28  U.S.C. § 1367(c)(4) .................................................................................19

NYLL § 195(1) ...................................................................................................................4

NYLL § 195(3) ...................................................................................................................4

## OTHER AUTHORITIES

Fed. R. Civ. P. 8 ..............................................................................................................20

Fed. R. Civ. P. 8(a)(1) ...........................................................................1, 2, 10, 11, 25

Fed. R. Civ. P. 8(a)(2) ....................................................................................................11, 21

Fed. R. Civ. P. 12(b)(1) ...................................................................1, 3, 11, 19, 20, 25

Fed. R. Civ. P. 12(b)(6) ......................................................1, 2, 20, 21, 24, 25

Fed. R. Civ. P. 13(a) ......................................................................................................12

Fed. R. Civ. P. 13(b) ......................................................................................................12

Fed. R. Civ. P. 15(a) ......................................................................................................24

## PRELIMINARY STATEMENT

Plaintiff Leonides Duverny ("Plaintiff") commenced this action pursuant to the Fair Labor Standards Act ("FLSA"), the New York Labor Law ("NYLL"), Title VII of the Civil Rights Act of 1964, as amended ("Title VII"), Americans with Disabilities Act of 1990 ("ADA"), the New York State Human Rights Law ("NYSHRL"), and the New York City Human Rights Law ("NYCHRL") against her former employers, Defendants Hercules Medical P.C. ("Hercules"), Hyperion Medical P.C. ("Hyperion"), Achilles Medical P.C. ("Achilles"), and Geoffrey Richstone ("Richstone"), (collectively, where appropriate, as "Defendants"). In her Complaint, Plaintiff alleged that Defendants violated the FLSA and NYLL by, *inter alia*, failing to compensate Plaintiff with overtime for hours that she worked over forty in a workweek and by failing to issue her proper wage statements on each payday or a wage notice at hire. Plaintiff also alleged that Defendants violated her rights under Title VII, the NYSHRL, and the NYCHRL for discriminating against her based on her sex and/or gender, national origin, and religion, and under the ADA for discriminating against her based on her disability.

After Plaintiff filed her Complaint, Defendants filed their "Answer and Counterclaim," which contained Defendant Hyperion's single state law counterclaim that sounds in conversion, although it does not specify the legal theory on which it rests.[1] Dkt. No. 13. Plaintiff now submits this memorandum of law in support of her motion to dismiss that counterclaim in its entirety for failure to comport with Federal Rule of Civil Procedure ("Fed. R. Civ. P." or "Rule(s)") 8(a)(1) and/or want of subject matter jurisdiction pursuant to Rule 12(b)(1), as it arises under state law and does not share any relevant facts in common with those underlying Plaintiff's claims, or

---

[1] For the Court's reference, the relevant pleadings discussed herein are referred to by their respective ECF numbers, and not by the exhibit number as annexed to the Declaration of Marjorie M. Mesidor, Esq. in Support of Plaintiff Leonides Duverny's Motion to Dismiss Defendant Hyperion's Counterclaim for Failure to Comply with Federal Rule of Civil Procedure 8(a)(1) and/or pursuant to Rules 12(b)(1) or 12(b)(6), submitted contemporaneously herewith.

alternatively, pursuant to Rule 12(b)(6) for failure to state a claim upon which relief may be granted, or, alternatively, in the event the Court denies Plaintiff's instant motion, to permit Plaintiff to amend her Complaint.

In brief, Defendant Hyperion alleged in its counterclaim that Plaintiff committed theft by stealing "a medical file, which belongs to Hyperion, from Defendant Hyperion Medical, P.C.'s office. (That file contains medical information pertaining to Plaintiff)". Dkt. No. 13 at ¶ 64. Defendant Hyperion alleged that "after Defendant Hyperion Medical, P.C. filed a police report concerning the theft did Plaintiff make any claims against Defendants." Dkt. No. 13 at ¶ 65. Defendant Hyperion alleged "[t]hereafter, Plaintiff's then counsel returned a portion of the file to Defendant Hyperion Medical, P.C." Dkt. No. 13 at ¶ 66. Defendant Hyperion concluded its counterclaim by alleging that "Plaintiff is liable to Defendant Hyperion Medical, P.C. for damages, including punitive damages, in an amount to be determined at trial." Dkt. No. 13 at ¶ 67. The Court should dismiss this counterclaim for several independent reasons.

First, pursuant to Rule 8(a)(1), a pleading must contain "a short and plain statement of the grounds for the court's jurisdiction, unless the court already has jurisdiction and the claim needs no new jurisdictional support." *Barnes v. Pozzi*, 2012 U.S. Dist. LEXIS 109241, at *4 (S.D.N.Y. Aug. 3, 2012), *adhered to in part on reconsideration*, 2012 U.S. Dist. LEXIS 161253 (S.D.N.Y. Nov. 8, 2012).   Hyperion wholly failed to comply with the pleading requirements under Rule 8 as its counterclaim  is silent on the basis for Court's subject matter jurisdiction over its state law counterclaim. Therefore, the Court should dismiss it for that reason. *See Scheidemann v. Qatar Football Ass'n*, 2008 U.S. Dist. LEXIS 2852, at *6 (S.D.N.Y. Jan. 15, 2008) (finding that party did not adequately plead subject matter jurisdiction in accordance with Fed. R. Civ. P. 8(a)(1) as an alternative ground for dismissing case).

Second, irrespective of that pleading deficiency, this Court lacks subject matter jurisdiction

to decide Hyperion's counterclaim. Indeed, the Court may only resolve this state law claim for the alleged theft of Plaintiff's medical file if it has supplemental jurisdiction over it, which it can only have if it and Plaintiff's claims that she pleaded in her complaint are "so related . . . that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). A counterclaim is only part of the "same case or controversy where [it] shares a common nucleus of operative fact with the plaintiff's underlying claim." *Torres v. Gristede's Operating Corp.*, 628 F. Supp. 2d 447, 467-69 (S.D.N.Y. 2008) (citing *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 728 (1966)); *Bank of India v. Trendi Sportswear, Inc.*, 239 F.3d 428, 437 (2d Cir. 2000) (citing *Owen Equip. & Erection v. Kroger,* 437 U.S. 365, 374-377 (1978)).

That is not the case here, as Plaintiff's claims relate to her hours worked and the manner in which Defendants compensated her for that work, and Defendants' discrimination against Plaintiff based on her sex and/or gender, national origin, religion, and disability. Crucially, where the sole fact connecting FLSA/NYLL claims and a counterclaim is the plaintiff's prior employment with the defendant, as is so here, supplemental jurisdiction cannot be established, and the Court should dismiss the counterclaim under Rule 12(b)(1) on that basis as well. *Torres*, 628 F. Supp. 2d at 468 (collecting cases). Moreover, even if a basis for supplemental jurisdiction existed, the Court should decline to exercise it as entertaining Defendant Hyperion's counterclaim would have a "chilling effect" on employees who wish to assert their right to receive statutorily-required wages and to be free from discrimination in the workplace. *Torres*, 628 F. Supp. 2d at 473 (recognizing the chilling effect of baseless counterclaims and the strong message a countersuit sends to "other actual and potential class members [] that, by initiating and/or maintaining claims against [the defendant], they would be subject to burdensome countersuits.").

