UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------------X   18-CV-07652 (DLC)

LEONIDES DUVERNY,

                              Plaintiff,   **PLAINTIFF'S RESPONSE TO DEFENDANTS' RULE 56.1 STATEMENT OF UNDISPUTED MATERIAL FACTS**

                -against-

HERCULES MEDICAL P.C. and HYPERION
MEDICAL P.C., and ACHILLES MEDICAL P.C.,
and GEOFFREY RICHSTONE, individually,

                              Defendants.
------------------------------------------------------------------------X

     Pursuant to Local Rule 56.1 for the Southern District of New York, Plaintiff submits this Statement of Material Facts in Dispute in opposition to Defendants' Local 56.1 Statement of Undisputed Material Facts and in opposition to Defendants' Motion for Summary Judgment.

|    | **Defendants' Alleged Undisputed Material Facts** | **Plaintiff's Response** |
|----|---------------------------------------------------|--------------------------|
| 1. | Defendant Geoffrey Richstone ("RICHSTONE") is eighty (80) years old. *See* the August 21, 2019 RICHSTONE Affidavit in Support (the "RICHSTONE Affidavit") at ¶2. | Disputed, Defendant is now 81 years old. |
| 2. | Plaintiff Leonides Duverney ("DUVERNY") is forty-three (43) years old. *See* DUVERNY Deposition (Exh. "3") at 182, 1. 21 - 183, 1. 5 and the U.S. EEOC Intake Questionnaire (Exh. "1") at item 1. | Admit. |
| 3. | RICHSTONE has a Jamaican wife. *See* RICHSTONE Affidavit at ¶4. | Dispute to the extent that this purported fact is not relevant to any claims or defenses at issue in this case. |
| 4. | RICHSTONE has a child who is Haitian, who is named after him, and who he sees whenever he can (he is a CIA agent stationed in Germany). *Id.* at ¶3. | Disputed, RICHSTONE's son is an American as Defendants do not dispute that RICHSTONE was born in the United States. |
| 5. | DUVERNY is Haitian. *See* the DUVERNY complaint (Exh. "2") at ¶15. (The pleadings are attached as Exh. "2"). | Admit, though Defendants do not cite to admissible evidence. |

| 6. | DUVERNY testified that RICHSTONE hired and fired her. *See* DUVERNY Deposition (Exh. "3") at 44, 1. 22 - 45, 1. 2 | Admit. |
|---|---|---|
| 7. | DUVERNY was hired by Defendant Hyperion Medical P.C. ("HYPERION MEDICAL"), a medical office that RICHSTONE is affiliated with. See RICHSTONE Affidavit at r. See also DUVERNY Deposition (Exh. "3") at 153, 1. 2-21 and the New York Pay Notice form (Exh. "4") at the Employer Section on the first page. | Disputed. Plaintiff was hired by Defendant Richstone to work at Hyperion Medical P.C. (Duverny Dep. Tr. 45: 3-11, 160: 23-25; Richstone Dep. Tr. 107: 16-18) |
| 8. | Most of HYPERION MEDICAL's patients are African American or Hispanic from lower income groups. See RICHSTONE Affidavit at ¶5. | Dispute to the extent that this purported fact is not relevant to any claims or defenses at issue in this case. |
| 9. | DUVERNY worked for HYPERION MEDICAL for six months: November 2, 2015 through May 10, 2016. *See* the U.S. EEOC Intake Questionnaire (Exh. "1") at item 3; *see also,* RICHSTONE Affidavit at ¶12. | Admit. (Duverny Dep. Tr. at 118:8-20). |
| 10. | DUVERNY testified that not only did she perform her job well, but also that she performed the work of three different people. See DUVERNY Deposition (Exh. "3") at 50, 1. 4-6, 51, 1. 3-17. | Admit to the extent that Plaintiff did her job well. Plaintiff was assigned triple work and was not paid for three different jobs. (Duverny Dep. Tr. 51: 3-14) |
| 11. | Prior to being hired by HYPERION MEDICAL, DUVERNY:<br>• Received free medical care from HYPERION MEDICAL, See, e.g., DUVERNY Deposition (Exh. "3") at 31, 1. 5 - 11, 17-19 and 33, 1. 8-12.<br>• Dated RICHSTONE by going out to at least four dinners with him, Id. at 40, 1. 2<br>• Gave him - maybe - at least one hug, Id. at 120, 1. 21-23. (RICHSTONE claims that DUVERNY initiated and then kissed him on the lips toward the end of each date and that they fooled around in his car at the conclusion of one date.) See RICHSTONE Affidavit at ¶8.<br>• Texted RICHSTONE on a regular basis, Id. at n.1; see the text messages between RICHSTONE and DUVERNY (Exh. "5").<br>• Received help with her rent from RICHSTONE, Id. at Bates Stamp No. 217.<br>• Received help from RICHSTONE in trying to obtain a job, See, e.g., DUVERNY Deposition (Exh. "3") at 38, 1. 12-23. and<br>• Received help from RICHSTONE (along with another) with obtaining her an apartment in Manhattan. Id. at 21, 1.25 - 22, 1. 22. Dr. Charles | Disputed. Plaintiff never dated Defendant Richstone, never voluntarily hugged him, and never kissed him. Plaintiff never "fooled around" with Defendant Richstone in a car or anywhere else. Defendant Richstone never accepted help with her rent from Defendant Richstone. Defendants mischaracterize texts messages exchanged between Plaintiff and Defendant Richstone. In fact, in the text message Defendant Richstone refers to, Plaintiff declines his offer of help with rent. Dr. Charles McGowan did not pay for Plaintiff's expenses for "years." (Duverny Dep. Tr. pp. 103:7-19; 118:14-119:7; 123:7-11; 167:17-168:6; Friedman Decl. Ex. 3). |

