**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------------------X   18-CV-07652 (DLC)
LEONIDES DUVERNY,

                                        Plaintiff,


                    -against-


HERCULES MEDICAL P.C., and, HYPERION,
MEDICAL P.C., and ACHILLES MEDICAL P.C.,
and GEOFFFREY RICHSTONE, individually,


                                        Defendants.
------------------------------------------------------------------------X



**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS'**
**MOTION FOR SUMMARY JUDGMENT AND IN SUPPORT OF PLAINTIFF'S**
**MOTION FOR SUMMARY JUDGMENT**



**PHILLIPS & ASSOCIATES, PLLC**
**45 Broadway, Suite 620**
**New York, New York 10006**
**(212) 248-7431**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ......................................................................................... iii

PRELIMINARY STATEMENT ..................................................................................... 1

PROCEDURAL DEFICIENCIES ................................................................................... 2

STATEMENT OF MATERIAL FACTS ........................................................................ 3

ARGUMENTS ................................................................................................................ 3

   I.     STANDARD OF REVIEW ........................................................................... 3

   II.    PLAINTIFF WAS THE TARGET OF QUID PRO QUO SEXUAL HARASSMENT..... 4

   III.   PLAINTIFF WAS SUBJECTED TO A HOSTILE WORK ENVIRONMENT ............. 8

     A.   Plaintiff Was Subjected to A Hostile Work Environment in Violation of Title VII and the NYSHRL................................................................................................ 9

       1.   *Plaintiff vehemently denies ever having a romantic relationship with Defendant Richstone*................................................................................................ 15

       2.   *Defendant Richstone's testimony is undermined by his pattern and practice of making false statements and engaging in fraudulent activities* ...................................... 18

       3.   *Plaintiff's diligent execution of her job duties while employed by Defendants does not refute her claims of sexual harassment*....................................................... 20

     B.   Plaintiff Was Subjected to A Hostile Work Environment in Violation of the NYCHRL ................................................................................................... 21

   IV.  PLAINTIFF'S CLAIMS FOR UNPAID OVERTIME AND FAILURE TO PAY TIMELY WAGES ARE NOT BARRED BY THE INVOLVMENT OF THE U.S. DEPARTMENT OF LABOR ........................................................................ 22

   V.   DEFENDANTS OWE PLAINTIFF WAGES .............................................. 23

   VI.  DEFENDANTS FAILED TO PAY TIMELY WAGES AFTER TERMINATION ..... 24

   VII.  DEFENDANTS FAILED TO FURNISH PROPER WAGE STATEMENTS .......... 24

   VIII.  DEFENDANTS FAILED TO FURNISH PLAINTIFF WITH A PROPER WAGE NOTICE ................................................................................................... 25

   IX.  THE IDENTITY OF INTEREST EXCEPTION ALLOWS THE CLAIMS UNDER TITLE VII TO PROCEED AGAINST DEFENDANT HYPERION........................ 26

   X.   THE MCDONNELL DOUGLAS FRAMEWORK DOES NOT APPLY TO CLAIMS OF WORKPLACE HARASSMENT.............................................................. 27

XI.    THE SAME ACTOR DOCTRINE DOES NOT APPLY TO PLAINTIFF'S CLAIMS
OF DISCRIMINATION ........................................................................................................ 28

XII.    DEFENDANTS ENGAGED IN NATIONAL ORIGIN DISCRIMINATION ......... 29

XIII.    DEFENDANTS VIOLATED THE ADA BUY FORCING PLAINTIFF TO SUBMIT
TO UNLAWFUL MEDICAL EXAMINATIONS .................................................................... 31

XIV.    PLAINTIFF DEMONSTRATES SUFFICIENT EVIDENCE TO PROCEED WITH
A CLAIM FOR RELIGIOUS DISCRIMINATION UNDER THE NYCHRL........................ 33

XV.   PLAINTIFF'S CLAIMS AGAINST DEFENDANTS HERCULES MEDICAL, P.C
AND ACHILLES MEDICAL, P.C SHOULD PROCEED ....................................................... 34

XVI.    DEFENDANTS' COUNTERCLAIM SHOULD BE DISMISSED .......................... 34

CONCLUSION............................................................................................................................ 37

## <u>TABLE OF AUTHORITIES</u>

**Cases**

<u>Agati v. Agati</u>, 92 A.D.2d 737, 461 N.Y.S.2d 95, 96 (4th Dep't)................................................. 33

<u>Alfano v. Costello</u>, 294 F.3d 365, 373 (2d Cir. 2002) .................................................................... 9

<u>Aliea Lewis v. Hercules Medical, P.C.</u>, et seq., Index No. 650026-2008 (Sup. Ct. N.Y. County) ...................................................................................................................................................... 18

<u>Barrows v. Seneca Foods</u>, 512 Fed. Appx. 115; 2013 U.S. App. LEXIS 3841 at *11, (2d Cir. 2013) ...................................................................................................................................................... 13

<u>Benjamin v. Consol. Edison Co. of N.Y.</u>, 2018 U.S. Dist. LEXIS 45678, 2018 WL 1406620 *3 (S.D.N.Y. 2018) ...................................................................................................................... 30

<u>Bistricer v. Bistricer</u>, 659 F.Supp. 215 (E.D.N.Y 1987).............................................................. 33

<u>Brown v. Lockwood</u>, 76 A.D.2d 721, 432 N.Y.S.2d 186, 192 (2d Dep't 1980)......................... 33

<u>Carrero v. New York City Hous. Auth.</u>, 890 F.2d 569, 577 (2d Cir. 1989) ................................... 4

<u>Castagna v. Luceno</u>, No. 09 Civ. 9332 (ER), 2013 U.S. Dist. LEXIS 14932, 2013 WL 440689, at *4 n.8 (S.D.N.Y. Feb. 4, 2013) ..................................................................................................... 27

<u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986) ..................................................................... 3

<u>Centeno v. 75 Lenox Realty LLC</u>, 2017 U.S. Dist. LEXIS 50819 *10 (E.D.N.Y. 2017) ........... 25

<u>Cheeks v. Freeport Pancake House, Inc.</u>, 796 F.3d 19 (2d Cir. 2015)......................................... 21

<u>Cheeks</u>, 796 F.3d at 201 ................................................................................................................. 21

<u>Cook v. Arrowsmith Shelburne, Inc.</u>, 69 F.3d 1235, 1241-42 (2d Cir. 1995)............................. 25

<u>Copeland v. Rosen</u>, 38 F. Supp. 2d 298, 305 (S.D.N.Y. 1999) ................................................... 27

<u>Dabney v. Christmas Tree Shops</u>, 958 F.Supp.2d 439, 460 (S.D.N.Y. 2013).............................. 6

<u>DeCintio v. Westchester County Med. Ctr.</u>, 807 F.2d 304 (2d Cir. 1986) .................................. 16

<u>Diagnostic Med. Assocs. M.D., P.C. v. N.Y. City Dist. Council of Carpenters Welfare Fund</u>, 232 Fed. Appx. 29, 2007 U.S. App. LEXIS 9933 (2d Cir. 2007).................................................... 17

<u>Eastport Assoc., Inc. v. New York State Div. of Human Rights</u>, 71 A.D.3d 890, 891 (2d Dep't 2010) ...................................................................................................................................................... 10

<u>EEOC v. Grane Healthcare Co.</u>, 2 F. Supp. 3d 667, 692 (W.D. Pa. 2014)................................. 30

<u>EEOC v. Suffolk Laundry Servs., Inc.</u>, 2014 U.S. Dist. LEXIS 139866, at *40 (E.D.N.Y. Sept. 30, 2014) ...................................................................................................................................................... 13

<u>Farrugia</u>, 820 N.Y.S.2d at 718...................................................................................................... 20

<u>Figueroa v. RSquared NY, Inc.</u>, 89 F.Supp. 3d 484, 490 (E.D.N.Y. March 3, 2015) ................... 5

<u>Finnerty v. William H. Sadlier, Inc.</u>, 176 Fed. Appx. 158, 160 (2d Cir. 2006) ............................ 9

<u>Frank v. United States</u>, 78 F. 3d 815, 833 (2d Cir. 1996).............................................................. 1

<u>Frymer v. Bell</u>, 99 A.D.2d 91, 472 N.Y.S.2d 622, 625 (1st Dep't 1984) ..................................... 33

<u>Gallo v. Prudential Residential Servs., Ltd. P'ship</u>, 22 F.3d 1219, 1224 (2d Cir. 1994) ............... 4

<u>Garrigan v. Ruby Tuesday, Inc.</u>, 2013 U.S. Dist. LEXIS 108939, 2013 WL 3946223 (S.D.N.Y. 2014) ...................................................................................................................................................... 16

<u>Gorzynski v. JetBlue Airways Corp.</u>, 596 F.3d 93, 102-103 (2d Cir. 2010)............................... 13

<u>Gorzynski</u>, 596 at 103 ................................................................................................................... 13

Grady v. Affiliated Cent. Inc., 130 F.3d 553, 560 (2d Cir 1997) ................................................. 26

Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993)............................................................... 8, 9

Harris v. Forklift Sys., Inc., 510 U.S. 17, 23 (1993)................................................................... 10

Harris v. Forklift Systems, Inc., 510 U.S. 17, 21 (1993) ........................................................... 10

Harris v. Forklift Systems, Inc., 510 U.S. 17, 23 (1993) ........................................................... 19

Harris v. Forklift Systems, Inc., supra, at 21 ............................................................................ 27

Harris, 510 U.S. at 21.................................................................................................................. 20

Harris, 510 U.S. at 23.................................................................................................................. 10

Henson v. City of Dundee, 682 F.2d 897, 909 (11th Cir. 1982).................................................. 5

Highlander v. K.F.C. Nat'l Mgmt. Co., 805 F.2d 644, 648 (6th Cir. 1986)................................. 5

Holcomb v. Iona Coll., 521 F.3d 130, 137 (2d Cir. 2008)........................................................... 4

Jackson v. Regal Beloit Am., Inc., 2018 U.S. Dist. LEXIS 103682, *18 (E.D. Ky. 2018).......... 30

Johnson v. Booker T. Washington Broadcasting Service, Inc., 234 F.3d 501 (11th Cir. 2000)... 26

Johnson v. Strive East Harlem Empl. Group, 990 F. Supp. 2d 435 (S.D.N.Y. 2014) ................. 29

Karibian v. Columbia Univ., 14 F.3d 773, 777 (2d Cir. 1994)..................................................... 8

