UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------- X
                                      :
LEONIDES DUVERNY,                     :
                                      :
                         Plaintiff,   :      18cv07652 (DLC)
                                      :
            -v-                       :      OPINION AND ORDER
                                      :
HERCULES MEDICAL P.C. and HYPERION    :
MEDICAL P.C., and ACHILLES MEDICAL    :
P.C., and GEOFFREY RICHSTONE,         :
individually,                         :
                                      :
                         Defendants.  :
                                      :
------------------------------------- X

APPEARANCES

For plaintiff:
Phillips & Associates, Attorneys at Law, P.L.L.C
Joshua Mathew Friedman
Marjorie Mesidor
45 Broadway, Suite 620
New York, New York 10004

For the defendants:
Echtman & Etkind, LLC
David Alan Etkind
12 Marlette Place
White Plains, NY 10605

DENISE COTE, District Judge:

     Plaintiff Leonides Duverny brought this lawsuit against

Hyperion Medical P.C. ("Hyperion"), Hercules Medical P.C.

("Hercules"), Achilles Medical P.C. ("Achilles"), and Geoffrey

Richstone ("Richstone").  Plaintiff asserts that the defendants

denied her overtime wages; failed to provide proper wage

notifications; and engaged in sex, national origin, religious,

and disability discrimination in violation of federal, state, and city antidiscrimination statutes.  For the following reasons, defendants' motion for summary judgment is granted in part.

## **Background**

The following facts are undisputed or taken in the light most favorable to Duverny, the non-moving party.  Hyperion is an internal medical practice in New York City.  It also does business under the names of Hercules Medical P.C. and Achilles Medical P.C.  During the events at issue here, Richstone was the Hyperion office manager and oversaw the hiring and firing of Hyperion employees.  Until his license was revoked in the late 1990s, Richstone was a practicing physician.

Duverny identifies herself as a Black woman of Haitian descent.  She met Richstone socially in June 2014 and believed him to be a doctor.  At the time, Duverny rebuffed his efforts to have a sexual relationship.  Despite her discomfort with him, due to her "urgent need" for a free medical check-up, Duverny scheduled a medical appointment with Richstone at Hyperion's offices.  During that examination in July 2014, Richstone discovered that Duverny had a hernia, a condition that she was aware of and has had for most of her life.

Having no success in locating other employment, Duverny contacted Richstone again, this time about the possibility of working for Hyperion.  In September 2015, Duverny formally applied for a position with Hyperion and was hired as a billing assistant.  Duverny worked for Hyperion for roughly six months, beginning on November 2, 2015.  Duverny's duties included processing insurance claims and occasionally covering the telephones or the front desk.  Richstone supervised Duverny's activities.

When Duverny was hired, she was issued a New York Pay Notice listing her hourly rate of pay as $17.00, which eventually increased to $18.00.  The space below the hourly rate, which lists the overtime rate, was blank.

ADP TotalSource provided Hyperion employees with weekly pay statements and paychecks.[1]  It calculated an employee's weekly hours through the records created by a timekeeping machine that Duverny and other Hyperion employees used.  Those weekly records, which defendants submitted in support of their motion, indicate that Duverny never worked forty-two hours or more in any single week.  The statements, however, did not record Duverny's daily 30-minute lunch break.  When those lunch breaks

---

[1] The defendants have submitted three weekly pay statements for Duverny.

are deducted, the weekly statements indicate that Duverny did not work over 40 hours in any week of her employment.

Duverny asserts that Richstone harassed her throughout her tenure at Hyperion.  Richstone commented on her appearance and referred to her as a "Haitian Bimbo."  At least once a week, Richstone would insist that Duverny hug him.

On November 26, 2015, Richstone called Duverny into his office where he was waiting with a male physician.  They discussed the length of the dress Duverny had worn to work. After they cleared Duverny to return to work, Richstone told her to exit so they "could check [Duverny] out."

Richstone also made racially insensitive comments, including offensive remarks about Haitians' hygiene and intelligence.  Hyperion held a holiday party on December 16, 2015, during which Richstone goaded a Hyperion doctor to perform a song featuring racist imagery of Jamaicans.  Richstone often conflated Jamaicans and Haitians, which led Duverny to believe that his disparagement of Jamaicans pertained to Haitians as well.  During her employment at Hyperion, Richstone accused Duverny of being "brainwashed" by her religion.  Over Duverny's objections, Richstone "pressured" her to accept gifts, including

a new mattress, a scale, and a membership to his gym, and to attend social events with him.[2]

In early May 2016, Richstone told Duverny that as a beneficiary under Hyperion's insurance plan, she was required to have her hernia examined and treated by the practice's physicians.[3]  Duverny objected, but fearful of losing her job, she submitted to an examination by Richstone.  Despite Duverny's objections during the examination, Richstone touched Duverny's genitals.  This encounter ended when another Hyperion employee knocked on the door.