Finally, the Court should dismiss the counterclaim on the merits for failure to state a claim upon which relief may be granted. The counterclaim, to the extent it is intended to be for

conversion, does not allege, nor can it, that Hyperion had legal ownership or an immediate superior right of possession to the medical file that Plaintiff allegedly took from Hyperion.

## PROCEDURAL BACKGROUND

On August 22, 2018, Plaintiff filed her Complaint in this matter against Hercules, Hyperion, Achilles, and Richstone, asserting the following claims against them: violations of the overtime provisions of the FLSA and NYLL; violations of NYLL §§ 195(3) & (1), respectively, for those Defendants' failure to provide Plaintiff with proper wage statements on each payday or a wage notice at hire; violations of Title VII for discrimination based on sex and national origin; violations of the ADA for discrimination based on disability; violations of the NYSHRL for discrimination based on sex and national origin; and violations of the NYCHRL for discrimination based on gender, national origin, and religion. Complaint. Dkt. No. 1; Exhibit A. On September 20, 2018, Defendants filed their Answer to Plaintiff's Complaint interposing a counterclaim on behalf of Hyperion that sounds in conversion, but fails to specify the legal theory on which it is based. Dkt. No. 13; Exhibit B.

## STATEMENT OF FACTS[2]

As alleged in Plaintiff's Complaint, Defendants Hercules, Hyperion, and Achilles are legally distinct corporations that operate as a single enterprise and Defendant Richstone is the corporations' general manager and day-to-day overseer. Dkt. No. 1, at ¶¶ 10-11, 14. Defendants jointly employed Plaintiff—Haitian, female and Christian—to work as a billing assistant from in or around October

---

[2] The statement of facts is based on the assertions in Plaintiff's and Defendants' respective operative pleadings. *See* Dkt. Nos. 1, 13. By simply providing the facts as pleaded by Defendants, Plaintiff does not concede their veracity, and instead solely provides them pursuant to well established law that on a motion to dismiss, the facts asserted by the non-moving party are to be taken as true. *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006); *Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1127 (2d Cir. 1994) (citing *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974); and *IUE AFL–CIO Pension Fund v. Herrmann*, 9 F.3d 1049, 1052 (2d Cir. 1993)).

26, 2015 to May 10, 2016. *Id.*, at ¶ 15.  Throughout her employment, Defendants required Plaintiff to work five days per week, from 8:00 a.m. until 6:00 p.m., without providing her any uninterrupted lunch break. *Id.*, at ¶ 16.  Thus, Plaintiff worked approximately fifty hours each workweek. *Id.*  For this work, Defendants paid Plaintiff $17.00 per hour from the commencement of her employment until in or around January 8, 2016, and $18.00 per hour from in or around January 9, 2016 until May 10, 2016, when Defendants terminated Plaintiff's employment, for all hours worked up to forty and some hours worked in excess of forty - - even though Plaintiff typically worked fifty hours per week throughout her employment. *Id.*, at ¶ 17.  As such, Defendants only paid Plaintiff for her hours worked up to forty, and therefore nothing for hours in excess of forty, or paid Plaintiff at her straight-time rate of pay for some of her hours worked over forty in a week and nothing for others in that same week. *Id.*, at ¶ 18. Moreover, Defendants failed to provide Plaintiff with accurate wage statement on each payday that listed, *inter alia*, Plaintiff's actual hours worked per week and her overtime rate of pay for all hours worked over forty each week. *Id.*, at ¶ 25.  Defendants also failed to provide Plaintiff with a wage notice at hire that stated with accuracy, *inter alia*, her overtime and regular rates of pay. *Id.*, at ¶ 26.

Additionally, in her Complaint, Plaintiff also alleged that before Plaintiff's employment and throughout her employment with Defendants, Defendant Richstone discriminated against Plaintiff based on her sex and/or gender, national origin, and religion. *Id.*, at ¶ 29.  For instance, in or around July 2014, after Plaintiff and Defendant Richstone met at a birthday party of a mutual acquaintance where the latter introduced himself as a doctor and offered to help Plaintiff with her job search and medical needs, free of charge, Plaintiff alleged that she and Defendant Richstone met for dinner. *Id.*, at ¶¶ 29-31.  During this dinner, Defendant Richstone asked Plaintiff if she wanted to go with him as his guest to his son's wedding. *Id.*, at ¶ 31.  Before Plaintiff could reply, Defendant Richstone stated that they needed to stop by his office first so they can get birth control patches for Plaintiff. *Id.*, at ¶

5

31.  When Plaintiff asked Defendant Richstone why she would need patches, Defendant Richstone responded: "In case we have sex, after all we're two adults, aren't we?" *Id*., at ¶ 31.  Plaintiff then exclaimed that she was and is a Christian and therefore, would never engage in that type of activity with Defendant Richstone. *Id*., at ¶ 31.  Defendant Richstone then told Plaintiff that "it would only be sex, I would not want you to think that we're in some form of relationship . . . ." *Id*., at ¶ 31. Defendant Richstone continued to boast that "women have sex with him all the time." *Id*., at ¶ 31. Plaintiff said "I'm not those women." *Id*., at ¶ 31.  Defendant Richstone then berated Plaintiff and said that her religion was causing her to "act foolish." *Id*., at ¶ 31.

Plaintiff alleged that in or around July 2014, due to an urgent need of a medical check-up free of charge, Plaintiff contacted Defendant Richstone's office to schedule an appointment. *Id*., at ¶ 32. At the appointment, Plaintiff alleged that Defendant Richstone did a medical check-up of Plaintiff, during which he commented that Plaintiff's breasts looked nice.  Also during this time, Plaintiff alleged that Defendant Richstone became aware of Plaintiff's hernia. *Id*., at ¶ 32.  Plaintiff alleged that approximately a year later and still diligently looking for a job, Plaintiff begrudgingly reached out to Defendant Richstone to inquire about a vacant job position with Defendants, as Plaintiff needed proof of income to rent an apartment. *Id*., at ¶ 33.  Plaintiff alleged that before hiring Plaintiff, Defendant Richstone sent her a text message, dated September 18, 2015 at 8:16 p.m., stating "No resume, Bimbo[.]" *Id*., at ¶ 33.  Plaintiff alleged that in or around September 2015, again before hiring Plaintiff, Defendant Richstone sent a text message to Plaintiff stating: "Why are you awake at this hour?  All Jamaicans have been asleep since 9 AM[.]" *Id*., at ¶ 34.