2

| | | |
|---|---|---|
| | McGowan paid DUVERNY's rent ($1,950) and expenses (an additional $200) for months (if not years)). See DUVERNY Deposition (Exh. "3") at 22, 1. 13-20. | |
| 12. | During this time period, DUVERNY/RICHSTONE had, inter alia, the following text messages:<ul><li>DUVERNY texted RICHSTONE about meeting him for dinner and sent him a very sad face when she knew that she may be a few minutes late: "Walking towards restaurant now, may be a few minutes late. :(( " (June 8, 2015) See the text messages between RICHSTONE and DUVERNY (Exh. "5") at Bates Stamp No. 213.</li><li>DUVERNY texted RICHSTONE, while she claimed to be in church: "At church doc. If [the] pastor takes a breach, [I] will call you. Otherwise, I leave here late so [I] will call u tomorrow." (June 12, 2015, which is a Friday) *Id*.</li><li>Later that day, DUVERNY thanked RICHSTONE and wished him "Nite doc" (June 12, 2015 at 9:52 pm). *Id*.</li><li>DUVERNY texted RICHSTONE on a holiday (July 4th) and wished him a "Happy Fourth!!,"complained that the party that she was going to was a pot luck party, which meant that she had to bring something to the party, but then ended the conversation by laughing out loud apparently because she was so happy to be texting RICHSTONE: "Hi Doc, Happy Fourth!! Heading to Bidia's BBQ today. Why does she ask ppl to bring food is unknown to me, but I am excited to go. Lol [Laugh out loud.]." (July 4, 2015). *Id*. at Bates Stamp No. 215).</li><li>RICHSTONE (who has a fondness for Jamaicans and teases them unmercifully) (See RICHSTONE Affidavit at ⁋4.) responded the next day by making a Jamaican joke (bring Jamaican food and you will never be invited again) with DUVERNY responding within an hour by laughing out loud ("Lol . . .") at the joke: "Take Jamaican food. Then she will never again ask you to bring food." (July 5, 2015 at 12:09 pm) "Lol. . . ." (DUVERNY's response within an hour of RICHSTONE's text). See the text</li></ul> | Disputed. Defendants mischaracterize, misrepresent, and present out of context various texts messages exchanged between Plaintiff and Defendant Richstone. Plainitiff did not "laugh out loud" because she was happy to be texting Defendant Richstone. Plaintiff never thanked Richstone for helping with rent but actually declined his offer to help. (Duverny Dep. Tr. pp. 101:18-102:21; Friedman Decl. Ex. 3;). |

|  | messages between RICHSTONE and DUVERNY (Exh. "5") at Bates Stamp No. 215.<br>• DUVERNY excitedly thanked RICHSTONE for inviting her out to dinner again: "Monday sounds great Doc! Thank you." (September 9, 2015) Id.<br>• On Monday, September 14, 2015, RICHSTONE texted DUVERNY the name and location of the French restaurant with DUVERNY responding within an hour by thanking him again: "Bistro da cote, on First Ave. . . . "Thank you. . . . C you soon." (DUVERNY's response within an hour of RICHSTONE's text) Id. at Bates Stamp No. 215A.<br>• When RICHSTONE was a little late for the dinner appointment (on September 14th), DUVERNY immediately responded by making a Jamaican joke that RICHSTONE was late like a Jamaican and by mimicking a Jamaican herself: "Yea [yah] man" followed by laughing out loud at her joke:<br>"I'm here."<br>"Soon come." (RICHSTONE response)<br>"Yea [yah] Man." (first DUVERNY response)<br>"Lol." (second DUVERNY response)<br>(September 14, 2015). Id. at Bates Stamp No. 216.<br>• On September 16, 2015, DUVERNY and RICHSTONE were engaged in late night text messaging with each other (the text messages were sent at 12:18 am) with RICHSTONE joking that DUVERNY was a Jamaican and all Jamaicans are asleep at that time; DUVERNY responded to these jokes by again laughing out loud ("Lol"), which was followed up with a smiling face<br>(":)":<br>"Did you receive it - [my resume]."<br>"No, obviously. Why are your awake at this hour? All Jamaicans have been asleep since 9 am."<br>"Lol." (first DUVERNY response)<br>"I will send it again tomorrow. :) " (second DUVERNY response)(September 16, 2015 at 12:18 am). Id.<br>• Thereafter, on that same day, DUVERNY emailed her resume RICHSTONE, thanked him |  |