Knight v. U.S. Fire Ins. Co. 804 F. 2d 9, 11 (2d Cir. 1986) ........................................................ 4

Lewis v. Forest Pharm., Inc., 217 F. Supp. 2d 638, 653 (D. Md. 2002)...................................... 26

Lipsett v. University of Puerto Rico, 864 F.2d 881, 898 (1st Cir. 1988)....................................... 5

Little v. NBC, 210 F. Supp. 2d 330, 388 (S.D.N.Y. Apr. 22, 2002) ........................................... 10

Loeffler v. Staten Island Univ. Hosp., 582 F.3d 268, 278 (2d Cir. 2009) ................................... 31

Mack, 326 F.3d 116).................................................................................................................... 9

Mallis v. Bankers Trust Co., 615 F.2d 68, 75 (2d Cir.1980) ....................................................... 33

Matsushita Etc. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574 (1986) ..................................... 3

Matthews v. Corning, Inc., 77 F. Supp. 3d 275, 292 (W.D.N.Y. 2014)....................................... 26

Mauro v. Orville, 259 A.D.2d 89 (2d Dep't 1999) ...................................................................... 17

Memnon v. Clifford Chance US, LLP, 667 F. Supp. 2d 334, 351 (S.D.N.Y. 2009) .................... 27

Meritor Savings Bank, supra at 67.............................................................................................. 10

Mihalik v. Credit Agricole Cheuvreux N. America, Inc., 715 F.3d 102, 114 (2d Cir. 2013)........ 20

Mihalik v. Credit Agricole Cheuvreux N. America, Inc., supra, at 114 (2d Cir. 2013)............... 31

Moses v. Martin, 360 F. Supp. 2d 533, 541 (S.D.N.Y. 2004) ..................................................... 34

Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 116 (2002) ............................................. 9

Nungesser v. Columbia University, 244 F.Supp.3d 345 (S.D.N.Y. 2017) ................................... 16

Nutmeg Financial Services, Inc. v. Richstone, 186 A.D.2d 58, 59 (1992).................................... 18

O'Bar v. Borough of Naugatuck, 2002 U.S. Dist. LEXIS 27335 *11 (D. Conn. 2002) .............. 25

O'Diah v. Oasis, 954 F. Supp. 2d 261, 274-275 (S.D.N.Y. 2013)............................................... 27

Oncale v. Sundowner Offshore Servs., Inc., 523 U.S. 75 at 81 (1998) ....................................... 10

Pa. State Police v. Suders, 542 U.S. 129, 133 (2004)................................................................. 9

People v Richstone, 75 A.D.2d 1027 (1st Dep't 1980) ................................................................ 18

Perry v. Ethan Allen, Inc., 115 F.3d 143, 149 (2d Cir. 1997)...................................................... 8

Petrosino v. Bell Atlantic, 385 F.3d 210, 223 (2d Cir. 2004) ...................................................... 10

iv

Petrosino, *supra*, at 224 .................................................................................................... 11

Pinero v. Long Island State Veterans Home, 375 F. Supp.2d 162 E.D.N.Y. 2005) .................... 25

Redd v. N.Y. Div. of Parole, 678 F.3d 166, 175 (2d Cir. 2012).................................................. 13

Richstone v. Heckler, 1984 U.S. Dist. LEXIS 16178 (S.D.N.Y. 1984) ...................................... 17

Richstone v. Novello, 284 A.D.2d 737, 739 (2001) .................................................................. 18

Rivera v. New York City Dep't of Correction, 951 F.Supp.2d 391, 400 (E.D.N.Y. 2013) ........... 6

Roman v. Nat'l Sec. Agency, No. 07-CV-4502, 2009 U.S. Dist. LEXIS 9147, at *3 n. 1
(E.D.N.Y. Feb. 9, 2009)......................................................................................................... 2

Salumbides v. United States, No. 05-Civ. 7847 (RMB), 2007 U.S. Dist. LEXIS 11345, 2007 WL
430425, at *6 (S.D.N.Y.) ...................................................................................................... 2

Schiano v. Quality Payroll Systems, Inc., 445 F.3d 597, 603 (2d Cir. 2006)............................... 6

Schwapp v. Town of Avon, 118 F.3d 106, 111 (2d Cir. 1997) ................................................... 10

see Meritor Savings Bank, FSB v. Vinson, 477 U.S. 57, 66 (1986)............................................. 8

See Zhao v State University of NY, 472 F. Supp 2d 289 (E.D.N.Y. 2007) ................................. 25

Showalter v. Allison Reed Group, Inc., 767 F.Supp. 1205, 1212 (D.R.I. 1991) ........................... 5

Sowemimo v. D.A.O.R. Sec., Inc., 43 F. Supp. 2d 477, 484 -85 (S.D.N.Y. 1999)..................... 13

Terry v. Ashcroft, 336 F.3d 128, 148 (2d Cir. 2003)................................................................. 10

United States v. Geoffrey Richstone, 00 Cr. 338-01 (AKH)(S.D.N.Y. Feb. 13, 2001) .............. 17

Vital v. Interfaith Medical Center, 168 F.3d 615, 619 (2d Cir. 1999)......................................... 25

Vital, 168 F.3d at 620 .............................................................................................................. 25

Walton .................................................................................................................................... 22

Walton v. United Consumers Club, 786 F.2d 303, 307 (7th Cir. 1986) ...................................... 21

Walton, 786 F.2d at 306........................................................................................................... 22

Williams v. N.Y.C. Hous. Auth., 61 A.D.3d 62, 872 N.Y.S.2d 27, at 40-41 & n.30 (1st Dep't
2009) ............................................................................................................................. 20, 32

Zhengfang Liang v. Cafe Spice SB, Inc., 911 F. Supp. 2d 184 (EDNY 2012) ........................... 22

**Statutes**

29 C.F.R. § 1604.11(a)(2) (1993) .............................................................................................. 4

29 U.S.C. § 216(c) ............................................................................................................. 21, 22

Americans with Disabilities Act, 42 U.S.C. § 12112(d)(4)(A) .................................................... 1

N.Y. Lab. Law § 191(3)........................................................................................................... 23

New York City Human Rights Law, New York City Administrative Code § 8-107, et. seq. ........ 1

New York Labor Law § 191(3) ................................................................................................ 23

New York Labor Law § 195 ..................................................................................................... 23

New York State Human Rights Law, New York State Executive Law § 296 et. seq...................... 1

NYLL § 195(1) ........................................................................................................................ 24

NYLL § 195(1)(c) .................................................................................................................... 24

Section 216(c) of the FLSA ..................................................................................................... 21

Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq ........................................... 1

**Other Authorities**

EEOC Enforcement Guidance on National Origin Discrimination .................................... 27

EEOC Guidance on National Origin Discrimination .................................................... 28

EEOC Guidance on Sexual Harassment ................................................................. 12

**Rules**

Federal Rule of Civil Procedure 41(a)(1)(A)(ii) ...................................................... 21

FRCP R 37 ..................................................................................................... 19

Local Rule 56.1 ................................................................................................ 2

Rule 56.1 ....................................................................................................... 2

## **PRELIMINARY STATEMENT**

Plaintiff Leonides Duverny (hereinafter "Ms. Duverny" or "Plaintiff") respectfully submits the within memorandum of law in opposition to the motion for summary judgment, as filed by Defendants in this matter and in support of her motion for summary judgment on Defendants' counterclaim. As illustrated by case law, documentary evidence and the prior testimony and statements of the parties, there are material factual issues in dispute, which a rational fact finder could resolve in favor of Plaintiff. Conversely, there are no material factual issues in dispute regarding Defendants' counterclaims and insufficient evidence to support that counterclaim.

If resolved in Plaintiff's favor, said facts would further support all of the legal elements necessary to sustain Plaintiff's claims for gender and national origin discrimination, sexual harassment, and hostile work environment in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*; New York State Human Rights Law, New York State Executive Law § 296 *et. seq.;* and the New York City Human Rights Law, New York City Administrative Code § 8-107, *et. seq.*; religious discrimination in violation of the New York City Human Rights Law, New York City Administrative Code § 8-107, *et. seq.*, and unlawful medical examination in violation of the Americans with Disabilities Act, 42 U.S.C. § 12112(d)(4)(A). The issues raised by Defendants are clearly those that are proper for a jury and only serve to require this Court to unnecessarily use limited judicial resources.

Moreover, to the extent that Defendants would seek to raise new legal arguments in their Reply Affirmation, such arguments should be disregarded. *See* Frank v. United States, 78 F. 3d 815, 833 (2d Cir. 1996) ("[Litigant] generally cannot resurrect an argument omitted in its main

brief by raising it for the first time in a reply brief"); accord <u>Salumbides v. United States</u>, No. 05-Civ. 7847 (RMB), 2007 U.S. Dist. LEXIS 11345, 2007 WL 430425, at *6 (S.D.N.Y.).

## <u>PROCEDURAL DEFICIENCIES</u>

Defendants' Rule 56.1 statement of undisputed facts should be stricken and/or deemed not admitted for failure to comply with Local Rule 56.1.

As a preliminary matter, Defendants have failed to comply with Local Rule 56.1.  Local Rule 56.1(a) states that: "[T]here shall be annexed to the notice of motion a separate, *short and concise statement*, in numbered paragraphs, of the material facts as to which the moving party contends there is no genuine issue to be tried." (emphasis added) Defendants' Rule 56.1 Statement includes five numbered paragraphs packed with multiple lengthy and verbose statements. Def. 56.1 ¶¶ 11-13, 16-17. In fact, the paragraphs numbered 12 and 17 are each four pages long.

Furthermore, Local Rule 56.1(d) states that: "Each statement by the movant…pursuant to Rule 56.1(a) and (b)… must be followed by citation to evidence which would be admissible, set forth as required by Fed. R. Civ. P. 56(c)."  Local Rule 56.1(d); *see also* <u>Roman v. Nat'l Sec. Agency</u>, No. 07-CV-4502, 2009 U.S. Dist. LEXIS 9147, at *3 n. 1 (E.D.N.Y. Feb. 9, 2009) (court "will deem admitted only those facts that are supported by admissible evidence and not controverted by other admissible evidence in the record.").  Defendants fail to cite to admissible evidence in support of one of their statements of fact.  Def. 56.1 ¶¶ 41.  As such, that statement should be stricken and/or deemed not admitted for the purposes of this motion.