On May 10, Richstone informed Duverny that she would have to submit to another medical examination by him and other male doctors at Hyperion.  When Duverny refused, Richstone fired Duverny.[4]  Duverny took her medical file when she left the office.

On May 11, Duverny asked the Hyperion human resources manager about the status of her final paychecks.  The manager informed Duverny that Richstone had instructed her not to issue Duverny any further paychecks.  On May 26, 2016, Duverny filed a

---

[2] Defendants contend that Duverny and Richstone had a romantic relationship before and during Duverny's employment with Hyperion.

[3] The defendants dispute that this examination took place.

[4] Defendants assert that Duverny was fired after, and because, she took her medical file from the office.

complaint with the Equal Employment Opportunity Commission
("EEOC"), naming Hyperion, Hercules, and Achilles as
respondents.  On June 14, Duverny returned the EEOC charge
summary form, which alleged that Richstone had discriminated
against her based on her sex, national origin, and religion.
The EEOC charge summary listed Hercules as the organization and
Richstone as the individual responsible for the harassment.

On August 9, 2016, Duverny filed a complaint with the
United States Department of Labor, Wage and Hour Division
("DOL") to collect her final paychecks, including an hour of
overtime pay.  Duverny's DOL complaint listed Hyperion,
Hercules, and Achilles as the organizational respondents and
Richstone and one other person as their owners and operators.
DOL's investigation of Duverny's claim resulted in a
conciliation agreement.  Under the agreement, Duverny was given
her final two paychecks and compensation for an hour of
overtime.

On June 12, 2018, the EEOC issued Duverny a Notice of Right
to Sue.  Duverny filed this lawsuit on August 22, 2018.  Duverny
alleged that she was denied overtime pay under the Fair Labor
Standards Act ("FLSA") and the New York Labor Law ("NYLL"); that
she was not provided timely wages and proper wage notice or wage
statements under the NYLL; that defendants engaged in sex and

national origin discrimination in violation of the Title VII of
the Civil Rights Act of 1964 ("Title VII"), the New York State
Human Rights Law ("HRL"), and the New York City Human Rights Law
("NYCHRL"); that defendants engaged in discrimination under the
Americans with Disabilities Act ("ADA"); and that defendants
engaged in religious discrimination in violation of the NYCHRL.

Defendants filed a counterclaim alleging theft of Duverny's
medical file with their answer on November 26, 2018.  Following
the close of discovery, defendants moved for summary judgment on
all of Duverny's claims.  In opposition, Duverny submitted a
declaration, the depositions taken of her and Richstone, and
other documentary evidence.[5]  The motion became fully submitted
on October 28, 2019.

### Discussion

A motion for summary judgment may not be granted unless all
of the submissions taken together "show[] that there is no
genuine dispute as to any material fact and the movant is
entitled to judgment as a matter of law."  Fed. R. Civ. P.
56(a).  "A genuine issue of material fact exists if the evidence

---

[5] Plaintiff's opposition brief -- submitted on October 8, 2019 --
argues that Duverny is entitled to summary judgment on
defendants' counterclaim.  Plaintiff has not made a motion.  Any
motion for summary judgment was due by August 21, 2019 and had
to be supported by a notice of motion, memorandum of law, and
Rule 56.1 statement.

is such that a reasonable jury could return a verdict for the nonmoving party." Nick's Garage, Inc. v. Progressive Cas. Ins. Co., 875 F.3d 107, 113 (2d Cir. 2017) (citation omitted). The moving party bears the burden of demonstrating the absence of a material factual question, and in making this determination, the court must view all facts in the light most favorable to the non-moving party. See Eastman Kodak Co. v. Image Technical Servs., Inc., 504 U.S. 451, 456 (1992); Gemmink v. Jay Peak Inc., 807 F.3d 46, 48 (2d Cir. 2015).

Once the moving party has made a showing that the non-movant's claims cannot be sustained, the party opposing summary judgment "must set forth specific facts demonstrating that there is a genuine issue for trial." Wright v. Goord, 554 F.3d 255, 266 (2d Cir. 2009) (citation omitted). "[C]onclusory statements, conjecture, and inadmissible evidence are insufficient to defeat summary judgment." Ridinger v. Dow Jones & Co., 651 F.3d 309, 317 (2d Cir. 2011) (citation omitted). That is, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Electric Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). Only disputes over material facts will properly preclude the entry of summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). "An issue of

fact is genuine and material if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Cross Commerce Media, Inc. v. Collective, Inc., 841 F.3d 155, 162 (2d Cir. 2016).