Plaintiff alleged that Defendant Richstone regularly and throughout Plaintiff's employment commented on Plaintiff's appearance: that Plaintiff's clothes were not tight enough, Plaintiff had beautiful legs, Plaintiff either had to gain or lose weight, Plaintiff looked "decent," Plaintiff was an attractive woman, and Plaintiff had "nice breasts." *Id*., at ¶ 36.  Plaintiff alleged that Defendant

Richstone also regularly and throughout Plaintiff's employment made harassing comments based on Plaintiff's religion: "you think you're self-righteous because of your religion" and "You're brainwashed by your religion." *Id*., at ¶ 37. Plaintiff also alleged that Defendant Richstone, on a weekly basis, asked or gestured for a hug from Plaintiff. *Id*., at ¶ 38. Plaintiff alleged that Defendant Richstone hurled degrading and offensive comments at Plaintiff regarding her Haitian identity and frequently conflated Haitians and Jamaicans together: "Haitians do not generally bathe," "Haitians are not intelligent," "Jamaicans are monkeys," and "Jamaicans are lazy." *Id*., at ¶ 39. Plaintiff alleged that in or around November 2015, Defendant Richstone ordered Plaintiff and a co-worker to go to a store and run errands. *Id*., at ¶ 40. At the store, Plaintiff alleged that Defendant Richstone directed the co-worker over the phone to purchase Plaintiff a new mattress, which Defendant Richstone insisted to pay. *Id*., at ¶ 40. Plaintiff objected to this unwanted gift from Defendant Richstone, to which Defendant Richstone ignored and pressured Plaintiff to accept. *Id*., at ¶ 40. Plaintiff alleged that in or around November 2015, Defendant Richstone called Plaintiff "fat." *Id*., at ¶ 41. Plaintiff alleged that Defendant Richstone then required Plaintiff to quit her gym membership and join Richstone's gym instead. *Id*., at ¶ 41. Plaintiff alleged that she refused because she wanted to limit any interaction with Defendant Richstone outside of the office as much as possible. *Id*., at ¶ 41.

Plaintiff alleged that in or around November 2015, Plaintiff complained to and urged Defendant Richstone to stop his unwanted sexual advances towards Plaintiff; however, Defendant Richstone did not respond to Plaintiff's grievance and continued his unlawful conduct. *Id*., at ¶ 42. Plaintiff alleged that on November 26, 2015, Defendant Richstone summoned Plaintiff into his office, where another male doctor was present. *Id*., at ¶ 43. After Defendant Richstone finished talking to Plaintiff, Plaintiff alleged that Defendant Richstone told her: "Walk out, so we can check you out." *Id*., at ¶ 43. Plaintiff alleged that on December 16, 2015, at an office party, Defendant Richstone, during an informal speech, urged another doctor to sing a song, which the doctor did,

about Jamaicans jumping from tree to tree, eating bananas, and acting like monkeys. *Id.*, at ¶ 44. Plaintiff alleged that Defendant Richstone then referred to his Jamaican ex-father in law as a "borrower who always needed money but never paid [Richstone] back." *Id.*, at ¶ 44.   When Defendant Richstone began to introduce Plaintiff, Plaintiff alleged that he referred to her as a "charity case." *Id.*, at ¶ 44.

Plaintiff alleged that from in or around January 2016 until the end of Plaintiff's employment, Defendant Richstone required Plaintiff to relinquish her cellphone to him every day to prevent Plaintiff from contacting her significant other. *Id.*, at ¶ 45.  Plaintiff alleged that throughout Plaintiff's employment, Defendant Richstone asked Plaintiff five or six times to go out and have dinner with him only. *Id.*, at ¶ 46.  Plaintiff alleged that in or around January 2016, during one of the dinners, Defendant Richstone told Plaintiff that he wanted to see her apartment afterwards. *Id.*, at ¶ 47. Intimidated, Plaintiff agreed. *Id.*, at ¶ 47.  Plaintiff alleged that after dinner, Plaintiff and Defendant Richstone went to Plaintiff's apartment. *Id.*, at ¶ 47.  Plaintiff alleged that Defendant Richstone inspected Plaintiff's apartment and then left. *Id.*, at ¶ 47.  Plaintiff alleged that in or around January 2016, Defendant Richstone gave Plaintiff a scale and demanded that she take it home so she could "control" her weight as Defendant Richstone observed that Plaintiff was getting "fat." *Id.*, at ¶ 48. Plaintiff alleged that in January and February 2016, Defendant Richstone demanded again that Plaintiff transfer to his gym. *Id.*, at ¶ 49.   Plaintiff alleged that when she refused repeatedly, Defendant Richstone grew irate, which caused Plaintiff to fear losing her job. *Id.*, at ¶ 49.  Plaintiff alleged that Defendant Richstone sternly instructed Plaintiff to cancel her gym membership and that he was going to pay the difference in the membership fee. *Id.*, at ¶ 49.  Plaintiff alleged that when Plaintiff cancelled her gym membership to join Defendant Richstone's gym in late February 2016, Plaintiff had to approach Defendant Richstone every month for the $20.00 membership fee difference that he promised to pay, which made Plaintiff extremely uncomfortable. *Id.*, at ¶ 49.

8

Plaintiff alleged that throughout Plaintiff's employment, Defendant Richstone pressured Plaintiff to go with him to non-work related events, such as book lectures and meetings at car dealerships. *Id*., at ¶ 50.  Plaintiff alleged that in or around early May 2016, Defendant Richstone summoned Plaintiff into his office and told her that since she received medical insurance from Defendants, Defendant Richstone demanded that he conduct a physical examination of Plaintiff, who suffers and has suffered from hernia, which limited her ability to lift objects, in preparation for Plaintiff's hernia surgery, which Plaintiff never asked for, nor planned on getting. *Id*., at ¶ 51. Plaintiff alleged that when she objected, Defendant Richstone said: "If you're going to work here, you must adhere to my policies, I'm in control here, you're not!  You must get these exams, there is nothing more to discuss!  If you do not like how things are done here, sue me!" *Id*., at ¶ 51.  Plaintiff alleged that in fear of losing her job or receiving reprisal from Defendants, Plaintiff reluctantly agreed to undergo the examination. *Id*., at ¶ 51.  Plaintiff alleged that Defendant Richstone demanded Plaintiff to go to an examination room and disrobe. *Id*., at ¶ 51.  Plaintiff alleged that Defendant Richstone started to move his hand down the front of Plaintiff's body. *Id*., at ¶ 51.  Plaintiff alleged that she emphatically told him to move his hand higher as her hernia was in her lower abdomen. *Id*., at ¶ 51.  Plaintiff alleged that with an ungloved hand, Defendant Richstone touched Plaintiff's vagina. *Id*., at ¶ 51.  Plaintiff alleged that she moved Defendant Richstone's hand away. *Id*., at ¶ 51.  Plaintiff alleged that when Caroline Jeanty, a co-worker, knocked on the door, Defendant Richstone hugged Plaintiff and told her to clean his shirt because it had her makeup on it. *Id*., at ¶ 51.