4

- for his help with finding a job, and, then thanked RICHSTONE for helping her with the rent:
"I emailed it [her resume]. . . ."
"I cannot thank u enough doc & I truly appreciate the help with the rent." (September 16, 2015 at 12:51 pm). Id. at Bates Stamp No. 216-217.
- Meanwhile, when DUVERNY did not send her resume, RICHSTONE responded: "No resume, Bimbo." DUVERNY's initial response was a sad face (" :( "), which was immediately followed up by a series of text messages, including DUVERNY making a Jamaican joke that her omission in sending the resume is the way a Jamaican acts: "Jamaican MAN" followed up with her laughing out loud ("Lol") again:

"No resume, Bimbo."
"Bimbo? :( " (first DUVERNY response)
"Just sent it again." (second DUVERNY response)
"Jamaican MAN." (third DUVERNY response)
"Lol." (fourth DUVERNY response)
"Let me know if you receive it." (fifth DUVERNY response)
(September 18, 2015 at 8:16 pm). Id. at Bates Stamp No. 217.

- Thereafter, RICHSTONE sent DUVERNY's resume to a friend, DUVERNY responded on a Sunday that he was the best and thank you:

"You[']r[e] the best!! Thank u. . . ." (Sunday, October 4, 2015). Id. at Bates Stamp No. 218.

- DUVERNY was leaving for a trip to Europe at this time, which led to RICHSTONE joking with her that he would feed her after she returns; DUVERNY's responded to this joke by laughing out loud with excitement:

"Have a good trip. I'll feed you when you get back."
"Lol, you got it!"
(Id.) Id. at Bates Stamp No. 218.

- When DUVERNY returned from Europe, she texted RICHSTONE on Saturday that she had not heard from the person RICHSTONE had sent DUVERNY's resume to, which led to RICHSTONE offering her a job with HYPERION MEDICAL, with DUVERNY being very excited about the prospect of working with RICHSTONE:

|  |  |  |
|---|---|---|
|  | "I'm back. ... I did not hear from [the person that you sent my resume to.]" (Saturday, October 17, 2015) Id.<br>"I'm here [at HYPERION MEDICAL]."<br>"Thank You!!!" (DUVERNY excitedly thanking RICHSTONE for the job.)<br>"No problem." (RICHSTONE response) (October 22, 2015) Id. at Bates Stamp No. 220.<br>• RICHSTONE also helped DUVERNY obtain an apartment in Manhattan, which led to her texting him:<br>"I have to deliver the applications [for the apartment] tomorrow. . I will<br>keep you posted. Thank you for everything Doc. call u soon."<br>(October 23, 2015). Id. |  |
| 13. | In stark contrast to the friendly, laughing, and bubbly text messages from DUVERYNY to RICHSTONE during this time period, DUVERNY testified that she felt "uncomfortable" with RICHSTONE for a variety of reasons including:<br>• RICHSTONE "made me" take a HIV test. See DUVERNY Deposition (Exh. "3") at 35, l. 1-12.<br>• RICHSTONE "forced" me to go to a Caribbean Island (which did not occur) and then "forced" me to drink wine during dinner (DUVERNY acknowledged during the deposition that she did not go to the Caribbean Island and being "forced" to drink wine meant that she was told by RICHSTONE that she should drink wine and that she could have left the dinner, if she wanted to.) Id. at 39, l. 24 – 41, l. 24. | Disputed. Defendants mischaracterize text messages exchanged between her and Defendant Richstone. (Friedman Decl. Ex. 3) |
| 14. | A few days prior to beginning work, DUVERNY signed a NY Pay Notice form. Id. at 151, l. 20 – 155, l.25 and the NY Pay Notice form (Exh. "4"). | Dispute that Plaintiff received a proper wage notice. |
| 15. | On November 2, 2015, DUVERNY commenced work at HYPERION MEDICAL. See footnote 9, supra. | Admit. |
| 16. | After she was hired by HYPERION MEDICAL, DUVERNY:<br>• Dated RICHSTONE by going out to three to four dinners with him, See DUVERNY Deposition (Exh. "3") at 108, l. 7-12.<br>• Asked RICHSTONE up to her apartment ((according to DUVERNY); according to RICHSTONE, DUVERNY asked him to her apartment to have sex and was wearing a very | Disputed. Defendants mischaracterize, misrepresent, and present out of context various texts messages exchanged between Plaintiff and Defendant Richstone. Plaintiff never dated Defendant Richstone and Defendant Richstone invited himself to see her apartment. Plaintiff never asked Richstone to |