Moreover, Defendants' 56.1 is largely supported by a self-serving affidavit by Defendant Richstone that contradict prior deposition testimony.  *See* Merrill Iron & Steel, Inc. v. Yonkers Contr. Co., 05 Civ. 5042 (WHP), 2006 U.S. Dist. LEXIS 66625 (S.D.N.Y. Sep. 19, 2006) (finding it inappropriate to grant summary judgment based solely on contradictory self-serving affidavit

without other evidence in support.) Defendant Richstone's affidavit seeks to interpret text messages exchanged with Plaintiff not by undisputed documentary evidence. As such paragraphs 12, 13, 16-18 should be disregarded as not being supported by admissible evidence.

Based on the foregoing, paragraphs 11-13, 16-17, and 41 of Defendants' 56.1 should be stricken and/or deemed not admitted.

## STATEMENT OF MATERIAL FACTS

For the sake of brevity, the Plaintiff respectfully refers this Court to the factual background, as set forth in Plaintiff's Opposition to Defendants' 56.1 Statement of Undisputed Facts, Plaintiff's Counter-Statement of Facts, the Declaration of Joshua Friedman and the exhibits annexed thereto, and Plaintiff's Complaint in this Action.

In sum, the evidence describes multiple instances of Defendant Richstone subjecting Plaintiff to harassing comments and behavior, which he doled out on a regular basis, demeaning her gender, national origin, and religion. The harassment culminated with Defendant Richstone, who passed himself off as a licensed doctor for the entire duration of Plaintiff's employment with Defendants, using Plaintiff's perceived disability as an excuse to coerce her into a physical examination during which he sexually assaulted her by grabbing her vagina with his ungloved hand. When Plaintiff refused to submit to further examinations for fear of being subjected to further assault, Defendant Richstone fired her.

## ARGUMENTS

### I.   STANDARD OF REVIEW

It is well-established that in determining whether summary judgment is appropriate, the moving party bears the burden of demonstrating the absence of any genuine issues of material facts. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  With respect to any factual issues that

3

arise, a Court must resolve all factual ambiguities and draw all reasonable inferences in favor of the nonmoving party.  Matsushita Etc. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574 (1986). Quite notably, the nonmoving party need not prove their case dispositively at the summary judgment stage, in order to defeat such a motion.  Rather, the non-movant need only demonstrate that there are material factual issues in existence, such that a reasonable fact finder could resolve such issues in favor of the nonmoving party. Knight v. U.S. Fire Ins. Co. 804 F. 2d 9, 11 (2d Cir. 1986).

In discrimination cases, the merits typically turn upon an employer's intent, necessitating abundant caution in granting summary judgment for the employer. Holcomb v. Iona Coll., 521 F.3d 130, 137 (2d Cir. 2008). Naturally, where an employer has acted with discriminatory intent, direct evidence of that intent will only rarely be available, thus "affidavits and depositions must be carefully scrutinized for circumstantial proof, which, if believed, would show discrimination." Id. (*quoting* Gallo v. Prudential Residential Servs., Ltd. P'ship, 22 F.3d 1219, 1224 (2d Cir. 1994)).

In the instant matter, there are numerous issues of material fact in dispute establishing that Defendants subjected Plaintiff to sexual harassment, a hostile work environment and discrimination. Defendant's own declarations and documentary evidence establish contradictions that support Plaintiff's claims to have been subjected to a hostile work environment and discrimination.

## II.   PLAINTIFF WAS THE TARGET OF QUID PRO QUO SEXUAL HARASSMENT

Under the Guidelines established by the Equal Employment Opportunity Commission ("EEOC"), quid pro quo harassment occurs when "submission to or rejection of [unwelcome sexual] conduct by an individual is used as the basis for employment decisions affecting such individual." 29 C.F.R. § 1604.11(a)(2) (1993). See also Carrero v. New York City Hous. Auth.,

890 F.2d 569, 577 (2d Cir. 1989). Accordingly, to establish a prima facie case of quid pro quo harassment, a plaintiff must present evidence that she was subject to unwelcome sexual conduct, and that her reaction to that conduct was then used as the basis for decisions affecting the compensation, terms, conditions or privileges of her employment. See Lipsett v. University of Puerto Rico, 864 F.2d 881, 898 (1st Cir. 1988); Highlander v. K.F.C. Nat'l Mgmt. Co., 805 F.2d 644, 648 (6th Cir. 1986); Henson v. City of Dundee, 682 F.2d 897, 909 (11th Cir. 1982).

The relevant inquiry in a quid pro quo case is whether the supervisor has linked tangible job benefits to the acceptance or rejection of sexual advances. It is enough to show that the supervisor used the employee's acceptance or rejection of his advances as the basis for a decision affecting the compensation, terms, conditions or privileges of the employee's job. See, e.g., Showalter v. Allison Reed Group, Inc., 767 F.Supp. 1205, 1212 (D.R.I. 1991). ("The obvious tangible job benefit the plaintiffs received for succumbing to the harassment was the retention of their employment.").

Ms. Duverny has provided sufficient evidence demonstrating that she was required to submit to Defendant Richstone's unwanted sexual comments, ridicule, control, and finally, inappropriate touching, in order to keep her job. ( See Duverny Dep. Tr. Generally). This is best evidenced by her termination upon her refusal to be subjected to further sexual assault under the guise of an unauthorized and illegal medical exam.

Defendant Richstone's sexually charged actions towards Ms. Duverny, and subsequent firing of Ms. Duverny, demonstrate the elements of quid pro quo sex discrimination. Defendant Richstone testified that he earns $300,000 annually as the manager of Defendant Hyperion Medical P.C. (Richstone Dep. Tr. 19: 20-22). He oversaw the hiring, management and firing of the employees including Ms. Duverny. (Richstone Dep. Tr. 107: 16-18). During his deposition,

Defendant Richstone describes hiring staff and firing staff. (Richstone Dep. Tr. 107: 16-18). He states that he had the authority to send her home for the day. (Richstone Dep. Tr. 220:2-8). Ms. Duverny stated that he hired her, supervised the entire staff, and fired her. (Duverny Dep. Tr. 45: 3-11, 160: 23-25). Accordingly, Defendant Richstone held a supervisory position over Ms. Duverny and exercised authority over her job. In his position of authority, Defendant Richstone controlled the conditions of Ms. Duverny's employment.

Ms. Duverny also described that she had to submit to Defendant Richstone's demands to keep her job. (Duverny Dep Tr. 108: 3-6). She accordingly went to dinner with him, changed her gym and submitted to undergoing multiple unneeded medical examinations because she was afraid that she would lose her job if she did not. (Duverny Dep Tr. 135:4-136:6). Then, when she finally refused to undergo any further testing after Defendant Richstone grabbed her vagina, he fired her. (Duverny Dep. Tr. 144:3-146:2). The prospective loss of her job represents a tangible alteration of Ms. Duverny's employment condition as a result of her refusal to further submit to Defendant Richstone's demands.

These facts amount to quid pro quo sex discrimination, which violates Title VII. For quid pro quo sexual harassment, "an employee must show a tangible employment action, i.e., that an explicit alteration in the terms or conditions of employment resulted from refusal to submit to a supervisor's sexual advances." Figueroa v. RSquared NY, Inc., 89 F.Supp. 3d 484, 490 (E.D.N.Y. March 3, 2015)(citing Rivera v. New York City Dep't of Correction, 951 F.Supp.2d 391, 400 (E.D.N.Y. 2013) and Schiano v. Quality Payroll Systems, Inc., 445 F.3d 597, 603 (2d Cir. 2006)). Firing constitutes a significant tangible employment action. Id. Additionally, the alleged harasser must be a supervisor or someone who controls the conditions of the complainant's employment for a quid pro quo harassment claim. Id. "[T]he quid in the claim's name represents the power or

leverage that an employer and/or supervisor holds over his subordinates...." Figueroa, supra at 490. By virtue of the abuser's authority over the victim, "an employer is always strictly liable for quid pro quo harassment." Dabney v. Christmas Tree Shops, 958 F.Supp.2d 439, 460 (S.D.N.Y. 2013).

Contrary to Defendants' memorandum in support of their motion, the reasons Plaintiff stated to the U.S. Department of Labor for her termination are consistent with her claims.  In fact, she stated, "I was fired from my job because I didn't want to undress for multiple examinations…." (Friedman Decl. Exh. 9). Her hesitation to provide further details about a sexual assault while pursuing a tangentially related claim is not uncommon or unusual among victims of sexual assault. Her recounting another cause for termination to a future employer because it was irrelevant, unnecessary, embarrassing, and might prejudice her hiring does not prove that no "tangible employment action" occurred.

Furthermore, after taking testimony from both parties, an impartial hearing officer of the New York State Department of Labor found that Ms. Duverny was discharged and granted her unemployment insurance benefits. (Friedman Decl. Exh. 12).

In this case, there is a genuine issue of fact as to whether Plaintiff was fired as the result of refusing another examination by Defendant Richstone that would expose her to further sexual assault. Plaintiff testified during her deposition she was terminated because she did not want to submit to another physical examination after being assaulted by Richstone during a previous one. (Duverny Dep. Tr.  144:3-25-146:2).

Accordingly, Ms. Duverny has provided sufficient evidence to show that Defendant Richstone had the authority to alter the terms of her employment for her refusal to submit to his inappropriate behavior and demands and exercised that authority by firing her. Plaintiff has presented sufficient evidence to prove quid pro quo sex discrimination in violation of Title VII.

7

Defendant Richstone's allegations to the contrary simply highlight that there are material facts in dispute and that a fact finder must determine the credibility of both parties.

### III.   PLAINTIFF WAS SUBJECTED TO A HOSTILE WORK ENVIRONMENT

It is well-established that "sexual harassment in the workplace violates Title VII's broad rule of workplace equality." Karibian v. Columbia Univ., 14 F.3d 773, 777 (2d Cir. 1994) (internal quotation marks omitted); see Meritor Savings Bank, FSB v. Vinson, 477 U.S. 57, 66 (1986).  Where, as here, an employee advances a sexual harassment claim based on a hostile work environment, a plaintiff must prove two elements.  First, the misconduct must be "sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive work environment." Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993).  Second, a plaintiff must establish that "a specific basis exists for imputing the conduct that created the hostile work environment to the employer." Perry v. Ethan Allen, Inc., 115 F.3d 143, 149 (2d Cir. 1997).  Plaintiff can establish both elements.