I.    Duverny's Wage and Overtime Claims

Defendants argue that Duverny's wage and overtime claims should be dismissed for two reasons.  First, defendants contend that they complied with all relevant federal, state, and local wage laws during Duverny's tenure.  Second, they argue that because of the DOL investigation and conciliation agreement, these claims are barred by res judicata.  Defendants' motion is granted as to Duverny's claim for unpaid overtime pay.

A.    Overtime Claim

Defendants move for summary judgment on Duverny's claim that they denied her overtime pay.[6]  The undisputed evidence shows that Duverny did not work at Hyperion in excess of 40 hours in any one week.  As a result, Duverny's overtime claims are dismissed.

The FLSA entitles employees to "not less than one and one-half times the regular" pay for hours worked "in excess of" forty.  29 U.S.C. § 207(a)(1).  New York incorporates the FLSA's overtime standard and calculation into its overtime compensation

---

[6] Duverny pleaded that defendants denied her overtime pay under both the FLSA and the NYLL.

scheme.  N.Y. Comp. Codes R. & Regs. tit. 12, § 142-2.2;
Nakahata v. New York-Presbyterian Healthcare Sys., Inc., 723
F.3d 192, 200 (2d Cir. 2013) (noting that "the NYLL adopts th[e]
same standard" of overtime hours as the FLSA).  Because of those
similarities, courts frequently analyze overtime claims brought
under the FLSA and NYLL jointly.  See, e.g., Ramos v. Baldor
Specialty Foods, Inc., 687 F.3d 554, 556 n.1 (2d Cir. 2012).

"To establish liability under the FLSA on a claim for
unpaid overtime, a plaintiff must prove that he performed work
for which he was not properly compensated, and that the employer
had actual or constructive knowledge of that work."  Kuebel v.
Black & Decker Inc., 643 F.3d 352, 361 (2d Cir. 2011).  A
plaintiff must "produce sufficient evidence to show the amount
and extent of that work as a matter of just and reasonable
inference."  Id. (citation omitted).  "[A]n employee's burden in
this regard is not high," and "it is possible for a plaintiff to
meet this burden through estimates based on his own
recollection."  Id. at 362 (citation omitted).  Once the
employee has provided evidence of uncompensated hours, "[t]he
burden then shifts to the employer to come forward with evidence
of the precise amount of work performed or with evidence to
negative the reasonableness of the inference to be drawn from

the employee's evidence."  Tyson Foods, Inc. v. Bouaphakeo, 136
S. Ct. 1036, 1047 (2016) (citation omitted).

Duverny's claims for overtime pay rest on her assertion
that Hyperion's wage statements reflect that she worked over
forty hours a week but never received overtime pay for the hours
she worked that were in excess of forty.  Those wage statements,
however, simply repeat the hours recorded on Duverny's weekly
time records.  These records show the precise times when Duverny
arrived at and left Hyperion.[7]  Once Duverny's lunch break of
thirty minutes is deducted from each day, these documents
indicate that there was no week in which Duverny was working at
Hyperion's offices for more than forty hours.

Under DOL regulations, "[b]ona fide meal periods" do not
count towards an employee's compensable work hours.  See 29
C.F.R. § 785.19(a).  "Bona fide meal periods" are those during
which the employee is not required to work.  Reich v. S. New
England Telecommunications Corp., 121 F.3d 58, 64 (2d Cir.
1997).  An employee works during a mealtime when they "perform[]
activities predominantly for the benefit of the employer."  Id.

Duverny does not dispute that Hyperion employees received a
thirty-minute lunch break, nor does she assert that her lunch

---

[7] For example, the time records reflect that Duverny arrived at
Hyperion's office at 9:00 a.m. and left at 4:06 p.m. on November
10, 2015.

breaks were not "bona fide mealtimes" or that she was required to perform activities primarily for Hyperion's benefit during those breaks.  Therefore, those meal breaks are not compensable work hours.  Deducting a thirty-minute lunch break from each of Duverny's workdays, as is required under the FLSA and associated regulations, is thus appropriate on this record.

Duverny attempts to raise a disputed issue of fact to support her overtime claims.  Duverny asserted in her deposition that there were days when she arrived to work early and waited for "thirty to forty minutes" for someone to open the door.[8] When an employee claims that part of their compensable time was spent on activities "preliminary" to their principal duties, courts must determine whether those activities are an "integral and indispensable part of the principal activities."  IBP, Inc. v. Alvarez, 546 U.S. 21, 29-30 (2005) (citation omitted).  The relationship of preliminary activities to an employee's principal duties "is a fact-dependent inquiry" for which there is no bright line of demarcation.  Kuebel, 643 F.3d at 359.  In order to qualify as compensable overtime, however, preparatory activity must be "an intrinsic element of [an employee's principal] activities and one with which the employee cannot

---

[8] Duverny's counter 56.1 statement relies on this testimony as the sole ground for disputing defendants' assertion that Duverny did not work overtime.

dispense if he is to perform those [principal] activities."
Integrity Staffing Sols., Inc. v. Busk, 574 U.S. 27, 35 (2014).