Plaintiff alleged that on May 10, 2016, Defendant Richstone informed Plaintiff she needed to undergo another physical examination with him and other male doctors, which again Plaintiff never requested. *Id*., at ¶ 52.  Plaintiff alleged that, anticipating Defendant Richstone and the other male doctors were going to violate Plaintiff's body again by touching her vagina, Plaintiff vehemently refused. *Id*., at ¶ 52.  Plaintiff alleged that Defendant Richstone became angry and

threatened Plaintiff with termination if she did not acquiesce to his perverted demand. *Id.*, at ¶ 52. Plaintiff alleged that she still firmly refused. *Id.*, at ¶ 52.  In response to Plaintiff's refusal to acquiesce to his unwelcome sexual conduct, Plaintiff alleged that Defendant Richstone, on behalf of all Defendants, terminated Plaintiff's employment. *Id.*, at ¶ 52.

In Defendants' "Answer and Counterclaim," on behalf of Defendant Hyperion, Defendants alleged that "Plaintiff stole a medical file, which belongs to Hyperion, from Defendant Hyperon Medical, P.C.'s office. (That file contains medical information pertaining to Plaintiff.)". Dkt. No. 13, at ¶ 64. Defendant Hyperion further alleged that "[o]nly after Defendant Hyperon Medical, P.C. filed a police report concerning the theft did Plaintiff make any claims against Defendants." *Id.* at ¶ 65. Defendant Hyperion further alleged that "[t]hereafter, Plaintiff's then counsel returned a portion of the file to Defendant Hyperion Medical, P.C." *Id.*, at ¶ 66.  Defendant Hyperion additionally alleged that "[b]y reason of the foregoing, Plaintiff is liable to Defendant Hyperion Medical, P.C. for damages, including punitive damages, in an amount to be determined at trial." *Id.*, at ¶ 67. Conspicuously absent from Defendant Hyperion's counterclaim is a statement of the grounds for the Court's jurisdiction.

## **ARGUMENT**

### I.   **THE COURT SHOULD DISMISS HYPERION'S COUNTERCLAIM FOR FAILURE TO COMPLY WITH FED. R. CIV. P. 8(A)(1)**

Rule 8(a)(1) provides that a pleading must contain "a short and plain statement of the grounds for the court's jurisdiction, unless the court already has jurisdiction and the claim needs no new jurisdictional support[.]" "[The pleader] retains the obligation under Rule 8(a)(1) to plead subject matter jurisdiction adequately." *See Scheidemann*, 2008 U.S. Dist. LEXIS 2852, at *6. Courts routinely dismiss cases as a result of a pleader's failure to meet this obligation. *See Giovelli v. LA Fitness, Inc.*, 2010 U.S. Dist. LEXIS 6958, at *1 (E.D.N.Y. Jan. 28, 2010) (dismissing

complaint *sua sponte*, in part, because complaint failed to "set forth any purported grounds for jurisdiction" under Fed. R. Civ. P. 8(a)(1)); *Scheidemann*, 2008 U.S. Dist. LEXIS 2852, at *6 (finding that party did not adequately plead subject matter jurisdiction in accordance with Fed. R. Civ. P. 8(a)(1) as an alternative ground for dismissing case). Here, Defendants' "Answer and Counterclaim" fails to articulate any basis upon which the Court should or could exercise jurisdiction over Defendant Hyperion's counterclaim. Therefore, the Court should dismiss Defendant Hyperion's counterclaim for this reason alone.

Moreover, Defendant Hyperion's counterclaim seems to provide an explanation or an alternative set of facts as to the motivation for Plaintiff's claims, as opposed to a true legal claim upon which damages can be awarded.  Even with the leniency of the Federal Rules, Hyperion's counterclaim falls short of giving Plaintiff fair notice of any legal claim that can deduced from the facts Hyperion alleged,  *see generally*, Fed. R. Civ. P. 8(a)(2)), such that it would "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests," *Swierkiewicz v. Sorema N.A.,* 534 U.S. 506, 512 (2002) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).  As a result, Plaintiff is left guessing as to what cause of action she should be defending against.  Therefore, the Court should dismiss Defendant Hyperion's counterclaim for these reasons alone.

## II.     THE COURT SHOULD DISMISS THE COUNTERCLAIM FOR LACK OF SUBJECT MATTER JURISDICTION PURSUANT TO FED. R. CIV. P. 12(b)(1)

### A.     *Legal Standard Under Fed. Civ. P. 12(b)(1)*

Federal district courts are courts of "limited jurisdiction and lack the power to disregard such limits as have been imposed by the Constitution or Congress." *Durant, Nichols, Houston, & Cortese-Costa, P.C. v. Dupont*, 565 F.3d 56, 62 (2d Cir. 2009) (internal quotations omitted). A court should dismiss a claim for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1) "when

the district court lacks the statutory or constitutional power to adjudicate it." *Nike, Inc. v. Already, LLC*, 663 F.3d 89, 94 (2d Cir. 2011). "[J]urisdiction must be shown affirmatively, and that showing is not made by drawing from the pleadings inferences favorable to the party asserting it." *Sharp v. Coven*, 2016 U.S. Dist. LEXIS 20993, at *1 (S.D.N.Y. Feb. 19, 2016) (citing *Morrison v. Nat'l Australia Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008), *aff'd*, 561 U.S. 247 (2010)).  Supplemental jurisdiction permits courts to adjudicate certain pendant state law claims only when the claims "are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a).

Under Fed. R. Civ. P. 13, a compulsory counterclaim is one that arises "out of the transaction or occurrence that is the subject matter of the opposing party's claim and does not require for its adjudication the presence of third parties . . ." Fed. R. Civ. P. 13(a).  A compulsory counterclaim is either raised or forfeited, but to be deemed "compulsory," its "essential facts . . . [must be] so logically connected that considerations of judicial economy and fairness dictate that all the issues be resolved in one lawsuit." *Jones v. Ford Motor Credit Co.*, 358 F.3d 205, 209 (2d Cir. 2004) (citing *Critical-Vac Filtration Corp. v. Minuteman Int'l, Inc.*, 233 F.3d 697, 699 (2d Cir. 2000)).  "Courts consider the following factors when deciding whether a counterclaim is compulsory or permissive: (1) identity of facts between the original claim and counterclaim; (2) mutuality of proof; (3) logical relationship between original claim and counterclaim." *See Romero v. Bestcare, Inc.*, 2018 U.S. Dist. LEXIS 33901, at *24-25 (E.D.N.Y. Feb. 28, 2018) (internal quotations and citations omitted).