6

|  |  |  |
|---|---|---|
|  | revealing outfit when he got there) Id. at 131, l. 3-17 and the RICHSTONE Affidavit at ¶¶13, 16.<br>• Gave hugs to RICHSTONE on a weekly basis (according to DUVERNY), See DUVERNY Deposition (Exh. "3") at 118, l. 14 – 21.<br>• Dated RICHSTONE by accompanying him to a book lecture, Id. at 110, l. 10-24.<br>• Dated RICHSTONE by accompanying him to a car dealership, Id. at 112, l. 21 – 113, l. 12,<br>• Texted RICHSTONE a million kisses, See the text messages between RICHSTONE and DUVERNY (Exh. "5") at Bates Stamp No. 221.<br>• Texted RICHSTONE millions of hugs and kisses, Id. at Bates Stamp No. 224.<br>• Texted RICHSTONE at 12:22 AM on a holiday (New Year's Day), Id.<br>• Texted RICHSTONE on February 24, 2019 - only two and a half months prior to her leaving HYPERION MEDICAL - that "it would mean much to me if you too did not turn on me," Id. at Bates Stamp No. 227<br>• Texted RICHSTONE just forty days prior to her leaving HYPERION MEDICAL that "it would make more sense if you were my date," Id. at Bates Stamp No. 228.<br>• Texted RICHSTONE just eight days prior to her leaving HYPERION MEDICAL that she would "C you tomorrow, thank you!!!," Id. at Bates Stamp No. 229<br>• Texted RICHSTONE the day before she left HYPERION MEDICAL that she wanted to meet with him outside of the office, Id.<br>• Accepted the gift of a mattress from him, See DUVERNY Deposition (Exh. "3") at 124, l. 3 – 25<br>• Accepted the gift of a scale from him, Id. at 131, l. 25 – 132, l. 16. and<br>• Canceled her gym membership in order to join the same gym as RICHSTONE, with RICHSTONE paying the difference in cost between them, Id. at 24, l.24 – 25, l. 9 and 132, l. 17-24. | have sex with her. Plaintiff never voluntarily hugged Defendant Richstone on a weekly basis. (Duverny Dep. Tr. pp. 29:13-29:20 131:3-22; 118:14-119:7; 167:17-168:6). |
| 17. | During this time period, DUVERNY/RICHSTONE had, inter alia, the following text messages: | Disputed.  Defendants mischaracterize, misrepresent, and present out of context various texts messages exchanged |

7

| | | |
|---|---|---|
| | • Within three days after being hired, DUVERNY requested an extended lunch break and after RICHSTONE allowed it, DUVERNY responded by giving him a million kisses:<br>"Just finished lunch, running down to c a place. Will not take more than 25 minutes."<br>"Take as much time as you need."<br>"Thank you a million X [kisses] Doc!!"<br>(November 6, 2015). Emphasis added. See the text messages between RICHSTONE and DUVERNY (Exh. "5") at Bates Stamp No. 221.<br>• When RICHSTONE complained about DUVERNY's texting, DUVERNY responded by trying to make the complaint into a joke and laughed out loud at the complaint:<br>"Stop annoying me with texts. . . ." (RICHSTONE to DUVERNY)<br>"Lol" (DUVERNY's response to the complaint)<br>(November 4-5, 2015) Id.<br>• DUVERNY asked RICHSTONE to help her out with her apartment situation again by lying about her salary and position at HYPERION MEDICAL:<br>"Hi Doc. Broker just asked about [the] letter again."<br>(November 6, 2015) Id. at Bates Stamp No. 222.<br>• DUVERNY asked RICHSTONE to help her out with her job search by lying about her salary and position at HYPERION MEDICAL and her dates of service at HYPERION MEDICAL:<br>"Morning Doc. Heading out to the interview, see photo"<br>The photo contains a picture of the relevant portion of DUVERNY's fraudulent resume and includes the following comment from DUVERNY:<br>"Using you as a reference and as Office Manager/Owner/CEO - salary is $52,000 yearly. Thank you!!"<br>(December 29, 2015) Id. at Bates Stamp No. 223.<br>• DUVERNY wished RICHSTONE Happy New Year at 12:22 am on New Year's Day, blessed him, and sent RICHSTONE one million hugs and kisses:<br>"Happy New Year to you! Safe travel, and come home safe. God bless you always. One million hugs and kisses."<br>(January 1, 2016 (New Year's Day) at 12:22 am). Emphasis added. Id. at Bates Stamp No. 224. | between Plaintiff and Defendant Richstone. (Friedman Decl. Ex. 3). |

8

- RICHSTONE did not respond to the New Year's Day greeting for over two weeks (until Saturday, January 16, 2016 at 9:17 pm) and then made a joke about Charles Dickens being Haitian; DUVERNY immediately responded to RICHSTONE's text messages as she generally always did:

"bah humbug." (RICHSTONE to DUVERNY)
"What's that?" (DUVERNY to RICHSTONE)
"Isn't Christmas over?" (DUVERNY to RICHSTONE)
"Charles Dickens. Hattian writer." (RICHSTONE to DUVERNY)
"Thought it was an expression of dislike for Christmas season" (DUVERNY to RICHSTONE)
"I'll look him up" (DUVERNY to RICHSTONE)
"Stop." (RICHSTONE to DUVERNY)
(Saturday, January 16, 2016 at 9:17 pm) Id.