There is sufficient evidence that Respondent discriminated against Ms. Duverny based on her sex in violation of Title VII. Defendant Richstone, a manager and supervisor, made inappropriate comments about Ms. Duverny's body. (Duverny Dep. Tr. Pp. 53:25-54:13). Richstone frequently called her a bimbo. (Duverny Dep. Tr. 101:22-24; Friedman Decl. Ex. 3). Richstone also forced her to relinquish her phone while she was working so she could not contact her boyfriend (Duverny Dep. Tr. 101:22-102:3). Richstone admits that he took her phone although he claims this was to prevent being "on the phone all day." (Richstone Dep. Tr. 161: 11-17).  Defendant Richstone repeatedly asked Plaintiff to have meals with him and to accompany him to events and/or errands. (Duverny Dep. Tr. 106: 24-108:8, 110:10-12, 113: 9-11). Defendant Richstone acknowledges this but claims this is because he was dating Plaintiff,

which Plaintiff thoroughly denies. (Richstone Aff. ¶ 13; Duverny Dep. Tr. pp. 167:17-168:6). Defendant Richstone also sexually assaulted Ms. Duverny under the guise of having to conduct medical examinations on employees who received medical insurance from the office. (Duverny Dep. Tr. 136: 21-137: 22). When she later refused to engage in additional unnecessary examinations, Defendant Richstone fired her. (Duverny Dep. Tr. 144:3-146:2).

It should also be noted, that Defendant Richstone's medical license has been revoked due to fraud since 2001. (Friedman Decl, Exhibit 13) Attempts by Defendant Richstone to regain his license were recently denied. (Friedman Decl, Exhibit 13) This further supports Plaintiff's contention that there was no legitimacy to the medical examination, the act itself further compounds the egregiousness of Defendant's sexual assault of Plaintiff. He had neither the permission or the authority to examine Plaintiff.

As described more fully *infra*, there is sufficient evidence to find that Ms. Duverny experienced both *quid pro quo* sexual harassment and a hostile work environment, and thus sex discrimination, at the hands of Defendant Richstone.

## A.  Plaintiff Was Subjected to A Hostile Work Environment in Violation of Title VII and the NYSHRL

To prevail on a hostile work environment claim under Title VII, "a plaintiff claiming he or she was the victim of an unlawful hostile work environment must elicit evidence from which a reasonable trier of fact could conclude...'that the workplace was permeated with discriminatory intimidation that was sufficiently severe or pervasive to alter the conditions of his or her work environment . . .'" Finnerty v. William H. Sadlier, Inc., 176 Fed. Appx. 158, 160 (2d Cir. 2006) (*quoting* Mack, 326 F.3d 116).

The Supreme Court's standard is disjunctive, requiring the harassment to be either "severe **_or_** pervasive (not severe and pervasive)."  Pa. State Police v. Suders, 542 U.S. 129, 133

(2004)(emphasis added); Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 116 (2002). Proving the existence of a hostile work environment involves showing both "objective and subjective elements: the misconduct shown must be 'severe or pervasive enough to create an objectively hostile or abusive work environment,' and the victim must also subjectively perceive that environment to be abusive." Alfano v. Costello, 294 F.3d 365, 373 (2d Cir. 2002) (quoting Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993)).

In determining whether a workplace is objectively hostile, a court should look at the "totality of the circumstances." Little v. NBC, 210 F. Supp. 2d 330, 388 (S.D.N.Y. Apr. 22, 2002)(citing Harris v. Forklift Sys., Inc., 510 U.S. 17, 23 (1993)).  In particular, courts should examine "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." Id. at 288 (quoting Harris, 510 U.S. at 23).  When evaluating the "quantity, frequency, and severity" of the incidents, the court must look at the incidents "cumulatively in order to obtain a realistic view of the work environment." Id. at 288 (quoting Schwapp v. Town of Avon, 118 F.3d 106, 111 (2d Cir. 1997)).

A claimant with a hostile work environment claim must show that the misconduct complained of is both "severe or pervasive enough to create an *objectively* hostile or abusive work environment, and the victim must also *subjectively* perceive that environment to be abusive." Terry v. Ashcroft, 336 F.3d 128, 148 (2d Cir. 2003). A single off-hand comment or isolated incident will not support a claim of discriminatory harassment. Petrosino v. Bell Atlantic, 385 F.3d 210, 223 (2d Cir. 2004) (citing Oncale v. Sundowner Offshore Servs., Inc., 523 U.S. 75 at 81 (1998)). Rather, a claimant must show that a reasonable person would find that the "workplace [] permeated with discriminatory intimidation, ridicule, and insult that [wa]s

sufficiently severe or pervasive to alter the terms or conditions of [her] employment," to meet the legal standard for an illegal hostile work environment. Meritor Savings Bank, *supra* at 67; Eastport Assoc., Inc. v. New York State Div. of Human Rights, 71 A.D.3d 890, 891 (2d Dep't 2010) (*citing* Harris v. Forklift Systems, Inc., 510 U.S. 17, 21 (1993) (abrogated on other grounds) (repeated insults and innuendos can create cause of action even if they did not create serious injury)).

In this case, there is at minimum a genuine issue of as to whether Defendant Richstone's conduct constituted severe or pervasive harassment.  As a preliminary matter, Plaintiff's testimony is in direct contradiction to the testimony of Defendant Richstone on almost every issue.

Ms. Duverny described in detail an abusive pattern of behavior by Defendant Richstone, her supervisor, that represents the classic hostile work environment form of sexual harassment. (*See* Duverny Dep. Tr. Generally). On a regular basis, Defendant Richstone commented on Ms. Duverny's clothes, weight, body, and asked her out to dinner. (Duverny Dep. Tr. pp. 53:25-54:13; 105:16-106:3; 108:3-6; 131:25-132:8). This was unwanted. After months of this sexually motivated behavior, Defendant Richstone sexually assaulted Ms. Duverny during a "medical exam" that he had no authority to preform (Duverny Dep. Tr.  136:21-138:5, Friedman Decl. Exhibit 13). This sexually charged work atmosphere created by a supervisor constitutes hostile work environment sexual harassment.

Though only required to prove either or, Ms. Duverny has provided sufficient evidence that a reasonable person in her situation would have found that Defendant Richstone's pattern of sexually charged behavior was both severe and pervasive enough to alter the conditions of her employment. Defendant Richstone engaged in a pattern and practice of making sexually offensive

remarks, comments about her body and clothes, inappropriate gawking and asking her out to dinner. (Duverny Dep. Tr. pp. 53:25-54:13; 105:16-106:3; 108:3-6; 131:25-132:8). These activities showed that he saw her, specifically, or women, generally, "...as objects of sex-based ridicule and subjects for sexual exploitation." Petrosino, *supra*, at 224. It is within this context that, under the pretext of having to examine her for a medical condition, Defendant Richstone grabbed her vagina. Duverny Dep. Tr. pp. 137:17-138:21.  While this action on its own was severe, this action was not an isolated incident — rather it was demonstrative of Defendant Richstone's sexually motivated behavior towards Ms. Duverny. Accordingly, Ms. Duverny has provided sufficient evidence upon which a reasonable factfinder could conclude that the sexual harassment was both severe and pervasive, thus creating a hostile work environment.

Even if Defendant Richstone's sexual assault of Ms. Duverny is to be viewed in isolation from the other offensive conduct, this physical instance of sexual harassment alone is severe enough to constitute a Title VII violation. EEOC Guidance on Sexual Harassment, *supra,* at 7. As stated in the EEOC Guidance on Sexual Harassment,

> ...unwelcome, intentional touching of a charging party's intimate body areas is sufficiently offensive to alter the condition of her working environment and constitute a violation of Title VII. More so than in the case of verbal advances or remarks, **a single unwelcome physical advance can seriously poison the victim's working environment**. If an employee's supervisor sexually touches that employee, the Commission normally would find a violation.

Id. at 7. (emphasis added)

In this case, Defendant Richstone supervised the entire medical office including Ms. Duverny. (Richstone Dep. Tr. 10: 20-24). He told her that he must examine her because Defendants were paying for her insurance. (Duverny Dep. Tr. pp. 134:22-135:22). Defendant Richstone forced her into a highly vulnerable position as a patient receiving a medical

examination from him, which she assented to because she feared losing her job. (Duverny Dep. Tr. pp. 144:3-146:2). Then, rather than examining her actual medical condition, he sexually assaulted her. (Duverny Dep. Tr.  137:5-138:5) This single incident of unwelcomed and unwanted sexual touching by Defendant Richstone altered the conditions of Ms. Duverny's employment. This single incident of sexual touching by a work superior, under the guise of a doctor examining a coerced patient, was severe enough to constitute a violation of Title VII.

Thus, Defendants' motion to dismiss Plaintiff's hostile work environment claim under Title VII should be denied solely on the basis that there is a genuine issue as to the frequency, or pervasiveness, of the sexual harassment.

Notwithstanding, Plaintiff can also establish that the misconduct was sufficiently severe to alter the terms and conditions of her employment.   In addition to being subjected to unwanted comments about her body, Defendant Richstone egregiously touched Plaintiff's vagina, an overtly sexual, intimate body part on a woman. (Duverny Dep. Tr. 137:17-138:5). Not only is unwanted touching of a woman's body parts a traumatic and demeaning experience for the woman, but the law itself deems unwanted touching to be a "highly significant factor contributing to a hostile work environment." EEOC v. Suffolk Laundry Servs., Inc., 2014 U.S. Dist. LEXIS 139866, at *40 (E.D.N.Y. Sept. 30, 2014) (citing Sowemimo v. D.A.O.R. Sec., Inc., 43 F. Supp. 2d 477, 484 -85 (S.D.N.Y. 1999)).  "'[D]irect contact with an intimate body part constitutes one of the most severe forms of sexual harassment.'" Barrows v. Seneca Foods, 512 Fed. Appx. 115; 2013 U.S. App. LEXIS 3841 at *11, (2d Cir. 2013), (citing Redd v. N.Y. Div. of Parole, 678 F.3d 166, 175 (2d Cir. 2012)).

Defendant Richstone's testimony and conduct during his deposition lends further credence to Plaintiff's allegations. (Friedman Decl. Exh. 2). During his deposition, he barely

contains his disdain for women. He indicated that he does not customarily shake hands with women due to the "era" in which he was raised. (Richstone Dep. Tr. 83:22-84:3). He admitted to calling Ms. Duverny into an office with a colleague to discuss the length of her dress. (Richstone Dep. Tr. 205: 21-206:12; 208: 3-209:25). Defendant Richstone showed a picture of his wife in her underwear to Plaintiff's counsel during his deposition. (Richstone Dep. Tr. 119: 13-22) Defendant Richstone testified during his deposition that he woke up one morning to find this secretary, Gail Richards, deceased next to him in bed then proceeded to wait two days before reporting the death. (Richstone Dep. Tr. ¶ 53:5-8, 23-24). He went on to joke and laugh about it. (Richstone Dep. Tr. ¶ 55: 4-10).