Duverny has not provided evidence from which a factfinder
could determine that her time spent waiting for someone to open
the office door was compensable time.  She does not explain, for
instance, whether the door was unlocked before or after the time
she was scheduled to begin her workday.  Nor does she identify
how often this occurred or identify the dates on which it
occurred.  Duverny's general assertion, therefore, that there
were days when she waited for the Hyperion offices to be opened
does not raise a disputed issue of material fact.[9]

The defendants' motion for summary judgment regarding
Duverny's FLSA overtime claims is granted.  For the same
reasons, their motion for summary judgment for Duverny's
parallel state law overtime claim is granted.

B.   Failure to timely pay wages

Duverny claims that defendants failed to timely pay wages
in violation of NYLL § 191(3).  Duverny seeks liquidated damages

---

[9] In her brief in opposition to summary judgment, Duverny's
counsel refers to Duverny's statement in her deposition that the
timekeeping equipment would not function.  That assertion does
not appear in her declaration or counter 56.1 statement.  In any
event, the defendants submitted the time records in support of
their summary judgment motion.  Nothing in these records
suggests a malfunction, and the plaintiff has not pointed to any
specific date or dates where the records are inaccurate or
otherwise provided evidence to cast doubt on their reliability.

equal to 100% of the late payments, interest, and attorneys'
fees.  Defendants contend that Duverny's acceptance of the DOL
conciliation checks bars this claim.  It does not.

Section 191(3) provides that following an employee's
discharge, the employer "shall pay the [employee's final] wages
not later than the regular pay day for the pay period during
which the termination occurred."  Section 198(1-a) provides that
in

> any action instituted in the courts upon a wage claim
> by an employee . . . in which the employee prevails,
> the court shall allow such employee to recover the
> full amount of any underpayment, all reasonable
> attorney's fees, prejudgment interest as required
> under the civil practice law and rules, and, unless
> the employer proves a good faith basis to believe that
> its underpayment of wages was in compliance with the
> law, an additional amount as liquidated damages equal
> to one hundred percent of the total amount of the
> wages found to be due.

N.Y. Lab. Law § 198(1-a).

The remedies available through § 198(1-a) apply to
employees bringing claims under § 191.  Gottlieb v. Kenneth D.
Laub & Co., 605 N.Y.S.2d 213, 216 n.2 (1993); Vega v. CM &
Assocs. Constr. Mgmt., LLC, 107 N.Y.S.3d 286, 287-88 (N.Y. App.
Div. 2019).  A plaintiff's entitlement to statutory damages
pursuant to § 198(1-a) survives even if the employer pays the
employee's base wages prior to the commencement of a civil
action.  Vega, 107 N.Y.S.3d at 288 ("We reject [an employer's]

implicit attempt to read into section 198(1-a) an ability to cure a violation and evade the statute by paying the wages that are due before the commencement of an action.").

Res judicata "bars the subsequent litigation of any claims that were or could have been raised in a prior action." Citigroup, Inc. v. Abu Dhabi Inv. Auth., 776 F.3d 126, 128 n.1 (2d Cir. 2015).[10]  Claim preclusion under res judicata occurs when the moving party demonstrates that "(1) the previous action involved an adjudication on the merits; (2) the previous action involved the same adverse parties or those in privity with them; and (3) the claims asserted in the subsequent action were, or could have been, raised in the prior action." Marcel Fashions Grp., Inc. v. Lucky Brand Dungarees, Inc., 779 F.3d 102, 108 (2d Cir. 2015) (citation omitted).  Settlement agreements and other informal dispute resolution mechanisms can also function as prior adjudications and preclude litigation.  Greenberg v. Bd. of Governors of Fed. Reserve Sys., 968 F.2d 164, 168 (2d Cir. 1992).  Only when a party intends to release future claims through a settlement agreement, however, does that agreement gain preclusive effect.  Id.

---

[10] Res judicata comprises two separate doctrines: claim preclusion and issue preclusion.  Marcel Fashions Grp., Inc. v. Lucky Brand Dungarees, 898 F.3d 232, 236 (2d Cir. 2018).  Only claim preclusion is at issue in the instant suit.

Duverny's last date of employment was May 10, 2016.  It is undisputed that her paychecks for the period May 2 through May 10 were not delivered to Duverny until August 2016.  At that time, she received the paychecks through the DOL conciliation process.