Permissive counterclaims, on the other hand, are those that do not arise out of the same transaction or occurrence as the subject matter of the plaintiff's claim. Fed. R. Civ. P. 13(b). "Permissive counterclaims must meet the requirements of supplemental jurisdiction for courts to exercise subject matter jurisdiction over them." *Anwar v. Stephens*, 2016 U.S. Dist. LEXIS 102816,

at *7, n.1 (E.D.N.Y. Aug. 3, 2016), *adopted by*, 2016 U.S. Dist. LEXIS 113025 (E.D.N.Y. Aug. 24, 2016) (citation omitted). "Although the standards for supplemental jurisdiction and compulsory counterclaims are similar, they are not coextensive because a court may have supplemental jurisdiction over counterclaims even where their factual relationship to the underlying claim is not such as would make the counterclaims compulsory." *Id.* (internal quotations and citations omitted). For a district court to adjudicate permissive counterclaims under the doctrine of supplemental jurisdiction, they must form part of the same case or controversy as the plaintiff's claims. *See Jones*, 358 F.3d at 212-13.

Counterclaims raising issues of state law - - like the counterclaim Hyperion raises here - - are only part of the "'same case or controversy' where they share a 'common nucleus of operative fact with the plaintiff's underlying claim.'" *Anwar*, 2016 U.S. Dist. LEXIS 102816, at *3; *Bank of India*, 239 F.3d at 437 (citing *Owen Equipment & Erection*, 437 U.S. at 374-377); *Azevedo v. Club Getaway, Inc.*, 2008 U.S. Dist. LEXIS 8962, at *1 (D. Conn. Feb. 7, 2008) (citing 29 U.S.C. § 1367(a)). "A common nucleus of operative fact exists where 'plaintiff would ordinarily be expected to try them all in one judicial proceeding.'" *Anwar*, 2016 U.S. Dist. LEXIS 102816, at *3 (quoting *Thomas v. EONY LLC*, 2015 U.S. Dist. LEXIS 52290, at *4 (S.D.N.Y. April 21, 2015) and citing 28 U.S.C. § 1367(a)). To determine if a common nucleus of operative facts exist, "courts look to whether the facts underlying the federal and state claims substantially overlapped or the federal claim necessarily brought the facts underlying the state claim before the court." *Id*. (citations omitted). A "common nucleus of operative fact [therefore] does not exist where the state law claims involve[d] different rights, different interests, and different underlying facts than the federal claims." *Id*. (citations omitted).

Critically, where the parties' prior employment relationship serves as the "sole fact" connecting a plaintiff-employee's wage and discrimination claims and a defendant-employer's state

13

law counterclaim, such a "slender reed" fails to establish the requisite common nucleus needed for the federal court to exercise supplemental jurisdiction over the counterclaim. *See, e.g.*, *Lopez v. Ki Moon Rest. Corp*., 2018 U.S. Dist. LEXIS 114558, at *6 (E.D.N.Y. Apr. 24, 2018) ("[C]ourts have repeatedly rejected the notion that claims meet the [common nucleus of operative fact] test merely because they arise out of the same employment relationship") (internal quotations omitted) (collecting cases); *Kobeck v. Armonk Bristal LLC*, 2018 U.S. Dist. LEXIS 45586, at *7 (S.D.N.Y. Mar. 19, 2018) ("District courts in this circuit have held that an employment relationship does not establish a common nucleus of operative fact where it is the sole fact connecting federal and non-federal claims.") (internal quotations and citations omitted); *Yahui Zhang v. Akami Inc*., 2017 U.S. Dist. LEXIS 158112, at *22 (S.D.N.Y. Sep. 26, 2017) ("[W]here the employment relationship is the sole connecting thread between claims, it is insufficient to support subject matter jurisdiction.") (citations omitted); *Anwar*, 2016 U.S. Dist. LEXIS 102816, at *4 (in an FLSA/NYLL case, dismissing defendants' state law counterclaims of breach of contract and unjust enrichment based on loans that defendant allegedly made to plaintiff because the parties' employment relationship was insufficient to form the basis of supplemental jurisdiction over the state law counterclaims); *Ozawa v. Orsini Design Assoc., Inc.*, 2015 U.S. Dist. LEXIS 29933, at *12 (S.D.N.Y. March 11, 2015) ("Because there is little beyond the employment relationship that joins the state law counterclaim with [plaintiff's] overtime claims, the Court concludes that it lacks jurisdiction over Defendants' state law counterclaim.") (Oetken, *J.*); *Shearon v. Comfort Tech Mechanical Co.*, *Inc.*, 2014 U.S. Dist. LEXIS 44888, at *3 (E.D.N.Y. March 31, 2014) ("The only discernible factual connection or overlap between Plaintiff's federal ADA claim and state-law fraud claim is the background circumstance of Plaintiff's employment relationship . . . [t]his bare link does not establish supplemental jurisdiction."); *Torres*, 628 F. Supp. 2d at 468 (collecting cases) ("As in the compulsory versus permissive counterclaim context, however, the employment relationship does

not establish a common nucleus of operative fact where it is the sole fact connecting [p]laintiffs'
federal overtime claims and [defendant's] state law counterclaims."). Moreover, even when such a
basis for exercising supplemental jurisdiction does exist, "such jurisdiction is discretionary." *See
City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 173 (1997).

### B.   *Hyperion's Counterclaim is Not Compulsory*

Hyperion's counterclaim is not compulsory.  The allegations in Plaintiff's Complaint relate
to Defendants' wage payment practices and their discriminatory treatment of Plaintiff based on her
sex and/or gender, national origin, religion, and disability.  Plaintiff alleged, *inter alia*, the number
of hours that she worked per week and how she was paid, thereby alleging that Defendants failed to
pay at an overtime rate in violation of the FLSA and NYLL.  Additionally, Plaintiff's allegations are
related to how Defendants discriminated against her based on her sex and/or gender, national origin,
religion, and disability.  Moreover, Plaintiff alleged that Defendants terminated her employment after
she rejected Defendant Richstone's unlawful sexual advancement.  Plaintiff also alleged that
Defendant Richstone required Plaintiff to undergo a medical examination because of Plaintiff's
hernia in violation of the ADA.

Hyperion's counterclaim sounding in conversion is wholly unrelated to Plaintiff's working
conditions at Defendants.  It did not even form the basis for Plaintiff's retaliatory termination.
Hyperion's allegation that Plaintiff "stole" her own medical file, which "a portion of" was returned
by Plaintiff, does not arise out of the same transaction or occurrence that is the subject of Plaintiff's
wage and discrimination claims.  Hyperion's counterclaim deals with an alleged misconduct
committed by Plaintiff on an unknown date, that may or may not be outside the statute of limitations.
Hence, Hyperion's counterclaim is not compulsory. *See Torres*, 628 F. Supp. 2d at 467 (finding that
a faithless servant counterclaim was not compulsory because the "faithless servant counterclaims are
not related to any aspect of these [compensation] practices; rather, they focus on discrete allegations

15

of misconduct - - sexual harassment and credit card fraud - - pertaining to only two Plaintiffs.").