- DUVERNY complained about her direct supervisor (Lisa Robinson) being temperamental because she found out that RICHSTONE had invited her to a dinner:

"Your temperamental Lisa is yelling and Shouting at me. . . . I'm honestly under attack here & its because Lisa found out u invited me to that group dinner. She used to be nice to me, but she doesn't like me anymore. It all started when her and Bev [another HYPERION MEDICAL employee] asked me abt [about] the dinner. . . ."
(February 24, 2016) Id. at Bates Stamp No. 225-226.

- When RICHSTONE did not support DUVERNY concerning this complaint and told her to stop texting him, DUVERNY told RICHSTONE that "it would mean much [to me] if you too did not turn on me!" The following are the relevant portions of the text messages:

"Write down for me what you need to be trained in and I'll go over it with Lisa. You can be overly aggressive, and that may have ticked Lisa off the way you did Angelita [another HYPERION MEDICAL employee]. Stop texting me!"
"I'm not aggressive. You are the first to say that. We both know I have done nothing to Angelita who everyone here calls the enemy and u know it. It would mean much [to me] if you too did not turn on me!"
(February 24, 2016). Emphasis added. Id. at Bates Stamp No. 226-227.

9

|   |   |   |
|---|---|---|
|   | • DUVERNY texted RICHSTONE that "it would have made more sense if you were my date" with just forty days left in her employment, but then retracted the text because she realized that RICHSTONE would object to it:<br>"It would have made more sense if you were my date, but I guess that would be a conflict of interest. Don't reply."<br>(March 30, 2016). Emphasis added. Id. at Bates Stamp No. 228.<br>• Just a week prior to leaving HYPERION MEDICAL, DUVERNY asked RICHSTONE to help her out with her job search by putting him down as a reference, asked him to lie about her salary, and then thanked RICHSTONE for whatever help he could provide:<br>"Put you down for [a] reference as my boss & list you as [the] CEO. Case you get a call. . . . C you tomw, thank you!!!!<br>"I earn $55 per year salary."<br>(May 2, 2016). Emphasis added. Id.<br>• DUVERNY requested to meet with RICHSTONE outside of the office on May 9, 2016, the day before she allegedly was fired:<br>"Can we meet at HSBC corner of 87th and 3rd?"<br>(May 9, 2016). Emphasis added. Id. at Bates Stamp No. 229. |   |
| 18. | Conspicuously absent from the text messages were any complaints to RICHSTONE about his alleged harassment of her. See the text messages between RICHSTONE and DUVERNY (Exh. "5"). | Disputed. Plaintiff complained to Defendant Richstone about his behavior. (Duverny Dep. Tr. pp. 118:19-21; 118:23-119:7; 134:22-138:16). |
| 19. | DUVERNY repeatedly requested that RICHSTONE should leave his wife for her. See the RICHSTONE Affidavit at ¶14. | Disputed. Plaintiff was in an exclusive relationship with another individual and made that clear to RICHSTONE by mentioned her boyfriend frequently and having them meet so RICHSTONE would leave her alone. Duverny Dep. Tr. pp. 23:17-19 48:2-11) |
| 20. | DUVERNY stole her medical file, which is the subject of HYPERION MEDICAL's counterclaim (see Exh. "2" for the pleadings), and was told to either return the medical file or be terminated. When she did not return | Disputed. Plaintiff took her medical file to prevent fraud and believed she had a right to take it. (Duverny Dep. Tr. p. 161:12-22). |

10

|     |     |     |
| --- | --- | --- |
|     | her medical file, a police report was filed. Id. at 42-44. See also, the police report (Exh. "7"). |     |
| 21. | Only after the police report was filed, did DUVERNY allege that she was subjected to discrimination. *Id.* | Plaintiff complained to Defendant RICHSTONE about his discriminatory, sexually harassing behavior and rejected his advances throughout her employment tenure. (Duverny Dep. Tr. generally) |
| 22. | For example, there are no written documents from DUVERNY alleging that she was discriminated against or harassed prior to the police report being filed. Id. | Disputed. Plaintiff regularly rejected RICHSTONE's advances orally throughout her employment tenure. (Duverny Dep. Tr. generally) |
| 23. | HYPERION MEDICAL would have fired DUVERNY anyway because she took her medical chart and failed to return it. See RICHSTONE Affidavit at ¶45. | Disputed. Plaintiff was fired for refusing to submit to physical exams out of fear that she would be molested. Defendants had already fired Plaintiff when she took her own medical chart. (Duverny Dep. Tr. pp 160:21-161:22. |
| 24. | DUVERNY testified that she was fired because she refused to undergo further medical examinations by HYPERION MEDICAL's doctors. She testified:<br>Q.     "It says, I was fired from my job because I didn't want to undress for multiple [medical] examinations when it was slow - do you see that?<br>A.     "I see that."<br>Q.     "Is that accurate as to what you told to the U.S. Department of Labor?"<br>A.     "That's accurate." See DUVERNY Deposition (Exh."3") at 179, l. 9-16. See also, the U.S. Department of Wage and Hour<br>Division, Employment Information Form (Exh. "1") at Bates Stamp No. 283. | Admit. |
| 25. | Likewise, within a few months after her termination, DUVERNY emailed a potential employer that she was separated from HYPERION MEDICAL because the PC alleged retaliated against her because she refused to commit insurance fraud:<br>"Please note that I was separated from my most recent job (HYPERION MEDICAL PC) due to retaliation. I [was] retaliated [against] because I was asked repeatedly to commit insurance fraud." See DUVERNY Deposition | Admit. |