Defendant Richstone's offensive sexual comments about Plaintiff's body, in addition to his physical touching of Plaintiff's vagina, are sufficiently severe and/or pervasive to constitute a hostile work environment.  The Second Circuit has held that, "when taken together [comments and instances of physical contact] do describe a work environment in which a jury could find that men…were able to--and did at will--comment inappropriately on women as sexual objects." Gorzynski v. JetBlue Airways Corp., 596 F.3d 93, 102-103 (2d Cir. 2010). Therefore, a reasonable jury could find that Defendant Richstone's sexual comments and physical grabbing of Plaintiff's vagina were so severe or pervasive that they altered Plaintiff's work environment to the point that she could expect sexual remarks or comments at any time.  *See* Gorzynski, 596 at 103 (finding a hostile work environment where female employees "could expect sexual remarks and other harassment at any time").

Evidence of both hostile work environment abounds in this case and could lead a reasonable fact finder to find for Plaintiff on those claims. Thus, Defendants' motion with respect to Plaintiff's Title VII hostile work environment claim must be denied.

### 1. *Plaintiff vehemently denies ever having a romantic relationship with Defendant Richstone*

Defendant mischaracterizes texts to support the preposterous claim that a romantic relationship existed between Plaintiff Duverny and Defendant Richstone and such a relationship would preclude any sexual harassment claim. In fact, there is no evidence besides Defendant Richstone's implausible testimony to support the claim that Plaintiff dated the octogenarian Defendant Richstone. A reasonable juror could find that the text messages exchange between Plaintiff and Defendant Richstone were not at all flirtatious but the reflection of an unequal power dynamic between an employee and employer in which the employer consistently acted inappropriately and constantly reminded Plaintiff that she should feel beholden to him. (Duverny Dep. Tr.  109: 13-15). Defendant Richstone himself testified that he referred to Ms. Duverny as a "charity hire." (Richstone Dep. Tr. 157: 17-20).

Defendants memorandum of law in support of their motion for summary judgment repeatedly misquotes text messages or quotes them out of context and mischaracterizes them in order to support Defendant Richstone's contention that Plaintiff was actually dating the Defendant Richstone and she became hostile after she rejected her sexual overtures. (Richstone Dep. Tr. 234: 23 – 235: 13). One example of this is a text message that Defendant Richstone claims as proof that Plaintiff accepted help with rent. (Richstone Aff. ¶ 9, 25). Plaintiff denies accepting help with her rent from Defendant Richstone. (Friedman Decl. Exh. 3) In fact, the fully quoted text, giving it proper context, actually shows the exact opposite:

> I cannot thank u enough
> doc & I truly appreciate
> the help with the rent,
> *but my roommate can
> wait. It is also a way to
> motivate the job search*[.]

(emphasis added) (Friedman Decl. Exh. 3). Plaintiff was, in fact, turning down Defendant Richstone's offer to help with rent explaining that her roommate could wait for it and the need to obtain rent money would motivate her to pursue her job search. (Friedman Decl. Exh. 3). Defendants also brush off a text in which Defendant Richstone calls Ms. Duverny a bimbo. Ms. Duverny responds by expressing her displeasure with a sad face emoticon. (Friedman Decl. Exh. 3). In the age of "sexting," Defendants cannot point to one racy or romantic text message from Ms. Duverny to support their claim that Plaintiff and Defendant Richstone were dating. In fact, Plaintiff consistently refers to Defendant Richstone platonically as "Doc" in the text messages that she sends to him. (Friedman Decl. Exh. 3).

Moreover, other courts have noted that even a willingness to engage in sex related banter (of which there is none in the instant action) does not make other gender-based harassment welcome if the Plaintiff is compelled to do so. *see* Carr v. Allison Gas Turbine Division, General Motors Corp. 32 F.3d 1007 (7th Cir. 1994). Additionally, conduct that reasonably appears welcome may still be unwelcome. In Gray v. Tyson Foods, Inc., the court recognized that plaintiff's actions may have stemmed from the plaintiff's perceived need to go along to get along. The court also noted that although there was evidence that the plaintiff voluntarily participated in the activity she now complains of and that she enjoyed it, there was also evidence and reasonable inferences from the evidence supporting the conclusion that the complained about conduct was unwelcome. "The jury could have concluded reasonably that a woman in the work environment existing at defendant's plant had to appear to enjoy participating in the hostile conduct in order to maintain any status in that workplace. The jury could have concluded that despite plaintiff's involuntary participation, she, in fact, found the conduct offensive and unwelcome."  Simply, when a workplace is so ingrained with harassment that the only reasonable course of conduct is

to seem willing to join in the unwelcome activity, the harassment may not be deemed welcome. Id. at 112. See <u>Benedet</u>, at 151. <u>Benedet</u> notes that "[o]stracism for refusal to participate in sexual behavior at work may itself become a form of harassment . . . It is therefore hardly surprising that plaintiffs may resign themselves to joining in [the behavior]. This may mean weathering the comments and advances good-naturedly, or it may mean more active participation. Likewise, since Plaintiff was forced on occasions to go along to get along so that she would not be fired, Defendants' conduct was still unwelcome and Defendants are therefore liable."

Defendant Richstone's own testimony about their alleged dating is inconsistent. Once instance of his testimony says that he and Plaintiff stopped before her hired her, but later he testified that her demeanor at work changed when he refused sex. (Richstone Dep. Tr. 235: 9-13).

Plaintiff vehemently and categorically denies any romantic relationship with Richstone. (Duvereny Dep. Tr. Pp. 167:17-168:6). Ms. Duverny testified that she was dating someone else and even introduced him to Defendant Richstone. (Duverny Dep. Tr. 48: 7-19). Richstone admitted in his own deposition that he had been introduced to her actual boyfriend. (Richstone Dep. Tr. 128: 24-129: 5).

Plaintiff testified that Defendant repeatedly insisted that she join him for dinner. (Duverny Dep. Tr. 107:24 – 108:10). Defendant Richstone also pulled her out of work to attend a book lecture (Duverny Dep. Tr. 110:10 - 111:3). He also insisted that she join him at a car dealership. (Duverny Dep. Tr. 134: 14-15). He also foisted gifts on her including a scale and a mattress. (Duverny Dep. Tr. 131:25-132: 7, 124: 5-15).  He also insisted that she join his gym. (Duverny Dep. Tr. 132: 16-23).

17

None of the cases Defendants cite support his proposition that a previous romantic relationship between an alleged victim of sexual harassment and an alleged preparator preclude a finding of sexual harassment. Furthermore, none of the cases involve plaintiffs who denied an intimate relationship with the defendant. See eg. Garrigan v. Ruby Tuesday, Inc., 2013 U.S. Dist. LEXIS 108939, 2013 WL 3946223 (S.D.N.Y. 2014) (plaintiff acknowledged the she dated defendant); DeCintio v. Westchester County Med. Ctr., 807 F.2d 304 (2d Cir. 1986) (no relationship alleged between plaintiff and defendant); Nungesser v. Columbia University, 244 F.Supp.3d 345 (S.D.N.Y. 2017) (alleged rapist sued University for sex harassment his accuser, with whom he claimed he had a consensual sexual relationship, publicly protested his continued presence on campus); Mauro v. Orville, 259 A.D.2d 89 (2d Dep't 1999) (plaintiff candidly acknowledged that she and defendant had wholly consensual personal relationship).

In the instant case, Plaintiff unequivocally denies that she ever dated Defendant Richstone. (Duverny Dep. Tr. Pp. 168:17-169:6). This is yet another material issue of fact that should be determined by a fact finder.

### 2. Defendant Richstone's testimony is undermined by his pattern and practice of making false statements and engaging in fraudulent activities

Although Defendants seek to discredit Plaintiff's testimony in support of her claims for sexual harassment, it is actually Defendant Richstone's statements that should be given little weight. Defendant Richstone has a pattern and practice of making false statements and engaging in fraudulent activities. Defendant Richstone was convicted of multiple fraud-related activities — such as receiving kickbacks from laboratories for sending patients for unnecessary testing. Diagnostic Med. Assocs. M.D., P.C. v. N.Y. City Dist. Council of Carpenters Welfare Fund, 232 Fed. Appx. 29, 2007 U.S. App. LEXIS 9933 (2d Cir. 2007); see also United States v. Geoffrey Richstone, 00 Cr. 338-01 (AKH)(S.D.N.Y. Feb. 13, 2001)(showing Defendant Richstone's

federal convictions for receiving Medicare kickbacks, conspiracy to receive kickbacks, and false subscription). His fraudulent activities led the United States Department of Health and Human Services to suspend his ability to receive federal Medicaid and Medicare reimbursement. Richstone v. Heckler, 1984 U.S. Dist. LEXIS 16178 (S.D.N.Y. 1984). Subsequently, the New York State Department of Health revoked his license to practice medicine because he was found to have "engaged in fraudulent billing, attempting to coerce a patient into dropping her complaint...denying patients timely access to their records, performing substandard follow-up procedures, ordering excessive and medically unnecessary testing on patients and falsifying his application for reappointment to the staff of Cabrini Hospital...." Richstone v. Novello, 284 A.D.2d 737, 739 (2001). Among the charges sustained by the New York State Department of Health were four counts of "willfully filing a false report," five counts of "practicing the profession fraudulently" and five counts of "moral unfitness." (Friedman Decl. Exh. 4).

Additionally, Defendant Richstone was convicted of witness tampering by convincing another doctor to change the cause of death on the death certificate of his former secretary for whom he had taken out a life insurance policy so that he could collect. People v Richstone, 75 A.D.2d 1027 (1st Dep't 1980) (judgment affirmed); (Friedman Decl. Exh. 5; See also Exh. 4 ¶¶ 17-20) (New York State Department of Health Board found that Defendant Richstone made misrepresentations to Cabrini Hospital about these convictions when he applied for reappointment.)

Furthermore, Defendant Richstone has had multiple outstanding contempt orders against him for failing to comply with judicial orders and he transferred real property in violation of a court order. Nutmeg Financial Services, Inc. v. Richstone, 186 A.D.2d 58, 59 (1992).