The sole issue, then, is whether Duverny intended to release her right to seek damages when she accepted her final paychecks from Hyperion.  The defendants have offered no evidence that Duverny intended to waive all her rights to damages under the NYLL when she was paid her back wages on her final paychecks.  Therefore, the defendants have not shown that they are entitled to summary judgment on Duverny's § 191(3) claim.

C.   Proper Wage Statements

Duverny also seeks damages for the failure to provide her with wage statements that contain her overtime rate of pay, as required NYLL § 195(3).  Pursuant to § 195(3), employers must provide, with every payment, a "statement [that] shall include the regular hourly rate or rates of pay; the overtime rate or rates of pay; the number of regular hours worked, and the number of overtime hours worked."  N.Y. Lab. Law § 195(3).  An employer bears the burden of maintaining accurate and adequate records under the NYLL.  O'Donnell v. Jef Golf Corp., 103 N.Y.S.3d 642, 644-45 (N.Y. App. Div. 2019).  Furthermore, "the penalty for

failure to provide wage statements as required under NYLL §
195(3) is non-discretionary." <u>Pugh v. Meric</u>, No. 18CV3556
(DLC), 2019 WL 2568581, at *2 (S.D.N.Y. June 20, 2019).

In support of their motion for summary judgment, the
defendants have submitted three of Duverny's wage statements.
None of them includes the rate of overtime pay.  Accordingly,
the defendants' motion for summary judgment on this claim is
denied.

D.   Wage Notice

Duverny's final NYLL claim is that her annual wage notice
was also deficient.  NYLL § 195 (1)(a) requires employers to
furnish employees with an annual wage notice containing salary
and business information.  "For all employees who are not exempt
from overtime compensation . . . the notice must state the
regular hourly rate and overtime rate of pay."  N.Y. Lab. Law §
195 (1)(a).

Defendants' lone piece of evidence in support of their
motion for summary judgment is the New York Pay Notice they
provided Duverny at the beginning of her employment.  That
notice lists Duverny's regular rate of pay; it does not contain
any statement of Duverny's individual overtime rate.  Defendants
point to the language at the bottom of the notice, which states
that "[m]ost employees" in New York State are entitled to 1½ of
their hourly wage for hours worked over forty.  That boilerplate

disclosure, however, cannot satisfy the statutory requirement that the notice state the new employee's rates of regular and overtime pay.  Accordingly, summary judgment on that claim is denied as well.

## II.  Sex-based Hostile Work Environment Claim

Duverny asserts that the defendants engaged in sex discrimination by subjecting her to a hostile work environment in violation of Title VII, the HRL, and the NYCHRL.[11]  The defendants contend that they are entitled to summary judgment on this claim because Duverny was in a romantic relationship with Richstone and admits that she performed her job well.  Hyperion also seeks dismissal of the Title VII hostile work environment claim for Duverny's failure to exhaust her administrative remedies.  These motions are denied.

To prove that she was subjected to a hostile work environment under either Title VII or the HRL, a plaintiff must show that the defendant's conduct "(1) is objectively severe or

---

[11] "Hostile work environment . . . claims under the [HRL] are generally governed by the same standards as federal claims under Title VII."  Schiano v. Quality Payroll Sys., Inc., 445 F.3d 597, 609 (2d Cir. 2006).  The NYCHRL, however, must "be construed independently from similar or identical provisions of New York state or federal statutes."  Mihalik v. Credit Agricole Cheuvreux N. Am., Inc., 715 F.3d 102, 109 (2d Cir. 2013) (citation omitted).  When the New York City Council amended the NYCHRL, it declared that Title VII and the HRL were the "floor below which the [NYCHRL] could not fall," making the city law more protective of employee rights.  Id.  (citation omitted).

pervasive -- that is, creates an environment that a reasonable person would find hostile or abusive; (2) creates an environment that the plaintiff subjectively perceives as hostile or abusive; and (3) creates such an environment because of the plaintiff's sex."  Patane v. Clark, 508 F.3d 106, 113 (2d Cir. 2007) (citation omitted).  A workplace is objectively hostile when it "is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment."  McGullam v. Cedar Graphics, Inc., 609 F.3d 70, 77 (2d Cir. 2010) (citation omitted).

Defendants argue that summary judgment should be granted because any hostile work environment was not "create[d] . . . because of [Duverny's] sex," but rather because of the personal animus that resulted from Duverny and Richstone's romantic relationship before and during her employment.  In limited situations, it may be possible to find that the dissolution of a romantic relationship rebuts an inference that a hostile work environment was created on account of the plaintiff's sex. Succar v. Dade Cty. Sch. Bd., 229 F.3d 1343, 1345 (11th Cir. 2000) (per curiam) (affirming dismissal of hostile work environment claim because harassment was motivated by animus following a failed romantic relationship, not plaintiff's sex);

but see Forrest v. Brinker Int'l Payroll Co., LP, 511 F.3d 225, 229-30 (1st Cir. 2007) ("Nowhere does prior case law suggest that certain types of discriminatory behavior, held to constitute gender-based harassment in other cases, may not constitute gender-based harassment when the parties had previously engaged in a romantic relationship."). Here, however, Duverny denies that she and Richstone were ever romantically involved. Given this factual dispute, the defendants' motion for summary judgment must be denied.