###### C.     The Court Should Decline to Exercise Supplemental Jurisdiction Over Hyperion's Permissive Counterclaim

####### 1.     There is no common set of facts here

As is evident from the pleadings, Defendant Hyperion's counterclaim is permissive, and Plaintiff's prior employment relationship with Defendants is the sole "common fact" that connects her FLSA (and NYLL), Title VII, and ADA (and NYSHRL and NYCHRL) claims to Defendant Hyperion's state law counterclaim. Indeed, Plaintiff's FLSA (and NYLL) overtime and recordkeeping claims relate only to her hours worked each week and the manner in and amount for which Defendants paid (or failed to pay) her for such hours.  Additionally, the remainder of Plaintiff's claims under Title VII and ADA (and NYSHRL and NYCHRL) concern the alleged discrimination that Plaintiff endured before and during her employment with Defendants based on Plaintiff's sex and/or gender, national origin, religion, and disability.  In sharp contrast, Hyperion's state law counterclaim is based on Plaintiff's alleged taking of her medical file during an unknown date.  There is no set of common facts here because, for instance, Defendant Hyperion failed to allege that Plaintiff's alleged taking of her own medical file led to Plaintiff's termination.  Defendant Hyperion's counterclaim is silent on when Plaintiff allegedly "stole" her medical file and if this event happened before, during, or after Plaintiff's employment with Defendants.  Hyperion's failure to identify a date also impedes Plaintiff's ability to assert whether this claim is even timely filed. Instead, Defendant Hyperion vaguely alleged that it was "[o]nly after Defendant Hyperion . . . filed a police report concerning the theft did Plaintiff make any claims against Defendants."  "[C]ourts have held that there is no common nucleus of operative fact where the events underlying the federal claims occur at a different time than the events underlying the state law claims." *Rivera v. Ndola Pharmacy Corp.*, 497 F. Supp. 2d 381, 394 (E.D.N.Y. 2007) (citing *Wigand v. Flo-tek, Inc.*, 609 F.2d 1028, 1033 (2d Cir. 1980)); *see LaChapelle v. Torres*, 37 F. Supp. 3d 672, 682 (S.D.N.Y.

2014) (finding that plaintiffs' breach of contract claims pertaining to loans did not share a common nucleus of operative fact with plaintiffs' federal claims as there was "no allegation that these loans, made *before* Torres was terminated, were related in any way to Torres's alleged trademark infringement *after* his termination.") (emphasis added); *Shearon*, 2014 U.S. Dist. LEXIS 44888, at *9 ("Indeed, Plaintiff does not even argue that the two claims were linked by an overlapping course of conduct, or were of close temporal connection.  As Defendant argues, the allegations of discrimination cover a four-week period of time at the very end of Plaintiff's employment, while the fraud-related allegations are undated and have no demonstrable overlap with the four-week period.").

Additionally, Defendant Hyperion's allegation that "[o]nly after Defendant Hyperion . . . filed a police report concerning the theft did Plaintiff make any claims against Defendants[]" is an insufficient link to Plaintiff's claims. *See Lopez v. Ki Moon Rest. Corp.*, 2018 U.S. Dist. LEXIS 114558, at *7-8 (E.D.N.Y. Apr. 24, 2018), *adopted by*, 2018 U.S. Dist. LEXIS 114373 (E.D.N.Y. July 10, 2018) ("Nor does defendants' conclusory assertion that 'the Complaint was brought in retaliation for Plaintiff's justifiable firing . . .' warrant expanding the case to include otherwise unrelated allegations; indeed, to countenance such a detour from the gravamen of this case would simply invite a counterattack from plaintiffs that defendants' counterclaim was asserted in retaliation for their filing this lawsuit.").  Hence, Defendant Hyperion's counterclaim shares neither a "logical relationship," nor any common facts with Plaintiff's federal (and state) wage and discrimination claims.  *See, e.g.*, *Moran v. Tryax Realty Mgmt., Inc.*, 2016 U.S. Dist. LEXIS 68150, at *3 (S.D.N.Y. May 23, 2016) (finding that to prove defendants' counterclaims, which sounded in four different causes of action - - breach of the duty of loyalty, breach of fiduciary duty, fraud, and unjust enrichment - - defendants would have to establish a "significantly different set of facts involving numerous episodes of misconduct by Plaintiff that have little to do with Plaintiff's wage

17

and hour claim or even, for that matter, their exemption defense.") (internal quotations omitted); *Mori v. E1 Asset Mgmt.*, 2016 U.S. Dist. LEXIS 27911, at *7-8 (S.D.N.Y. Jan. 28, 2016) (dismissing breach of duty counterclaim because "[t]he only connection between Plaintiff's FLSA claims and the counterclaim is that they arise out of the same employment relationship, which courts in this district have found insufficient to support a finding that counterclaims are compulsory.") (citations omitted); *Ozawa*, 2015 U.S. Dist. LEXIS 29933, at *11-12 (in an FLSA/NYLL misclassification case, dismissing defendants' state law counterclaims of unjust enrichment as not related to the plaintiff's wage-related claims); *Shearon*, 2014 U.S. Dist. LEXIS 44888, at *12 (granting motion to dismiss fraud and misrepresentation counterclaims because "[l]itigating the ADA claim will not resolve or necessarily involve the facts underlying Plaintiff's fraud claim, and any overlap in discovery will be marginal at best."); *Torres*, 628 F. Supp. 2d at 467-69 (in an FLSA/NYLL case, dismissing defendants' state law faithless servant counterclaims, which were based on plaintiff's alleged sexual harassment of co-workers and credit card fraud, because the counterclaims were not related to defendants' compensation practices).

Indeed, to that end, discovery and trial on Defendant Hyperion's counterclaim would require presentation of entirely different evidence than that anticipated for Plaintiff's FLSA (and NYLL), Title VII, and ADA (and NYSHRL and NYCHRL) claims, which will focus chiefly on the hours that Plaintiff worked and money she received and the discrimination that Plaintiff experienced during her employment with Defendants. *See Moran*, 2016 U.S. Dist. LEXIS 68150, at *3 (denying exercise of supplemental jurisdiction when defendants' counterclaims will require them to prove, in a wage and hour case, *inter alia*, that plaintiff coerced superintendents to falsify and inflate invoices and perform unnecessary work); *LaChapelle*, 37 F. Supp. 3d at 682-83 ("While any inquiry into Plaintiffs' copyright claims must therefore delve into the limits *vel non* of Torres's authorization to create physical copies of LaChapelle's artwork, that analysis is entirely separate

18

from whether LaChapelle lent Torres money, the terms of any such loans and whether Torres has repaid the loans.").  Instead, under a conversion theory, Hyperion would need to produce evidence that: (1) Hyperion had legal ownership or an immediate superior right of Plaintiff's medical file, which was allegedly extracted from Hyperion's office; (2) Plaintiff actually took her own medical file; and (3) whether the entire file was returned to Hyperion. *See DER Travel Serv., Inc. v. Dream Tours & Adventures, Inc.*, 2005 U.S. Dist. LEXIS 25861, at *16 (S.D.N.Y. Oct. 28, 2005) ("a plaintiff must prove by a preponderance of the evidence: 'Legal ownership or an immediate superior right of possession to a specific identifiable thing and . . . that the defendant exercised an unauthorized dominion over the thing in question, to the alteration of its condition or to the exclusion of the plaintiff's rights.'").