11

|     | (Exh."3") at 183, l. 14-19 and DUVERNY's August 18, 2016 email (Exh."6") at Bates Stamp No. 228. |     |
| --- | --- | --- |
| 26. | In her deposition, DUVERNY parroted her pre-employment testimony and claimed that RICHSTONE "forced" her to do this and that: he "forced" me to go out to dinner, he "forced" me to take medical examinations, he "forced" me to join his gym. See DUVERNY Deposition (Exh. "3") at 27, l. 9-20. | Admit. Defendants mischaracterizes and mocks Plaintiff deposition testimony. |
| 27. | DUVERNY claimed that in the medical office RICHSTONE touched, grabbed and/or put his finger in her vagina. DUVERNY then went on to testify that after this act occurred, RICHSTONE asked her for a hug, which she then gave him. That hug was not a pro forma hug; she left foundation on his shirt, which she then tried to clean up. Id. at 138, l.6 – 139, l.18. | Admit, that Richstone sexually assaulted Plaintiff and Richstone hugged her. (Duverny Dep. Tr. pp.134:22-139:7). |
| 28. | RICHSTONE categorically denied the incident ever occurred and noted that he would have been crazy to attempt to harass DUVERNY since the office is small and is always crowded with patients and employees; if DUVERNY shouted, cried out, or called for help, people would have been there in seconds. See RICHSTONE Affidavit at ¶20. | Admit, only that Richstone was crazy enough to sexually assault Plaintiff in the office. Dispute that Plaintiff was not sexually harassed/assaulted. (Duverny Dep. Tr. pp.134:22-139:7). |
| 29. | After leaving HYPERION MEDICAL, DUVERNY filed a complaint with the U.S. DOL concerning (i) the failure to timely receive wages and (ii) the failure to receive overtime at an overtime rate (time and a half). See DUVERNY Deposition (Exh."3") at 62, l. 25- 63, 25. | Disputed. Plaintiff sought help from the DOL in collecting her final paycheck and failure to receive proper wages. (Duverny Dep. Tr.174:24-175:19; Friedman Decl. Ex. 14) |
| 30. | In response to a U.S. DOL request, HYPERION MEDICAL produced its Employee Timecard Reports (Exh. "8") for the time that DUVERNY worked for it. See RICHSTONE Affidavit in Support at ¶23 and the Employee Timecard Reports (Exh. "8"). Those Reports evidence the time worked and the money that was paid. Id. | Disputed. The Employee Timecard Reports do not accurately reflect the time that Plaintiff worked for Plaintiff since she often arrived at work well before she was able to clock in. (Duverny Dep. Tr. 59:18-60:18). |
| 31. | HYPERION MEDICAL and the U.S. DOL entered into a conciliation agreement to resolve the DUVERNY claims, which led to DUVERNY receiving money from HYPERION MEDICAL as directed by the U.S. DOL. See RICHSTONE Affidavit in Support at ¶26 and the August 20, 2019 Etkind Affirmation at ¶2 for the email exchange discussing same (Exh. "9") | Disputed. Plaintiff did not release any claims related to her DOL claims. |
| 32. | HYPERION MEDICAL and the U.S. DOL resolved the failure to timely pay wages prior to the institution of this action. See RICHSTONE Affidavit in Support at ¶¶25- | Disputed. Plaintiff denies that the U.S. DOL resolved the matter. Plaintiff did not release any claims |