This action is also not the first time that Defendant Richstone has been accused of discrimination or retaliation, a fact that Defendants declined to disclose in their response to Plaintiff's First Set of Interrogatories. (Friedman Decl. Exh. 6). In the decision to revoke his medical license, Defendant Richstone was found to have retaliated against a patient who filed a medical records access complaint against him by sending her an unwarranted bill for $1300 and in the same letter asking her to withdraw her complaint. (Exhibit 4, ¶¶ 15-16.) Defendant Richstone was also a defendant along with Hercules Medical and Tatiana Mamaeva for a sex/pregnancy discrimination claim by a former employee. Aliea Lewis v. Hercules Medical, P.C., et seq., Index No. 650026-2008 (Sup. Ct. N.Y. County 2008).

Accordingly, it is Defendant Richstone's testimony which should be viewed with consideration of his pattern and practice of making false statements to governmental and private agencies and having a flagrant disregard for judicial and quasi-judicial agencies.

Though Defendants seek to use an affidavit submitted in unrelated litigation to impeach Plaintiff's deposition testimony, that affidavit is in admissible. Plaintiff's First Document Request No. 35 asked for "[a]ny and all documents… which Defendants intend to introduce into evidence at the time of trial" yet Defendant failed to produce the affidavit that they rely on to discredit Plaintiff's testimony when they obtained it. (Friedman Decl. Exh. 7). Defendants failure to supplement disclosures when they were discovered additional evidence in response to discovery request, as required by FRCP R 37(c)(1), precludes the affidavit's use in support of this motion.

### 3. *Plaintiff's diligent execution of her job duties while employed by Defendants does not refute her claims of sexual harassment*

Defendants' claim that Plaintiff ability to perform her job duties well, in the face of egregious sexual harassment, somehow exculpates Defendants. However, Defendants own brief

conceded that "whether [the harassment] unreasonably interfered with the employee's ability to do his job" is but one item to review in making a determination of sexual harassment. <u>Harris v. Forklift Systems</u>, Inc., 510 U.S. 17, 23 (1993) (finding that whether an environment is "hostile" or "abusive" can be determined only by looking at all the circumstances).

Even so, Plaintiff testified in her deposition that the harassment forced her reduce her days working from five to four a week in order to avoid the toxic hostile work environment. (Duverny Dep. Tr. 53:14-18). Plaintiff also testified Mr. Richstone forcing her to join him for meals and other events caused her colleagues to have ill will towards her and treat her differently. (Duverny Dep. Tr. 167: 13-169: 5). Therefore, there is proof that Plaintiff 's ability to perform her duties was indeed affected by the ongoing sexual harassment in her workplace. The fortitude and stoicism she demonstrated by doing a good job when she was at work does not relieve Defendants of liability.

### B.  Plaintiff Was Subjected to A Hostile Work Environment in Violation of the NYCHRL

"Although under the Federal and New York State counterparts, plaintiff must show that the harassment was sufficiently severe or pervasive to alter the conditions of employment and create an abusive working environment, *see, e.g.* <u>Harris</u>, 510 U.S. at 21;  under  the  City's  law,  liability should  be  determined  by the existence of unequal treatment and  questions of severity and frequency reserved for consideration of  damages."  <u>Farrugia</u>, 820 N.Y.S.2d at 718. Under the NYCHRL, "a defendant is entitled to summary judgment based on the conduct's triviality only if a reasonable jury could not interpret the alleged comments as anything 'more than *petty slights or trivial inconveniences*." <u>Mihalik v. Credit Agricole Cheuvreux N. America, Inc</u>., 715 F.3d 102, 114 (2d Cir. 2013)(emphasis added).

Notably, New York Courts have recognized that a single comment in the workplace may create a hostile work environment and therefore be actionable under the NYCHRL.  *See* Williams v. N.Y.C. Hous. Auth., 61 A.D.3d 62, 872 N.Y.S.2d 27, at 40-41 & n.30 (1st Dep't 2009).

In light of the less stringent standard of the NYCHRL, for the reasons discussed above, a reasonable jury could find that Plaintiff was subjected to a hostile work environment and the portion of Defendants' motion seeking to dismiss these claims must be denied.

## IV.  PLAINTIFF'S CLAIMS FOR UNPAID OVERTIME AND FAILURE TO PAY TIMELY WAGES ARE NOT BARRED BY THE INVOLVMENT OF THE U.S. DEPARTMENT OF LABOR

Defendants contend that the handling of some of Plaintiff's claims by the U.S. Department of Labor (DOL) prevents Plaintiff from pressing her wage related claims before this Court. Defendants are mistaken as res judicata does not apply to the instant case.

In Cheeks v. Freeport Pancake House, Inc., 796 F.3d 19 (2d Cir. 2015), the Second Circuit considered "whether parties may settle FLSA claims with prejudice, without court approval or DOL supervision, under Federal Rule of Civil Procedure 41(a)(1)(A)(ii)." Cheeks, 796 F.3d at 201. The court noted that requiring the approval of the court or the DOL advances the "FLSA's primary remedial purpose," which is "to prevent abuses by unscrupulous employers, and remedy the disparate bargaining power between employers and employees . . . even where the employees are represented by counsel…." Id. at 207.

Pursuant to Section 216(c) of the FLSA, the DOL has the authority to "supervise the payment of the unpaid minimum wages or the unpaid overtime compensation owing to any employee or employees under" the FLSA. 29 U.S.C. § 216(c).  While there may be waiver of claims with settlement of cases before the Department of Labor, 29 U.S.C. § 216(c), there can be

no waiver of FLSA claims under a 216(c) settlement without the execution of a signed release. Walton v. United Consumers Club, 786 F.2d 303, 307 (7th Cir. 1986). The DOL generally requires employees to sign a release to receive a payment that it believes constitutes full settlement of the FLSA claims. Id.

The Department apparently distinguishes among settlements. When it thinks it has achieved "enough" for the employees—something close to full payment of the wages and overtime due—it sends them agreements explicitly releasing the right to sue, and it requests them to sign these forms if they wish to take the money. When the Department thinks it has fallen far short, it does not solicit these signatures. Id. at 306.

Absent explicit language of release, however, the payment is considered to constitute only partial payment. Defendants have offered no proof of explicit language or release of Plaintiff's claims under the FLSA. Walton, 786 F.2d at 306. See Zhengfang Liang v. Cafe Spice SB, Inc., 911 F. Supp. 2d 184 (EDNY 2012) (citing Walton, supra).

In this case, Defendants have not produced evidence of Plaintiff's receipt of any form containing explicit (or implicit) waiver language. Thus, although Plaintiff received some payment from Defendants for wages owed due to intervention by the DOL, there is nothing to indicate that plaintiff agreed to accept the payment as payment in full and waive any claims under 29 U.S.C. § 216(c). As such, Defendants' motion for summary judgment on this claim should be denied.

## V.   DEFENDANTS OWE PLAINTIFF WAGES

Defendants did not pay Plaintiff for all of the hours that she worked and the Employee Timecard Reports proffered by Defendants do not accurately reflect the hours that she worked for Defendants. (Duverny Dep. Tr. 60:11-18). Plaintiff testified that she would often arrive at

work well before she was able to clock in. (Duverny Dep. Tr. 59:18-60:18) She also testified that the machine that she used to clock in regularly did not function. (Duverny Dep. Tr. 177: 16-18).

The fact that Plaintiff took lunch breaks does not absolve Defendants of their obligation to pay Plaintiff for any hours worked over 40 per week. Allowing meals breaks does not exempt employers from paying the overtime rate if the total number of hours worked is over 40 hours per week. Even with meal breaks, Plaintiff contends that she regularly worked over 40 hours per week and was not paid 1.5 for the time she worked over 40 hours. (Duverny Dep. Tr. 58:9-12; 61:16-18; 63-10-15). Defendants do not have any documentation to rebut this.

## VI.   DEFENDANTS FAILED TO PAY TIMELY WAGES AFTER TERMINATION

New York Labor Law § 191(3) states in pertinent part: "the employer shall pay the wages [of terminated employees] not later than the regular pay day for the pay period during which the termination occurred[.]" N.Y. Lab. Law § 191(3).

Plaintiff has testified that Defendants failed to pay her after her termination. (Duverny Dep. Tr. 62: 20-24). Plaintiff also has documentary evidence of Defendants' failure to pay timely wages in accordance with NYLL. Defendant's office manager informed Plaintiff via email that Defendant Richstone told her not to give Plaintiff her paychecks. (Friedman Decl. Exh. 8). Plaintiff filed a complaint with the U.S. Department of Labor Wage and Hour Division in order to recover her outstanding pay from Defendants. (Friedman Decl. Exh. 9). Defendants cite no evidence to contradict this claim and neither of the cases Defendants cite to support the proposition that Plaintiff should not be able to recover wages and liquidated damages under NYLL.

## VII.   DEFENDANTS FAILED TO FURNISH PROPER WAGE STATEMENTS

24

Plaintiff did not merely allege that Defendants failed to furnish wage statements but that Defendants failed to furnish *proper* wage statements. New York Labor Law § 195 requires that every employer:

> furnish each employee with a statement with every payment of wages, listing the following: the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; and net wages. *For all employees who are not exempt from overtime compensation as established in the commissioner's minimum wage orders or otherwise provided by New York state law or regulation, the statement shall include the regular hourly rate or rates of pay; the overtime rate or rates of pay; the number of regular hours worked, and the number of overtime hours worked.* (emphasis added)

Defendant produced only three wages statements and one of them clearly shows Plaintiff was paid the incorrect rate for hours worked above 40. (Def. 56.1 Exh. 11). Plaintiff has presented sufficient evidence to support the claim that Defendant failed to meet the requirements for wage statements under NYLL and the claim should be allowed to proceed.

## VIII.   DEFENDANTS FAILED TO FURNISH PLAINTIFF WITH A PROPER WAGE NOTICE

NYLL § 195(1) requires that employers provide employees with a wage notice at the time of hire containing accurate, specifically enumerated criteria. Among the criteria, is the following:

> For all employees who are not exempt from overtime compensation as established in the commissioner's minimum wage orders or otherwise provided by New York state law or regulation, *the notice must state the regular hourly rate and overtime rate of pay*[.] (emphasis added)

NYLL § 195(1)(c)

The wage notice that Defendants offer in support of their motion for summary judgement on this claim does not meet the criteria of the law. (Def. 56.1 Exh. 5). The

wage notice is conspicuously missing the overtime rate of pay. Since Plaintiff was not an

exempt from overtime compensation, her wage notice should have included her rate of

overtime pay.