Defendants also argue that Duverny cannot prevail on her hostile work environment claim because she admitted that she was able to perform her job well despite the environment in which she worked. Defendants' argument misses the mark. A victim's excellence at work does not absolve an abuser of liability. For this additional reason, the defendants' motion for summary judgment is denied.

III. Quid Pro Quo Sex Discrimination Claim

Duverny pleaded a separate claim of sex discrimination under Title VII and the HRL based on the termination of her employment. "[A] plaintiff claiming disparate treatment under [Title VII] must plausibly allege that she suffered an adverse employment action taken because of her sex." Naumovski v. Norris, 934 F.3d 200, 212 (2d Cir. 2019) (citation omitted). An employee can show that she suffered disparate treatment because

of her sex if "a tangible employment action . . . resulted from
her refusal to submit to [her supervisor's] sexual advances."
Schiano v. Quality Payroll Sys., Inc., 445 F.3d 597, 603 (2d
Cir. 2006).  Discharge is a prototypical adverse employment
action.  Burlington Indus., Inc. v. Ellerth, 524 U.S. 742, 761
(1998).  A sex discrimination claim therefore survives summary
judgment if an employee raises a triable issue of fact that she
was fired because she refused sexual advances.  Schiano, 445
F.3d at 604.

Duverny contends that the defendants fired her because she
refused to submit for a second time to a purported medical
examination by Richstone and another male doctor at Hyperion.
She has presented testimony in support of her claim that
Richstone demanded that she undergo this examination because she
was a woman and he wanted to see her exposed and touch her once
again.  This evidence is sufficient to prevent summary judgment.

The defendants maintain that in prior statements, Duverny
has asserted that Richstone's motive was not sex discrimination
but a desire to commit insurance fraud.  While Duverny's prior
statements to the DOL and a prospective employer may be useful
at trial to impeach her, those statements do not entitle the
defendants to summary judgment.  The jury will have to determine
from all the admissible evidence whether Richstone "linked

tangible job benefits to the acceptance or rejection of sexual advances."  Karibian v. Columbia Univ., 14 F.3d 773, 778 (2d Cir. 1994).

Defendants appear to argue that summary judgment is appropriate since Duverny removed her medical file from the office and that was the reason defendants fired her.  To the extent defendants are attempting to assert a nondiscriminatory reason for Duverny's discharge, that argument is unavailing. There remain questions of fact that a jury must resolve as to whether the defendants demanded that Duverny submit to a medical examination, their motivation for doing so, and the sequence of events that followed Duverny's refusal to participate in that examination.  Moreover, Duverny disputes defendants' chronology; she maintains that she took her file after she was fired.

IV.  National Origin Hostile Work Environment Claim

Duverny asserts that defendants subjected her to a hostile work environment on account of her national origin in violation of federal, state, and city antidiscrimination statutes.  The defendants' motion is denied.

An employee charging workplace mistreatment based on her national origin has a cognizable claim under Title VII only when that mistreatment occurred "because of" her national origin. Rivera v. Rochester Genesee Reg'l Transp. Auth., 743 F.3d 11, 20 (2d Cir. 2014).  On summary judgment, a plaintiff seeking to

prove a national-origin-based hostile work environment claim need only "show [that] a reasonable fact-finder could conclude that race or national origin was a motivating factor in the harassment." Id. at 23 (citation omitted).  Duverny has made that showing.

Defendants argue that Richstone could not have subjected Duverny to a hostile work environment based on her national origin because he is fond of Haitians and has a son who is of Haitian descent.[12]  It will be for the jury to determine whether the plaintiff worked in a hostile work environment at Hyperion and whether the defendants created that environment because of her national origin.

V.   Compliance with Procedural Prerequisites

Hyperion contends that Duverny's Title VII hostile work environment claims brought against Hyperion should be dismissed because she did not name Hyperion in her EEOC charge and therefore did not exhaust her administrative remedies.  Title VII instructs an employee alleging workplace discrimination to first take their complaint to the EEOC or an authorized state agency.  42 U.S.C. § 2000e-5(e)(1), (f)(1); Fernandez v.

---

[12] Defendants also invoke the same actor doctrine in support of their motion.  That doctrine permits, but does not require, a court to infer a nondiscriminatory motive if the same actor hired and fired the employee.  Grady v. Affiliated Cent., Inc., 130 F.3d 553, 560 (2d Cir. 1997).