In sum, the lone "slender reed" between Plaintiff's claims and Hyperion's counterclaim - - the parties' prior employment relationship - - falls well short of the link necessary for this Court to exercise supplemental jurisdiction over Defendant Hyperion's counterclaim for conversion.  Thus, because Hyperion's counterclaim does not share any common facts with Plaintiff's claims, Defendant Hyperion's state law counterclaim based on a theory of conversion should be dismissed pursuant to Fed. R. Civ. P. 12(b)(1).

### 2. *Even if there were a common set of facts, the Court should decline supplemental jurisdiction*

Further, even if there were common facts that tied Plaintiff's claims and the counterclaim to one another - - which there quite clearly are not - - strong policy considerations counsel against the Court exercising supplemental jurisdiction here. *Flanagan v. New York City Dep't of Educ.*, 2015 U.S. Dist. LEXIS 179845, at *17 (S.D.N.Y. Aug. 21, 2015) (quoting 28 U.S.C. § 1367(c)(4)) ("Furthermore, even where the court has authority to exercise supplemental jurisdiction, it has discretion to decline to do so if there are 'compelling reasons for declining

jurisdiction."'").

Defendant Hyperion's allegations supporting its counterclaim make clear that its obvious goal is to intimidate Plaintiff.  The Court should not reward Defendant Hyperion by allowing it to use this Court's resources to punish Plaintiff by forcing her to defend against this claim in this forum.  Doing so would sanction the inherent chilling effect on those who, like Plaintiff, seek only to exercise their rights to receive their earned and owed wages and to be free from discrimination in the workplace. *See Bill Johnson's Rest., Inc. v. N.L.R.B.*, 461 U.S. 731, 741 (1983) ("[T]he chilling effect of a state lawsuit upon an employee's willingness to engage in protected activity is multiplied where the complaint seeks damages in addition to injunctive relief."); *Torres*, 628 F. Supp. 2d at 473 ("[B]y countersuing, [defendant] sent . . . actual and potential class members a strong message that, by initiating and/or maintaining claims against [defendant], they would be subject to burdensome countersuits."); *see also Rosario v. Int'l Auto Mall & Leasing Ctr., Inc.*, 2013 U.S. Dist. LEXIS 37994, at *3 (S.D.N.Y. Mar. 19, 2013) (rejecting state-law counterclaims in consumer protection matter due to fear of chilling-effect on similar claims); *Jacques v. DiMarzio*, 200 F. Supp. 2d 151, 162-63 (E.D.N.Y. 2002) (describing retaliatory effect of bad faith counterclaim responding to plaintiff's wage claims).

As such, even were it in a position to properly exercise supplemental jurisdiction over the counterclaim, Plaintiff would still respectfully request that the Court decline to do so and dismiss the counterclaim pursuant to Fed. R. Civ. P. 12(b)(1) for this alternative reason.

## III.   SHOULD IT REACH THE MERITS, THE COURT SHOULD DISMISS DEFENDANT HYPERION'S COUNTERCLAIM UNDER A THEORY OF CONVERSION FOR FAILURE TO STATE A CLAIM PURSUANT TO FED. R. CIV. P. 12(b)(6)

### A.   *Legal Standard Under Fed. Civ. P. 12(b)(6)*

Under Fed. R. Civ. P. 8, a pleading "that states a claim for relief must contain . . . a short

and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). To survive a motion to dismiss pursuant to Rule 12(b)(6), the party's pleading must contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Segarra v. Federal Reserve of New York*, 17 F. Supp. 3d 304, 307-08, (S.D.N.Y. 2014) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) and *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim has facial plausibility when the party pleads "factual content that allows the Court to draw the reasonable inference that the [other party] is liable for the misconduct alleged." *Roberts v. Bliss*, 229 F. Supp. 3d 240, 247-48 (S.D.N.Y. 2017) (citation omitted).

"Rule 8 . . . demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Arace v. Quicken Loans, Inc.*, 2016 U.S. Dist. LEXIS 11510, at *2 (S.D.N.Y. Feb. 1, 2016) (internal quotation marks omitted).  A pleading "must contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory." *Invamed, Inc. v. Barr Laboratories, Inc.*, 22 F. Supp. 2d 210, 216 (S.D.N.Y. 1998) (citations omitted).  "The District Court has no obligation to create, unaided by [a party], new legal theories to support a [pleading]." *Karacostas v. Cigna Intern. Corp.*, 1991 U.S. Dist. LEXIS 646, at *2 (S.D.N.Y. Jan. 22, 1991) (citations omitted).  Indeed, "[a] motion to dismiss counterclaims under Rule 12(b)(6) is decided under the same standard applied to a motion to dismiss the claims of a complaint." *Crye Precision LLC v. Duro Textiles, LLC*, 112 F. Supp. 3d 69, 79 (S.D.N.Y. 2015) (citation omitted) (Cote, *J.*).

**B.**   ***Hyperion's counterclaim sounding in conversion must be dismissed as a matter of law because it failed to allege that Hyperion had legal ownership or an immediate superior right of possession to a specific property***

Under New York law, to establish a claim for conversion, a plaintiff must show that: "(1) the property subject to conversion is a specific identifiable thing; (2) plaintiff had ownership, possession or control over the property before its conversion; and (3) defendant exercised an

unauthorized dominion over the thing in question, to the alteration of its condition or to the exclusion of the plaintiff[']s rights." *Bandler v. BPCM NYC, Ltd.*, 2014 U.S. Dist. LEXIS 137381, at \*12 (S.D.N.Y. Sept. 29, 2014) (citations omitted); *see Thyroff v. Nationwide Mut. Ins. Co.*, 460 F.3d 400, 403-04 (2d Cir. 2006) (quoting *Vigilant Ins. Co. of Am. v. Hous. Auth.*, 87 N.Y.2d 36, 44 (1995)) ("According to New York law, 'conversion is the unauthorized assumption and exercise of the right of ownership over goods belonging to another to the exclusion of the owner's rights.'"). In other words, "[a] claim for conversion does not lie unless plaintiff can establish that it had *legal ownership or an immediate superior right of possession to specific, identifiable property*." *Rodgers v. Roulette Record, Inc.*, 677 F.Supp. 731, 736 (S.D.N.Y. 1988) (emphasis added). Hence, "[a]n action for conversion can be maintained only by the true owner of the property." *Bank of America Corp. v. Lemgruber*, 385 F. Supp. 2d 200, 222 (S.D.N.Y. 2005) (citing *Leveraged Leasing Admin. Corp. v. PacifiCorp Capital, Inc.*, 87 F.3d 44, 50 (2d Cir. 1996)).