|  | | |
|---|---|---|
|  | 29. HYPERION MEDICAL had setoff the money that was due to it from a loan that was made to DUVERNY to her to help her out with her rent against the money due to DUVERNY. Id. When HYPERION MEDICAL could not locate the loan documents and DUVERNY claimed that she did not receive a loan, the U.S. DOL and HYPERION MEDICAL settled the wage claim by HYPERION MEDICAL releasing the money to her without withholding anything for the loan; HYPERION MEDICAL released $909.00 to DUVERNY. Id. See also, the checks (Exh. "10")(first two pages); see also DUVERNY Deposition (Exh. "3") at 24, l. 20 - 25 l. 10-14 (DUVENRY denied that she received any money from RICHSTONE other than $40 to compensate her for the difference between two months of a gym membership.) (During discovery in this action, RICHSTONE located an instant message from DUVERNY in which she thanked him [HYPERION MEDICAL] for helping her out with the rent.") See the text messages between RICHSTONE and DUVERNY (Exh. "5") at Bates Stamp Nos. 216-217. | in connection with the DOL matter. Plaintiff never texted Defendant Richstone to thank him for helping her with rent. In the text message to which Defendants refer, Plaintiff thanks Defendant Richstone for his offer to help with rent and declines it. (Friedman Decl. Ex. 3). |
| 33. | HYPERION MEDICAL and the U.S. DOL also resolved the overtime claim prior to the institution of this action. HYPERION MEDICAL paid $9.00 to DUVERNY (which represents one half hour of overtime) prior to the institution of this action. See RICHSTONE Affidavit in Support at ¶27 and Exhibit "10" (last page). | Disputed. Defendants have outstanding overtime claims against them which are at issue here. (Duverny Dep. Tr. 61:14-21). |
| 34. | HYPERION MEDICAL contracted with ADP TotalSource, Inc., a professional employer organization that is part of ADP, to provide payroll services to it throughout DUVERNY's employment with HYPERION MEDICAL. See RICHSTONE Affidavit in Support at ¶¶21-22. | Admit insofar as the paychecks that Plaintiff received from Defendants were processed by ADP. |
| 35. | ADP issued the wage statements on each payday to DUVERNY. Id. | Disputed. Defendants did not issue *proper* wage statements to Plaintiff. |
| 36. | Three of those wage statements (Exh. "11") have been produced. Id. at ¶22; see also the three wage statements (Exh. "11"). | Admit that Defendants produced three statements. |
| 37. | Those wage statements comply with NY law. Id. | Disputed, this statement violates Local 56.1 making conclusions of law and is not material fact. . The wage statements do not comply with NY law.  *See* NYLL § 195; *see also* Def 56.1 Exh. 11 which |

13

| | | |
|---|---|---|
| | | show Plaintiff was paid the incorrect rate for hours worked above 40. |
| 38. | DUVERNY's EEOC Charge (Exh. "12") does not name HYPERION MEDICAL. See DUVERNY Deposition (Exh. "3") at 43, l. 5-25 and the EEOC Charge (Exh. "12"). | Admit. |
| 39. | DUVERNY's resume (Exh. "13") lists HYPERION MEDICAL as her employer. See DUVERNY Deposition (Exh. "3") at 7, l. 7-10 and the resume (Exh. "13"). | Admit. |
| 40. | DUVERNY's U.S. DOL complaint (Exh. "14") lists HYPERION MEDICAL as her employer. See DUVERNY Deposition (Exh. "3") at 174, l. 20 – 177, l.13 and the U.S. DOL complaint (Exh. "14") at Bates Stamp No. 281, Item No. 2. | Admit. |
| 41. | In an affidavit (Exh. "15") that she had submitted in another case, DUVERNY blamed the defendants in that case (not RICHSTONE) for the very same injuries she is claiming in this case. See DUVERNY Deposition (Exh. "3") at 202, l.5- 19 and the July 27, 2018 DUVERNY Affidavit (Exh. "15") submitted in the Civil Court action | Disputed. Defendants have not cited to admissible evidence in support of this statement. |

## PLAINTIFF'S STATEMENT OF MATERIAL FACTS

| | |
|---|---|
| 1. | Plaintiff is Haitian American. (Duverny Dept Tr. p. 56:17-19). |
| 2. | On September 18, 2015, Defendant Richstone sent Plaintiff a text message stating: "No resume, Bimbo[.]" (Duverny Dep. Tr. Dep. Tr. 54:25-55:17, 97:17-98:9, 98:25-99:5; Richstone Dep. Tr. 255:6-11) |
| 3. | In or around September 2015, Defendant Richstone sent Plaintiff a text message stating: "Why are you awake at this hour? All Jamaicans have been asleep since 9 AM[.]" (Duverny Dep. Tr. 86:8-13; Richstone Dep. Tr. 259: 13-24;' Friedman Decl. Ex. 3) |
| 4. | Defendant Richstone hired Plaintiff to work for Defendants as a Billing Assistant on or about November 2, 2015. (Duverny Duverny Dep. Tr. 48:20-4) |
| 5. | When Plaintiff was hired, she did not receive a wage notice that included her overtime rate of pay. (Duverny Dep. Tr. pp. 154:16-155:25) |
| 6. | While Plaintiff was employed by Defendants, she was not paid 1.5 times her hourly wage for hours that she worked over 40 hours in a week. (Duverny Dep. Tr. 58:9-12; 61:16-18; 63-10-15) |
| 7. | Defendant Richstone directed a coworker over the phone to purchase Plaintiff a new mattress. Plaintiff did not ask for the mattress. (Richstone Dep. Tr. 235:8-10; Duverny Dep. Tr. 124: 5-15) |