Because Plaintiff can offer proof to support this claim, and Defendants have

offered it as well, Defendants should not be granted summary judgment on this claim.

## IX.   THE IDENTITY OF INTEREST EXCEPTION ALLOWS THE CLAIMS UNDER TITLE VII TO PROCEED AGAINST DEFENDANT HYPERION

A Title VII action may proceed against a party unnamed in the underlying EEO Charge

where there is a clear identity of interest between the unnamed defendant and the party named in

the administrative charge. See Zhao v State University of NY, 472 F. Supp 2d 289 (E.D.N.Y.

2007); Pinero v. Long Island State Veterans Home, 375 F. Supp.2d 162 E.D.N.Y. 2005).

In making this determination, a court is to consider four factors: 1) whether the role of

the unnamed party could through reasonable effort by the complainant be ascertained at the time

of the filing of the EEOC complaint; 2) whether, under the circumstances, the interests of a

named [party] are so similar as the unnamed party's that for the purpose of obtaining voluntary

conciliation and compliance it would be unnecessary to include the unnamed party in the EEOC

proceedings; 3) whether its absence in the  EEOC proceedings resulted in actual prejudice to the

interests of the unnamed party; and 4) whether the unnamed party has in some way represented

to the complainant that its relationship with the complainant is to be through the named party.

Cook v. Arrowsmith Shelburne, Inc., 69 F.3d 1235, 1241-42 (2d Cir. 1995). A plaintiff need not

satisfy each of the factors to be eligible for the exception. See Centeno v. 75 Lenox Realty LLC,

2017 U.S. Dist. LEXIS 50819 *10 (E.D.N.Y. 2017).

Although Hyperion Medical. P.C. was not named in the EEOC Charge, it has an identity of interest with the named party, Defendant Richstone, and was on sufficient notice of the charge such that it did not suffer any prejudice. Id.

Defendants cite Vital v. Interfaith Medical Center, 168 F.3d 615, 619 (2d Cir. 1999) for its proposition that these claims may not move forward against Defendant Hyperion but, in that case, claims against a union were dismissed. Here the claims are against the very company that the named party, Defendant Richstone, manages. (Richstone Dep. Tr. 10:10-14). The identity in interest and the fair notice in this case could not be more obvious. See O'Bar v. Borough of Naugatuck, 2002 U.S. Dist. LEXIS 27335 *11 (D. Conn. 2002) (distinguishing Vital, 168 F.3d at 620).

Regardless of the Plaintiff's failure to include Defendant Hyperion in its EEOC Charge, Defendant Hyperion could still be held liable the NYSHRL, NYCHRL, NYLL and the FLSA as none of these claims require Ms. Duverny to exhaust her administrative remedies.

## X.   THE MCDONNELL DOUGLAS FRAMEWORK DOES NOT APPLY TO CLAIMS OF WORKPLACE HARASSMENT

Courts have recognized that the McDonnell Douglas framework does not apply to claims of workplace harassment.  In Johnson v. Booker T. Washington Broadcasting Service, Inc., 234 F.3d 501 (11th Cir. 2000), for instance, the Eleventh Circuit reversed a district court's grant of summary judgment where the court had "mistakenly applied a McDonnell Douglas–Burdine framework" to the plaintiff's hostile-work-environment claim.  Id. at 510.  The court noted that sexual harassment cases have "evolved quite separately from other Title VII cases" and stated that "applying a burden-shifting analysis to [sexual harassment cases] would be a departure from precedent."  Id. at 511; accord Matthews v. Corning, Inc., 77 F. Supp. 3d 275, 292 (W.D.N.Y. 2014) ("hostile work environment claims are not analyzed using the McDonnell Douglas three-

part burden-shifting test"); <u>Lewis v. Forest Pharm., Inc.</u>, 217 F. Supp. 2d 638, 653 (D. Md. 2002) ("The McDonnell Douglas burden-shifting paradigm cannot logically apply to claims of hostile work environment. There simply is no legitimate business justification for severe or pervasive sexual harassment.").

Accordingly, Defendant argument that the McDonnell Douglas burden shifting analysis should be used regarding Plaintiff's discrimination and ADA claims does not avail.

## XI.  <u>THE SAME ACTOR DOCTRINE DOES NOT APPLY TO PLAINTIFF'S CLAIMS OF DISCRIMINATION</u>

The same actor doctrine is not determinative of whether a claim of discrimination can go forward and may be inappropriate if applied to cases involving quid pro quo sexual harassment or hostile work environment. Furthermore, where genuine issues of material fact exist the same actor doctrine is not enough to warrant summary judgment.

> Although a nondiscriminatory inference may be drawn when an employee is hired and fired by the same decisionmaker, see <u>Grady v. Affiliated Cent. Inc.</u>, 130 F.3d 553, 560 (2d Cir 1997), *"the same-actor inference is permissive, not mandatory."* <u>Memnon v. Clifford Chance US, LLP</u>, 667 F. Supp. 2d 334, 351 (S.D.N.Y. 2009); see also <u>Copeland v. Rosen</u>, 38 F. Supp. 2d 298, 305 (S.D.N.Y. 1999)  ("The 'same actor' inference is not a necessary inference, it is only a plausible one, and decisions in this Circuit addressing it have warned that its use is not to become a substitute for a fact-intensive inquiry into the particular circumstances of the case at hand."). *In light of [Plaintiff's] numerous alleged discriminatory comments, [Defendant's] reliance on the same-actor doctrine seems particularly inappropriate in this case.* In any event, even if such an inference were warranted, it still would "not [be] sufficient in itself to justify summary judgment [because O'Diah] has otherwise raised . . . genuine issue[s] of material fact." <u>Castagna v. Luceno</u>, No. 09 Civ. 9332 (ER), 2013 U.S. Dist. LEXIS 14932, 2013 WL 440689, at *4 n.8 (S.D.N.Y. Feb. 4, 2013) (emphasis added)

<u>O'Diah v. Oasis</u>, 954 F. Supp. 2d 261, 274-275 (S.D.N.Y. 2013)

Defendants' rationale would lead to the absurd conclusion that the person responsible for hiring an employee could not be held liable for *quid pro quo* harassment or harassing behavior that creates a hostile work environment. The same actor doctrine is

better suited to cases for which analysis under the McDonnell Douglas framework is appropriate.  Tellingly, Defendants cite only to cases that involve age discrimination to support their proposition that the same actor doctrine applies in this case. Age discrimination cases are more appropriately analyzed using the McDonnell Douglass framework than cases involving harassment.

## XII.   DEFENDANTS ENGAGED IN NATIONAL ORIGIN DISCRIMINATION

Ms. Duverny has also presented sufficient evidence to establish that Respondent discriminated against her based on her national origin. As in the context of sex discrimination, an employer's harassment of an employee based on their national origin can amount to a Title VII violation if the harassment is so severe or pervasive that it alters the conditions of employment by creating a hostile or abusive work environment. Harris v. Forklift Systems, Inc., supra, at 21; U.S. Equal Emp't Opportunity Comm'n, "EEOC Enforcement Guidance on National Origin Discrimination," No. 915.005 (November 18, 2016) § IV(A) (hereinafter "EEOC Guidance on National Origin Discrimination"). "A hostile work environment based on national origin can take different forms, including ethnic slurs, ridicule ... or other offensive conduct directed toward an individual because of [her] birthplace, ethnicity, culture, language, dress, or foreign accent." Id.

Here, Ms. Duverny has enumerated many offensive comments made by Defendant Richstone about her national origin and the national origin of other Caribbean Americans which, in totality, created a hostile work environment. These offensive comments include referring to Jamaicans as monkeys or calling Plaintiff a "Haitian Bimbo." (Duverny Dep. Tr. 109:5-8). When Plaintiff texted Defendant Richstone about helping her find a job one morning, he replied, "Why are your awake at this hour? All Jamaicans have been asleep since 9 am." (Friedman Decl. Exh. 3; Richstone Dep. Tr. 259: 13-24)

29

Defendant Richstone admitted in a Position Statement to the EEOC that he asked someone to sing an offensive song calling Jamaicans monkeys at an office party. (Friedman Decl. Exh. 10). During his deposition, he later denied that the song was about monkeys but admitted he "teases" Jamaicans constantly. (Richstone Dep. Tr. 249:7-8, 12). Defendant Richstone even mimicked stereotypical Jamaican speech patterns during his deposition. (Richstone Dep. Tr. ¶ 249:17). During his deposition, Defendant Richstone even ranked the intelligence of Haitians among Caribbean people and ranked them beneath Cubans. (Richstone Dep. Tr. 248:17-19).

Alleged "fondness" for a group does not acquit Defendant from liability for engaging in harassing behavior even if he views it as "teasing." Defendant Richstone appears to be under the impression that marriage to a Jamaican woman and his "fondness" for Jamaicans gives him a free reign to "tease them mercilessly." (Richstone Aff. ¶ 4) while dehumanizing them with offensive remarks. Defendant Richstone testified that he merciless "teases Jamaicans." (Richstone Dep. Tr. 249: 7-8; Richstone Aff. ¶ 4). Defendant Richstone also claimed to give Jamaicans preferential treatment in hiring. (Richstone Dep. Tr. 249: 7-9). Because Defendant Richstone engaged in sexual intercourse and purportedly had a child with a Haitian woman, he claims that he is not capable of discriminating against Plaintiff based on her Haitian national origin. (Richstone Aff. ¶3) However, alleged fondness for, familiarity with, proximity to, or even membership in a protected class, in this case a national origin group, does not absolve discriminatory behavior. Johnson v. Strive East Harlem Empl. Group, 990 F. Supp. 2d 435 (S.D.N.Y. 2014).

Plaintiff has already addressed in Section X of this memorandum why the same actor doctrine would not apply for claims of quid pro quo harassment and hostile work environment

based on sex discrimination. The same applies for hostile work environment claims based on national origin discrimination.

Ms. Duverny has submitted sufficient evidence to demonstrate that Defendants discriminated against her based on her national origin, through the consistent and offensive comments of Defendant Richstone. A reasonable juror could find that what Defendant Richstone claims are "jokes" were actually offensive comments that fostered a hostile work environment.