Chertoff, 471 F.3d 45, 54 (2d Cir. 2006).  Exhaustion is a

"precondition to bringing a Title VII claim" that the trial

court must determine before a claim can proceed.  Hardaway v.

Hartford Pub. Works Dep't, 879 F.3d 486, 489-90 (2d Cir. 2018).

"The purpose of this exhaustion requirement is to give the

administrative agency the opportunity to investigate, mediate,

and take remedial action."  Fowlkes v. Ironworkers Local 40, 790

F.3d 378, 384 (2d Cir. 2015) (citation omitted).  A plaintiff

can generally bring a lawsuit against only those entities named

in the initial EEOC charge.  Johnson v. Palma, 931 F.2d 203, 209

(2d Cir. 1991) (citing 42 U.S.C. § 2000e-5(e)).

When considering whether a plaintiff has complied with

Title VII's notice provisions, courts have crafted an "identity

of interest" exception, which allows plaintiffs to bring suit

against parties not named in the EEOC charge that are

sufficiently related to those named.  Id.  To determine whether

an identity of interests exists, a court looks to four factors:

> 1) whether the role of the unnamed party could through
> reasonable effort by the complainant be ascertained at
> the time of the filing of the EEOC complaint; 2)
> whether, under the circumstances, the interests of a
> named [party] are so similar as the unnamed party's
> that for the purpose of obtaining voluntary
> conciliation and compliance it would be unnecessary to
> include the unnamed party in the EEOC proceedings; 3)
> whether its absence from the EEOC proceedings resulted
> in actual prejudice to the interests of the unnamed
> party; 4) whether the unnamed party has in some way

> represented to the complainant that its relationship
> with the complainant is to be through the named party.

Vital v. Interfaith Med. Ctr., 168 F.3d 615, 619 (2d Cir. 1999).

No single factor is dispositive; courts weigh the totality of

the evidence.  See, e.g., Cook v. Arrowsmith Shelburne, Inc., 69

F.3d 1235, 1242 (2d Cir. 1995).

Here, Duverny listed Hercules but not Hyperion in her June

14, 2016 EEOC charge.[13]  Considering the factors that comprise

the identity of interest test, Duverny may sue Hyperion.

As to the first factor, Duverny knew of Hyperion's role

vis-à-vis Hercules and defendant Richstone.  In her other

administrative charge filed with the DOL and on her EEOC intake

form, Duverny listed Hyperion as one of her employers, along

with Hercules and Achilles.

The remaining factors, however, weigh in favor of

permitting Duverny's suit against Hyperion to proceed.

Hyperion's interest in resolving Duverny's charge was

substantially similar to Hercules's and Richstone's.

Richstone's responsive statement to the EEOC effectively

captured Hyperion's position that no discrimination had

occurred.  Richstone's involvement also put Hyperion on notice

---

[13] Although Richstone was not formally named as a respondent in
the EEOC charge, his conduct is described throughout the charge.
Richstone participated in the EEOC investigation and has not
argued that he was not on notice of the charge.

of the charges.  During the proceedings, Richstone was employed
as Hyperion's office manager and the events described in
Duverny's complaint occurred while she was employed with
Hyperion.

The final factor also points toward an identity of
interests between Hercules and Hyperion.  Hyperion represented
to Duverny and the general public that it was interchangeable
with Hercules.  Duverny's employee timesheets, for instance,
list her employer as "Hercules Medical," while Duverny's weekly
wage statements list Hyperion.

While Duverny did not name Hyperion in her EEOC charge,
Hyperion's identity of interest with the named parties means it
was on notice regarding the allegations.  Duverny's suit against
Hyperion may proceed.[14]

## VI.  Americans With Disabilities Act Claim

Duverny claims that she was subjected to an unwanted
medical examination in violation of the ADA.  The ADA provides
that "[a] covered entity shall not require a medical examination

---

[14] Separately, defendants move to dismiss the claims against
Hercules and Achilles on the grounds that those companies are
"defunct" and not under the same ownership as Hyperion.  Duverny
contends that all three companies are proper defendants and
provides documentation that all three are active corporations in
New York.  Defendants do not explain why these facts would
relieve them of liability for Duverny's claims.  Moreover,
because there is a disputed fact regarding the companies'
corporate relationship, defendants' motion on this ground is
denied.

and shall not make inquiries of an employee as to whether such employee is an individual with a disability or as to the nature or severity of the disability, unless such examination or inquiry is shown to be job-related and consistent with business necessity."  42 U.S.C. § 12112(d)(4)(A).  In contrast to other portions of the ADA, "a plaintiff need not prove that he or she has a disability unknown to his or her employer in order to challenge a medical inquiry or examination under 42 U.S.C. § 12112(d)(4)(A)."  Conroy v. New York State Dep't of Corr. Servs., 333 F.3d 88, 95 (2d Cir. 2003).  The medical testing provisions apply to all "employees."  Id. at 95-96.