In its counterclaim here, Defendant Hyperion alleged only that Plaintiff "stole a medical file, which belongs to Hyperion, from Defendant Hyperion Medical, P.C.'s office. (That file contains medical information pertaining to Plaintiff.)" Dk. No. 13, ¶ 64.  Hyperion alleged that "[o]nly after Defendant Hyperion Medical, P.C. filed a police report concerning the theft did Plaintiff make any claims against Defendants." Dkt. No. 13, ¶ 65.  Finally, Hyperion alleged that "Plaintiff's then counsel returned a portion of the file to Defendant Hyperion Medical, P.C." Dkt. No. 13, ¶ 66.

Thus, in its Answer and Counterclaim, Hyperion merely made a conclusory allegation that the medical file containing Plaintiff's medical information "belong[ed]" to Hyperion.  This bare and conclusory allegation is fatal to Hyperion's counterclaim. *See Yantha v. Omni Childhood Ctr., Inc.*, 2013 U.S. Dist. LEXIS 134940, at \*29 (E.D.N.Y. Sep. 20, 2013) ("Plaintiff's conclusory allegation that the electronic accounts 'belonged' to her . . . is precisely the type of threadbare recital

of an element of the cause of action, supported by a mere conclusory statement, that *Twombly* and *Iqbal* instruct is insufficient.") (internal quotations and citation omitted).  Indeed, Hyperion cannot possibly allege that it had legal ownership, possession, or control over Plaintiff's medical file as Hyperion, as a medical corporation, did not have legal ownership over Plaintiff's medical records. *See Gerson v. N.Y. Women's Med., P.C.*, 671 N.Y.S. 2d 104, 104 (2d Dep't, 1998) ("Although patients have the right to access their records concerning medical treatment . . . it is well settled that records taken by a doctor in the examination and treatment of a patient are properly belonging to the doctor.") (citations omitted); *Prohealth Care Assocs., LLP v. April*, 798 N.Y.S.2d 347, at \*19-20 (Nassau Cty. Sup. Ct. Aug. 18, 2004) (finding that medical corporation lacked standing to bring a conversion claim because medical records belonged to those doctors who provided the medical services); *Lewis v. Clement*, 766 N.Y.S.2d 296, 297 (Monroe Cty. Sup. Ct. July 2, 2003) ("It has been held that a corporate entity that provides medical and dental services has no patients of its own and, therefore, no interest in patient records.") (internal quotations and citations omitted). Additionally, Hyperion alleged that "Plaintiff is liable to Defendant Hyperion Medical, P.C. for damages, including punitive damages, in an amount to be determined at trial." Dkt. No. 13, ¶ 67. But punitive damages "may be recovered for an act of conversion where the circumstances establish that the conversion was accomplished by malice or reckless or willful disregard of the plaintiff's right."  Defendant Hyperion failed to allege facts that Plaintiff acted with malice, recklessness, or in willful disregard of Hyperion's right. *See Kubin v. Miller*, 801 F. Supp. 1101, 1122 (S.D.N.Y. 1992) (citation omitted).

Therefore, the Court should dismiss Defendant Hyperion's counterclaim sounding in conversion, and Hyperion's punitive damages claim arising out of the alleged conversion claim, should it reach the merits. *See Berman v. Sugo LLC*, 580 F. Supp. 2d 191, 207 (S.D.N.Y. 2008) ("Counterclaim . . . fails to allege Counter- Plaintiffs' ownership of the allegedly converted property

and Counter-Defendants' exercise of control or ownership of the allegedly converted property to the exclusion of the owners' rights."); *Bank of America Corp.*, 385 F. Supp. 2d at 223 ("Plaintiffs' conclusory allegation that they have a legal right and an immediate superior right of possession to assets currently being held by Defendant . . . is, without more, insufficient to survive a motion to dismiss.") (internal quotations omitted).

## IV.   IN THE EVENT THE COURT DENIES PLAINTIFF'S INSTANT MOTION, PLAINTIFF REQUESTS LEAVE TO AMEND HER COMPLAINT

Leave to amend shall be freely given when justice so requires. Rule 15(a). "Factors that are relevant to the exercise of the Court's discretion include: (1) the presence of bad faith, dilatory motives, or undue delay on the part of the movant; (2) the potential for prejudice to an opposing party; and (3) whether the sought-after amendment would be futile." *Beachum v. AWISCO New York*, 785 F. Supp. 2d 84, 104 (S.D.N.Y. March 16, 2011) (citation omitted). "An amendment to a pleading is futile if the proposed claim could not withstand a motion to dismiss pursuant to [Rule] 12(b)(6)." *Lucente v. Int'l Bus. Machines Corp.*, 310 F.3d 243, 258 (2d Cir. 2002). In the event that the Court denies Plaintiff's instant motion, Plaintiff seeks leave to amend Plaintiff's Complaint to add a claim of retaliation under FLSA, NYLL, Title VII, ADA, NYSHRL, and/or NYCHRL against Defendant Hyperion. Here, there is no bad faith, dilatory motives, or undue delay on the part of the Plaintiff as Plaintiff, in response to Hyperion's Counterclaim, is expeditiously seeking leave to amend her Complaint. Certainly, there is no potential prejudice to the opposing party as, in the event the Court denies Plaintiff's instant motion, Defendant Hyperion would have ample of time to provide an Answer to Plaintiff's Amended Complaint and engage in discovery concerning the issues raised. Lastly, such amendment is not futile as case law acknowledges that baseless counterclaim can constitute an actionable retaliation claim. *Torres*, 628 F. Supp. 2d at 473 ("Bad faith or groundless counterclaims and other legal proceedings against employees who assert statutory rights are

24

actionable retaliation precisely because of their in *terrorem* effect.") (citation omitted).  Plaintiff attaches her proposed amended pleading, with tracked changes clearly marked. *See* Mesidor Decl., Exhibit C.

### **CONCLUSION**

For the foregoing reasons, Plaintiff respectfully requests that the Court enter an order: (1) dismissing Defendant Hyperion's counterclaim for failure to comply with the pleading requirements of Fed. R. Civ. P. 8(a)(1); and/or (2) dismissing Defendant Hyperion's counterclaim sounding in conversion pursuant to Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction; or alternatively (3) dismissing Defendant Hyperion's counterclaim sounding in conversion pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted; or alternatively, in the event the Court denies Plaintiff's instant motion, (4) to permit Plaintiff to amend her Complaint; and (5) for such other and further relief as the Court deems just and proper.

Dated: New York, New York
        October 11, 2018

Respectfully submitted,

PHILLIPS & ASSOCIATES, PLLC
*Attorneys for Plaintiff*
45 Broadway, Suite 620
New York, New York 10006
Tel. No. (212) 248-7431
Fax: (212) 901-2107


By:  _____/s/_____
MARJORIE MESIDOR, ESQ. (MM 1978)
JOAN B. LOPEZ, ESQ. (JL 4337)