14

| 8. | While Plaintiff was employed with Defendants, Defendant Richstone called Plaintiff into an office where he and another male doctor discussed the length of her dress. (Duverny Dep. Tr. pp. 105:16-106:4; Richstone Dep. Tr. 205:21-206:6) |
|---|---|
| 9. | Defendant Richstone referred to Plaintiff's employment as a "charity" he had performed. (Duverny Dep Tr. 109:3-15; 130:12-24; Richstone Dep. Tr. 157:19-20) |
| 10. | Plaintiff was required to hand over her cell phone while she was at work. (Duverny Dep. Tr. 27:21-24; Richstone Dep. Tr. 161:15-16) |
| 11. | Defendant Richstone repeatedly asked Plaintiff to accompany him alone to dinner. (Duverny Dep. Tr. 27:7-20, 33:23-34:13; 37:21-23) |
| 12. | Defendant Richstone invited himself to Plaintiff's apartment and looked around it. (Duverny Dep. Tr. 131:3-12) |
| 13. | Defendant Richstone gave Plaintiff a scale, which she did not ask for. (Duverny Dep Tr. 131:25-132:8) |
| 14. | Defendant Richstone directed Plaintiff to attend a book lecture with him during working hours. (Duverny Dep. Tr. 110:10 - 111:3). |
| 15. | Defendant Richstone directed Plaintiff to accompany him to a car dealership during working hours. (Duverny Dep. Tr. 134: 14-15) |
| 16. | Defendant Richstone directed Plaintiff to cancel her gym membership and join his gym. (Duverny Dep. Tr. 132: 16-23; Richstone Dep. Tr. 244:24-25) |
| 17. | While working for Defendants, Defendant Richstone frequently made comments about Plaintiff's appearance and body. (Duverny Dep. Tr. 31:25-32:14; 105:16-106:4) |
| 18. | Defendant Richstone frequently called Plaintiff "bimbo." (Duverny Dep. Tr. 101:22-24; Friedman Decl. Ex. 3). |
| 19. | While working for defendants, Defendant Richstone would make derogatory statements about Haitians and Jamaicans. (Duverny Dep. Tr. pp. 55:5-11; 56:17-25;105:7-9; 109:5-8) |
| 20. | Defendant Richstone's license to practice medicine was revoked before Plaintiff was hired by Defendant Richstone and while Plaintiff was working for Defendant Richstone he was not licensed to practice medicine. (Richstone Dep. Tr. 28:4-3) |
| 21. | Defendant Richstone insisted that Plaintiff conduct medical examinations with the medical practice where Plaintiff was employed by him. (Duverny Dep. Tr. pp. 27:13; 30:5-11). |
| 22. | During the medical examination that Defendant Richstone insisted Plaintiff submit to, Defendant Richstone touched her vagina with an ungloved hand. (Duverny Dep. Tr. pp. 137:5-138:21) |
| 23. | Defendant Richstone asked Plaintiff to submit to another examination and she refused out of fear of being sexually touched again. (Duverny Dep. Tr. pp. 161:12-22) |
| 24. | When Plaintiff refused to submit to another examination, Defendant Richstone fired her. (Duverny Dep. Tr. pp. 160:21-161:22) |
| 25. | On the day, Plaintiff was fired she took her medical file. (Duverny Dep. Tr. pp. 161:12-22) |
| 26. | Plaintiff later returned the medical file. (Richstone Dep. Tr. 222:6-7) |
| 27. | After Plaintiff was fired, Defendants refused to give her her final paycheck. (Duverny Dep. Tr. p. 62:12-19) |
| 28. | Plaintiff received her final paycheck only after she contacted the U.S. Department of Labor, Wage Division for help. (Duverny Dep. Tr. p. 151"2-5) |
| 29. | There is no evidence that Plaintiff taking her own medical chart is immoral or unconscionable. (Duverny Dep. Tr. 161: 11-23) |

| | |
|---|---|
| 30. | Plaintiff took her own medical chart because she was under the impression that she had the right to do so and to prevent its use from any further fraudulent activity on the part of defendants.  (Duverny Dep. Tr. 161: 11-23) |
| 31. | Plaintiff returned the medical chart soon after taking it.  (Richstone Dep. Tr. 233:14-18; Duverny Dep. Tr. 161: 24-162: 3). |
| 32. | Defendant suffered no damages from Plaintiff taking the chart.  (Richstone Dep. Tr. 233:14-18; Duverny Dep. Tr. 161: 24-162: 3). |

Dated: New York, New York
     October 8, 2019

                **PHILLIPS & ASSOCIATES,**
                **ATTORNEYS AT LAW, PLLC**

        By:   /s/ Joshua M. Friedman
                Joshua Friedman, Esq.
                *Attorneys for Plaintiff*
                45 Broadway, Suite 620
                New York, New York 10006
                (212) 248-7431
                afriedman@tpglaws.com