## XIII.   DEFENDANTS VIOLATED THE ADA BUY FORCING PLAINTIFF TO SUBMIT TO UNLAWFUL MEDICAL EXAMINATIONS

The American with Disabilities Act, 42 U.S.C. § 12112(d)(4)(A) provides that "A covered entity shall not require a medical examination and shall not make inquiries of an employee as to whether such employee is an individual with a disability or as to the nature or severity of the disability, unless such examination or inquiry is shown to be job-related and consistent with business necessity."

Plaintiff's ADA claim is based on a medical examination unrelated to work and required merely because of Plaintiff's perceived disability. The "but for" analysis used to analyze other claims under the ADA does not apply in this case. "For medical examination claims, Plaintiff does not even need to allege adverse employment action and the burden for proof is on the defendant. An unlawful-medical-examination claim 'reduces to two essential inquiries: (1) whether the employer performed or authorized a medical examination or disability inquiry ('the regulated conduct'); and if so, (2) whether the exam/inquiry was job-related and consistent with business necessity ('the justification')." Jackson v. Regal Beloit Am., Inc., 2018 U.S. Dist. LEXIS 103682, *18 (E.D. Ky. 2018).

"Thus, there is no requirement under Section 12112(d)(3) that a plaintiff plead any "adverse action" beyond discrimination in the administration of such examinations." Benjamin v.

Consol. Edison Co. of N.Y., 2018 U.S. Dist. LEXIS 45678, 2018 WL 1406620 *3 (S.D.N.Y.

2018) (*citing*  EEOC v. Grane Healthcare Co., 2 F. Supp. 3d 667, 692 (W.D. Pa. 2014))("A

violation of § 12112(d) occurs as soon as a covered employer conducts an improper medical

examination or asks an improper disability-related question, regardless of the results or

response.")).

 Defendants required Ms. Duverny to undergo unwanted unnecessary medical

examinations without any business necessity. (Duverny Dep. Tr. 117:5-27) Because of her

refusal to conduct further exams, after being assaulted during an examination by Defendants

Richstone, she was fired. (Duverny Dep. Tr. 117:5-27).

 Defendant Richstone does not deny that the medical exams performed on Ms. Duverny

took place. Nor does he claim that they were performed for a business necessity. Rather, he

claims that she underwent these exams in preparation for a "forthcoming hernia surgery."

(Richstone Dep. Tr. 135: 21-23). Given his long history of fraudulent billing and ordering

excessive and unnecessary medical exams (discussed in Section III(B)(1)), Defendant

Richstone's argument that the surgery was needed should be given little weight.

 In this case, Defendants allege that they did not require Plaintiff to conduct the

examination as an employer but as a patient. (Richstone Dep. Tr. 135: 21-25). Plaintiff disputes

this and states that she had her own doctors and resisted the medical examinations until she was

told she had to them. (Duverny Dep. Tr. 135: 18-19, 136: 3-4). Duverny was not a patient of

Hyperion while she was employed there. (Duverny Dep. Tr. 117: 9-11) She did not need medical

clearance from Defendants and, if she did, could have received medical clearance from her actual

doctors. (Duverny Dep. Tr. 135: 12-19).In fact, Ms. Duverny told Defendant Richstone that she

had no interest in having her medical issues  addressed by Hyperion Medical while she worked

there. (Duverny Dep. Tr. 135: 12-19). She told Defendant Richstone that she did not need or

want a surgery. (Duverny Dep. Tr. 135: 25-136:3). Plaintiff testified that she was told she must

do these examinations at Hyperion. (Duverny Dep. Tr. 135: 7-12). Any testing that she

underwent was the result of being forced to do so to keep her job. (Duverny Dep. Tr. 136: 3-4).

The disputed material facts make this issue ripe for determination by a jury. Plaintiff has

presented sufficient evidence to proceed with her claim for an unlawful medical examination in

violation of the ADA.

### XIV.   PLAINTIFF DEMONSTRATES SUFFICIENT EVIDENCE TO PROCEED WITH A CLAIM FOR RELIGIOUS DISCRIMINATION UNDER THE NYCHRL

Claims under the NYCHRL "must be reviewed independently from and 'more liberally'

than their federal and state counterparts" Loeffler v. Staten Island Univ. Hosp., 582 F.3d 268,

278 (2d Cir. 2009). Under the NYCHRL, "a defendant is entitled to summary judgment based on

the conduct's triviality only if a reasonable jury could not interpret the alleged comments as

anything 'more than petty slights or trivial inconveniences." Mihalik v. Credit Agricole

Cheuvreux N. America, Inc., *supra*, at 114 (2d Cir. 2013). A single comment in the workplace

may create a hostile work environment and therefore be actionable under the NYCHRL.  See

Williams v. N.Y.C. Hous. Auth., 61 A.D.3d 62, 872 N.Y.S.2d 27, at 40-41 & n.30 (1st Dep't

2009).

Plaintiff described how Defendant regularly disparaged Plaintiff's Christian religious

beliefs thereby subjecting her to a hostile work environment. (Duverny Dep. Tr. 84:12-85:11). In

light of the less stringent standard of the NYCHRL, for the reasons discussed above, a

reasonable fact finder could find that Plaintiff was subjected to a hostile work environment and

disparate treatment on the basis of religion and, therefore, the portion of Defendants' motion

seeking to dismiss these claims must be denied.

## XV.   PLAINTIFF'S CLAIMS AGAINST DEFENDANTS HERCULES MEDICAL, P.C AND ACHILLES MEDICAL, P.C SHOULD PROCEED

Contrary to Defendants' assertions in their memorandum of law in support of their motion for summary judgment, New York State Department of State records show that Defendant Achilles Medical, P.C is a Domestic Professional Corporation actively operating in New York State and its CEO is listed as Dr. Tatiana Mamaeva. Achilles Medical shares the same address and CEO as Defendant Hercules Medical P.C., another Domestic Profession Corporation actively operating in New York State. Although the New York Department of State lists a different address for Hyperion Medical P.C., the address is actually for the same building as Defendants Achilles Medical, P.C. and Hercules Medical, P.C. (Friedman Decl. Exh. 11).

Defendant described, during his deposition, the iterations of Hyperion, the medical practice that he currently manages, and how it evolved out of the two other entities, Achilles Medical, P.C. and Hercules Medical, P.C., in large part, to avoid liability after a lawsuit. (Richstone Dep. Tr. 32: 9-21). He also confirmed that the office where Hyperion operated still carries the names of the other two entities. (Richstone Dep. Tr. 32: 22-25).

Consequently, Defendants Achilles Medical, P.C. and Hercules Medical, P.C. are appropriate defendants and should not be dismissed from this case.

## XVI.   DEFENDANTS' COUNTERCLAIM SHOULD BE DISMISSED

While Plaintiff have demonstrated that there are triable issues of fact related to all of her claims, Defendants have failed to demonstrate a triable issue of fact for their counterclaim.

Defendants' answer states a counterclaim for "unclean hands." Unclean hands is an affirmative defense. The general rule in New York is that the "unclean hands" defense is unavailable unless the plaintiff's immoral or unconscionable conduct both relates directly to the subject matter in litigation and causes the defendant injury. See Mallis v. Bankers Trust Co., 615

F.2d 68, 75 (2d Cir.1980) (Friendly, J.), cert. denied, 449 U.S. 1123, 101 S.Ct. 938, 67 L.Ed.2d

109 (1981), and cases cited. See also <u>Frymer v. Bell</u>, 99 A.D.2d 91, 472 N.Y.S.2d 622, 625 (1st

Dep't 1984); <u>Agati v. Agati</u>, 92 A.D.2d 737, 461 N.Y.S.2d 95, 96 (4th Dep't), aff'd, 59 N.Y.2d

830, 451 N.E.2d 490, 464 N.Y.S.2d 743 (1983). As the court said in <u>Brown v. Lockwood</u>, 76

A.D.2d 721, 432 N.Y.S.2d 186, 192 (2d Dep't 1980), "[i]f a plaintiff is not guilty of inequitable

conduct toward the defendant in the transaction, his hands are as clean as the law requires."

<u>Bistricer v. Bistricer</u>, 659 F.Supp. 215 (E.D.N.Y 1987).

　　　　To the extent that Defendants are asserting an unclean hands defense it does not apply

because they cannot prove conduct that is immoral and unconscionable that both relates to the

subject matter of this litigation *and* caused Defendants injury. Plaintiff took her own medical

chart under the impression that she had a right to do so and to prevent its use for any fraudulent

activity on the part of Defendants. (Duverny Dep. Tr. 161: 11-23; Duverny Decl. ¶ 46). Plaintiff

returned the chart shortly thereafter; therefore, Defendants suffered no damage as a result.

(Richstone Dep. Tr. 233:14-18; Duverny Dep. Tr. 161: 24-162: 3).

　　　　Even if the counterclaim is actually a tortured attempt to make out a conversion claim

based on Defendants allegation that Plaintiff stole a medical chart, the evidence does not support

that claim. Under New York law, to establish a claim for conversion, a plaintiff must show that:

"(1) the property subject to conversion is a specific identifiable thing; (2) plaintiff had

ownership, possession or control over the property before its conversion; and (3) defendant

exercised an unauthorized dominion over the thing in question, to the alteration of its condition

or to the exclusion of the plaintiff[']s rights." <u>Moses v. Martin</u>, 360 F. Supp. 2d 533, 541

(S.D.N.Y. 2004)

Defendants cannot prove that Plaintiff exercised unauthorized dominion that altered the condition of the files or exuded their rights to it. Although Defendant Richstone claimed that the file was not returned in its entirely, during his deposition, he claimed that he never reviewed the file before it was removed from the office and could not say what was missing or altered from the file. (Richstone Dep. Tr. 225: 5-10, 225:21-226:4).

Because Defendants have offered no proof to sustain a counterclaim for conversion, summary judgment should be granted in favor of Plaintiff and the claim should be dismissed.

## **CONCLUSION**

Due to the foregoing reasons, it is respectfully requested that the Parties be afforded an oral argument on this motion before the Court and ultimately that Defendants' motion for summary judgment be denied in all respects and Plaintiff's motion for summary judgment be granted.

Dated: New York, New York
      October 8, 2019

                                      **PHILLIPS & ASSOCIATES,**
                                      **ATTORNEYS AT LAW, PLLC**

                        By:    /s/ Joshua M. Friedman
                                Joshua Friedman, Esq.
                                Marjorie Mesidor, Esq.
                                *Attorneys for Plaintiff*
                                45 Broadway, Suite 620
                                New York, New York 10006
                                (212) 248-7431
                                jfriedman@tpglaws.com
                                mmesidor@tpglaws.com