The parties dispute whether the defendants required Duverny to submit to a physical examination as a condition of her employment and whether the examination conducted by Richstone was unwanted.  Duverny asserts that she had her own medical provider and was not a patient of Hyperion while she was employed there.  These disputes must be resolved at trial. Defendants' motion is denied.

In their reply brief, defendants raise the additional argument that Duverny did not include the unlawful examination claim in her EEOC charge and therefore did not exhaust her administrative remedies before bringing this lawsuit, as required by the ADA.  Soules v. Connecticut, Dep't of Emergency

Servs. & Pub. Prot., 882 F.3d 52, 57 (2d Cir. 2018).  Courts recognize an exception to the ADA's exhaustion requirement for those claims that are "reasonably related" to allegations filed with the EEOC.  Id.  The focus of the inquiry is on the factual allegations in the EEOC complaint that describe the discriminatory conduct, and whether those allegations alerted the EEOC to the discrimination that plaintiff claims to have suffered.  Deravin v. Kerik, 335 F.3d 195, 201 (2d Cir. 2003) (citation omitted).

Duverny's EEOC charge describes the examination in depth, details her discomfort with it, and states that Richstone told her that it was a condition of her employment.  Duverny therefore exhausted her ADA claim in the EEOC proceedings.

VII. Religious Discrimination Claim

Duverny's final claim is that the defendants discriminated against her on the basis of her religion in violation of the NYCHRL.  As noted above, the NYCHRL must "be construed liberally for the accomplishment of the uniquely broad and remedial purposes thereof."  Mihalik v. Credit Agricole Cheuvreux N. Am., Inc., 715 F.3d 102, 109 (2d Cir. 2013) (citation omitted).  Unlike claims under federal and state analogues, NYCHRL claims do not turn on whether the conduct was severe or pervasive.  Id. at 110.  Despite providing relief for a broader range of discriminatory conduct, however, the NYCHRL is not a "general

civility code," and a supervisor who is merely "overbearing or
obnoxious" does not usually create a hostile work environment.
Id. at 110-11, 113; see also Williams v. New York City Hous.
Auth., 872 N.Y.S.2d 27, 41-42 (N.Y. App. Div. 2009) (citation
omitted).  Summary judgment is appropriate if the employer
proves "that the conduct complained of consists of nothing more
than what a reasonable victim of discrimination would consider
petty slights and trivial inconveniences." Mihalik, 715 F.3d at
111 (citation omitted).  Defendants must show that the
challenged behavior "cannot be said to fall within the broad
range of conduct that falls between severe and pervasive on the
one hand and a petty slight or trivial inconvenience on the
other."  Hernandez v. Kaisman, 957 N.Y.S.2d 53, 58-59 (N.Y. App.
Div. 2012) (citation omitted).

     The defendants are entitled to summary judgment on
Duverny's hostile work environment claim based on religious
discrimination.  As proof of that discrimination, Duverny
identifies Richstone's comments that Duverny was "brainwashed"
and "self-righteous" because of her religion.  Aside from those
remarks, she points to nothing to support this claim.  Duverny
has not raised a question of fact as to whether those comments
were more serious that what a reasonable victim would consider
petty or trivial.  Those isolated remarks about her faith were

unrelated to her job performance or position and thus do not establish a hostile work environment.  See, e.g., Kim v. Goldberg, Weprin, Finkel, Goldstein, LLP, 120 A.D.3d 18, 26 (N.Y. App. Div. 2014).

In opposition, Duverny argues that even a single inflammatory remark can be cognizable discrimination under the NYCHRL.  That is true.  Even a lone comment that is patently discriminatory or "signal[s] views about the role of [the protected class] in the workplace" can create a hostile work environment.  Williams, 872 N.Y.S.2d at 41 n.30 (citation omitted).  But isolated objectionable comments must still be more than merely offensive to create a hostile work environment. Richstone's few comments did not reflect obvious discrimination or speak to Duverny's standing in the workplace, even if they were unkind.  Because no reasonable jury could find that Richstone's comments about religion created a hostile work environment in violation of the NYCHRL, summary judgment is granted as to this claim.

### Conclusion

The defendants' August 21, 2019 motion for summary judgment is denied with the following exceptions.  The defendants are granted summary judgment on Duverny's claim to unpaid overtime

under the FLSA and NYLL and her religious discrimination claim
under the NYCHRL.


Dated:      New York, New York
            March 3, 2020


                              _____
                                        DENISE COTE
                              United States District Judge